TERENCE O. MAYO, SBN #62035
MAYO & ROGERS
114 SANSOME STREET, SUITE 1310
SAN FRANCISCO, CA 94104
TELEPHONE: 415-397-1515

Attorneys for Plaintiff
JOHN SARSFIELD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SARSFIELD ) | **CASE NO. C 07-2528 JF** |
| ) | |
| Plaintiff, ) | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| ) | **(1) 42 U.S.C. SECTION 1983** |
| v. ) | **(2) BREACH OF CONTRACT** |
| ) | **(3) TORTIOUS INTERFERENCE WITH CONTRACT** |
| County of San Benito ) | |
| Jaime De La Cruz, in his official capacity ) | **(4) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| Reb Monaco, in his official capacity ) | |
| Anthony Botelho, in his official capacity ) | |
| Don Marcus, in his official capacity ) | |
| and Does 1 through 10, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____) | **DEMAND FOR JURY** |

Plaintiff John J. Sarsfield alleges on information and belief:

<u>Jurisdiction and Venue:</u>

   1. This action arises under the Constitution of the United States, particularly the First, Fifth and Fourteenth Amendments, under the laws of the United States, particularly 42 U.S.C. Sections 1983 and 1988, and the laws of the State of California.

1

2. The jurisdiction of this court is invoked under the provisions of 28 U.S.C. Sections 1331 and 1343.

3. Venue is in this district because it is where the events complained of occurred.

## FIRST CAUSE OF ACTION

(42 U.S.C. Section 1983)

4. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants are responsible in some manner for the acts of omissions herein alleged, and that Plaintiff's injuries as alleged herein were proximately caused by the acts of omissions.

5. Plaintiff is informed and believes and thereon alleges that at all times relevant to and mentioned herein, the Defendants and each of them, were the agents and employees of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as such agents and employees with the permission and consent of their co-Defendants.

6. Plaintiff John Sarsfield was at all times relevant to this matter the District Attorney of the County of San Benito and a resident of the Northern District of California and the County of San Benito.

Plaintiff as District Attorney had no duty to speak out on matters of public concern such as breaches of the public trust, or the criminal misconduct of high ranking county government officials. Further, Plaintiff had no duty as a state law enforcement official (district attorney) to investigate, report or enforce violations of federal criminal or civil law. At all times relevant to this complaint when Plaintiff spoke out on matters of public concern, allegations of criminal misconduct by high ranking local government officials, or breaches of the public trust, he was speaking in his personal capacity as a citizen. Plaintiff's duties as district attorney were limited to the investigation and prosecution of violations of state law. Plaintiff had no duty as district attorney to investigate, participate in, support, or otherwise

forward to third parties or government entities personnel complaints, workplace harassment claims, allegations of employment discrimination, or employment retaliation brought against high ranking local government officials such as supervisor defendants.  Further, Plaintiff as district attorney had no authority to investigate claims of workplace harassment brought by employees of the County of San Benito, including staff of the district attorney's office.  Said authority to investigate any such complaints rested exclusively with defendant County.  At all times relevant herein, when Plaintiff engaged in any such activities in support of personnel complaints filed by third persons, said actions were in Plaintiff's personal capacity as a citizen, and not as district attorney.  At all times relevant herein, the personnel workplace harassment complaints referred to herein that were forwarded and supported by Plaintiff were brought by district attorney employees solely against defendant supervisors and their agents.

      7.  Defendant County of San Benito (hereinafter "County") is and was a local governmental entity, organized under the laws of the State of California and subject to the laws of the United States, the State of California, and the Constitutions of the United States and the State of California.  The County is governed and lead by a five person Board of Supervisors (hereinafter "Board").  The County exercises its powers through the direction and orders of the Board.  The County sets the pay and benefits of County employees, department heads, and officers, including Plaintiff, issues paychecks, contributes to the retirement funds of County employees, department heads and officers, including Plaintiff, and supervises the personnel hiring practices, fills employee vacancies, including the position of District Attorney in the event it becomes vacant, and is the employer of all County employees, department head, and officers, including the District Attorney.  The County also furnishes employees, department heads, and officers, including the District Attorney, their workplace and equipment necessary to perform their work.  The County also issues annual income tax statements to employees, department heads, and officers, including the District Attorney.  County in all aspects is the employer of Plaintiff, except as to the performance of Plaintiff's professional duties.

8. Defendants Jaime De La Cruz, Reb Monaco, Anthony Botelho, and Don Marcus are members of the Board of Supervisors of the County and as such are responsible for creating and setting policy, directing its actions and omissions, and otherwise supervising subordinate County personnel.  At all times relevant to this complaint, the supervisor defendants mentioned herein were not personally bound by the terms of the various contractual agreements entered into and in effect between Plaintiff, County, Fancher, Roybal, and others.  As such, any actions taken by said supervisor defendants that affected said contractual agreements were either taken on behalf of and at the behest of defendant County, or were in their personal capacities and as strangers to the agreements.

9. On or about the late Spring and continuing into the Summer of 2004, County employees Katie Fancher ("Francher") and Julia Roybal ("Roybal") filed a lawsuit in San Benito County Superior Court against County and Plaintiff (hereinafter referred to as Fancher/Roybal I).

10. On or about October 2004, Plaintiff County, and Fancher and Roybal, while in San Francisco, California, entered into a written agreement to engage in confidential mediation talks in an effort to settle and resolve the Fancher/Roybal I matter.  The agreement required all parties to it (Plaintiff, County, its employees, Fancher, and Roybal) to maintain the confidentiality of the scope of the discussions held during mediation.  The agreement was binding and applicable to County, its officers, employees, including Fancher and Roybal, department heads, officers, Board members, and Plaintiff.

11. On or about November 2004, Defendant Monaco, acting on behalf of Defendant County and in his personal capacity, intentionally and tortiously interfered with the contractual relationship between County, plaintiff, Fancher, and Roybal, and breached the mediation agreement without legal excuse or just cause, by publicly discussing in a local San Benito County newspaper the confidential topics of discussions held during the mediation talks in October 2004.  Defendant Monaco's actions were designed to and calculated to take the property interests of plaintiff, i.e., the value of the confidentiality agreement, without compensation and in retaliation for plaintiff reporting to federal law enforcement agents, and others, violations of federal law and other laws by Defendant

4

Monaco's fellow supervisor, Defendant De La Cruz.  Defendant Monaco's action's were also calculated to punish and retaliate against Plaintiff for speaking out publicly as a private citizen about matters of public concern, that is, allegations of criminal and other serious misconduct, and breaches of the public trust, of high ranking County government officials such as Defendant De La Cruz and others.  The violations of federal law reported and publicly discussed by Plaintiff were outside his duties as a state law enforcement official, as District Attorney's have no authority or jurisdiction to enforce federal criminal law.  Neither Defendant Monaco, nor any other Supervisor defendant were parties in their personal capacity to the mediation agreement contract between Plaintiff, County, Fancher and Roybal, and any documents that may have been executed by any of them were done merely as representatives of County.

12.  On and about December 2004 and continuing into January 2005, the County, through Defendants Botelho and Marcus, negotiated and entered into a written settlement agreement (contract) with Plaintiff in the Fancher/Roybal I matter.  The County, through Defendants Botelho and Marcus, induced Plaintiff to settle the Fancher/Roybal I matter by agreeing to and promising to, among other things, defend and indemnify Plaintiff for litigation costs arising out of future legal actions anticipated to be brought by employees Fancher and Roybal, and to maintain the confidentiality provisions of the settlement agreement in the Fancher/Roybal I matter, and its terms.  Relying on County's promises, Plaintiff agreed to settle the Fancher/Roybal I matter.  The terms of the agreement were binding and applicable to  County, its officers, employees, including Fancher and Roybal, department heads, officers, Board members in their official capacities, and Plaintiff.

13.  Shortly after the agreement was reached in the Fancher/Roybal I matter, County employees, or agents of County employees, breached the confidentiality terms of the agreement by releasing to the local media copies of confidential documents disclosed during the mediation talks in October 2004 pursuant to the earlier mentioned mediation agreement.  These actions were taken on behalf of defendant County and by the individual defendant's or their agents, and in their personal capacities.

14. Immediately after the release of the confidential documents, Plaintiff complained to County and its officers and demanded that the employees responsible be located, identified and disciplined. County failed and refused to adequately investigate the leak of the private and confidential information and failed to discipline any County employee, officer, or department head.

15. On and about the late Winter of 2005 and continuing through the Spring and into the Summer, County employees Fancher and Roybal initiated new litigation in San Benito County Superior Court, as anticipated by Plaintiff and County during the negotiations described above. The new litigation (hereinafter referred to as Fancher/Roybal II) was an attempt to overturn the confidentiality provisions of the settlement agreement of Fancher/Roybal I.

16. Contemporaneously to and following the filing of the Fancher/Rancher II, Defendant De La Cruz acting on behalf of County, and also acting in his individual capacity as a private person who was not personally bound by the terms of the settlement agreement and contract entered into between Plaintiff, County, Fancher, and Roybal, began publicly discussing, publishing, and assisting to be published, details of the confidential settlement agreement entered into in the Fancher/Roybal I matter, thereby interfering with the performance of defendant County's contractual obligations to Plaintiff, and the enjoyment of the contractual benefits enjoyed by Plaintiff under the terms of the agreement, and thereby breaching the settlement agreement/contract and invading Plaintiff's right to privacy and taking from Plaintiff without just cause, due process, or fair compensation the value of Plaintiff's property. These actions of Defendant De La Cruz were taken to retaliate against Plaintiff for Plaintiff's reporting to the Federal Bureau of Investigation, in his (Plaintiff's) individual capacity as a citizen, alleged criminal wrongdoing by Defendant De La Cruz and others (said report having been made in late Spring and early Summer of 2004), as well as reports made to the California Attorney General's Office/Department of Justice at the same time, as well as to retaliate against Plaintiff for forwarding County employee workplace harassment complaints against De La Cruz to the County of San Benito human resources department in compliance with Title VII of the Civil Rights Act of 1964 and County anti-

discrimination policies, and for Plaintiff cooperating in the investigation of said complaints, and for Plaintiff speaking out in his private capacity as a citizen about matters of public concern, specifically, the alleged criminal and other misconduct of high ranking county government officials including Defendant De La Cruz and others.  Said employee discrimination/harrassment complaints were submitted to the County on or about the Spring and investigated continuing into the Summer of 2005.  The matters that plaintiff reported and spoke out against were done in plaintiff's personal capacity as a citizen, as District Attorney's have no jurisdiction to enforce criminal violations of federal law and they were also matters of public concern, as the topics were regarding the breach of the public trust, and violations of federal and state law by certain County Supervisors and others.

17. The litigation in the Fancher/Roybal II matter was brought against County although Plaintiff appeared as Amicus and was the de facto real party in interest, as County employees Fancher and Roybal were attempting to overturn provisions of the settlement agreement in Fancher/Roybal I under the pretext of a Public Record Act action, as well as to invade Plaintiff's privacy, and to take Plaintiff's property (the value of the confidentiality clause of the Fancher/Roybal I agreement) without just compensation.

18. Subsequent to the filing of Fancher/Roybal II, County, through its agents, pressured Plaintiff to voluntarily agree to the release of confidential personnel documents without any compensation or consideration as demanded in said lawsuit.  Plaintiff refused.

19. Plaintiff's position in the Fancher/Roybal II matter prevailed, as no additional confidential documents were released by the court, other than those already illegally released in violation of the settlement agreement in Fancher/Roybal I.  Plaintiff incurred legal fees of approximately $14,000.00 in the successful defense of the Fancher/Roybal I agreement and its terms.

20. On or about August 28, 2006, Plaintiff, through counsel, presented County with the bill/request for indemnification for the legal services in Fancher/Roybal II matter, pursuant to the indemnification clause of the Fancher/Roybal I agreement.  On or about September 13, 2006, County breached the settlement agreement in Fancher/Roybal I by failing to indemnify Plaintiff as required.  Specifically County failed to pay the approximate

$14,000.00 bill as required by the agreement and promises of Defendants Botelho and Marcus.

21. Additionally, County had a long established practice of paying the work related expenses, including legal expenses, of County department heads and officers, including members of the Board of Supervisors, the County Sheriff, the County Clerk, the District Attorney, and the County Auditor. County's failure to indemnify Plaintiff was in retaliation for Plaintiff's reporting of Defendant De La Cruz's alleged criminal wrongdoing to the Federal Bureau of Investigation and the California Attorney General's Office, as well as forwarding workplace harassment complaints against Defendant De La Cruz to the County human resources department in accordance with County anti-discrimination policies and Title VII of the Civil Rights Act of 1964. The refusal of Defendant County to pay and or reimburse Plaintiff for the legal expenses, as required by the terms of the Fancher/Roybal I agreement was in retaliation for Plaintiff speaking out as a private citizen and in his personal capacity about violations of federal, state and other laws committed by members of the Board of Supervisors, and others, said violations being matters of extreme public concern, as they concerned violations of law and the public trust by high ranking officials of the county government. As such, County's failure to pay the presented claim was a denial of and in retaliation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, as well as a denial of equal protection of the law, under the Fourteenth Amendment of the United States Constitution, as well as a taking of Plaintiff's property (the value of the indemnification clause of the Fancher/Roybal I agreement) without just compensation, in violation of the Fifth Amendment and Fourteenth Amendments of the United States Constitution.

22. Separate and distinct from the above breaches of contract and retaliations, on or about March 28, 2006, Defendants Jaime De La Cruz, Reb Monaco, Anthony Botelho, and Don Marcus, with the assistance of County employees Susan Thompson and Irma Valencia, engaged in an ultra-vires and de-facto public disciplinary hearing of Plaintiff. Valencia and Thompson are agents and employees of Defendants and at all times herein were acting in that capacity.

23. During the course of said hearing, County, through the actions of and statements of Defendants De La Cruz, Monaco, Botelho and Marcus, defamed Plaintiff by accusing him of professional negligence, or words to that effect, and by Defendant Botelho wrongfully publicly stating that "employees had to be transferred to a different office because of his (Plaintiff's) conduct" or words to that effect, which Defendant Botelho knew in fact at the time was both false and in specific violation of the confidentiality provisions of the Fancher/Roybal I settlement agreement.

24. The de-facto disciplinary hearing described above violated Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, and was a legal sham, in that it was designed to punish and retaliate against Plaintiff for reporting, and publicly speaking out in his private capacity as a citizen, Defendant De La Cruz's alleged criminal actions to the Federal Bureau of Investigation and the Attorney General's Office, as well as for forwarding workplace harassment complaints brought by employees of the district attorney's office against and naming Defendant De La Cruz, as well as for cooperating in the investigation of said complaints, as required by and in compliance with County anti-harassment policies and Title VII of the Civil Rights Act of 1964. Further, the de-facto disciplinary hearing was initiated by and presided over by biased decision makers, specifically Defendant De La Cruz and Monaco, as both had, among other things, announced a personal animus against Plaintiff prior to said hearing, and the decision makers at the hearing also acted as witnesses.

25. Additionally, Plaintiff is unaware of any other County employee, department head, or officer who has ever been subjected to a similar public and de-facto disciplinary hearing and on information and belief asserts that no other department head has been similarly treated, and as such violated Plaintiff's right to equal protection of the laws. Plaintiff was not furnished with any evidence relied upon by Defendants during the course of said hearing, and was therefore not provided a meaningful opportunity to rebut said evidence. Finally, the hearing by County and breach of the terms of the confidentiality clause in the Fancher/Roybal I matter had the effect of taking the property of Plaintiff

without just compensation, ie, the economic value of the confidentiality provision of the Fancher/Roybal I agreement.

26. The actions at the de-facto disciplinary hearing taken by County and Defendants De La Cruz, Monaco, Botelho and Marcus, were in violation of Plaintiff's right to privacy arising out of the settlement agreement in Fancher/Roybal I, as well as an illegal interference with Plaintiff's right to the benefits of the settlement agreement at all of its provisions. The actions were taken to and did in fact retaliate against Plaintiff as described above, and to inflict severe emotional distress upon him, and were in violation of County's own policies preventing retaliation against persons who cooperate in anti-discrimination matters, and were an infringement of Plaintiff's right to liberty under the Fifth and Fourteenth Amendments of the United States Constitution, in that they were designed to and did in fact interfere with Plaintiff's ability to pursue his chosen profession. The actions at the de-facto discipline hearing by County and its agents, and supervisor defendants were designed and calculated to punish Plaintiff for his publicly speaking out, in his private and personal capacity as a citizen, on matters of public concern, specifically the criminal and other wrongdoing of Defendant De La Cruz and others, as well as breaches of the public trust.

27. Following said hearing, County and Defendant's De La Cruz, Monaco, Botelho and Marcus, assisted by their agents Thompson and Valencia, continued to retaliate against Plaintiff by interfering with and attempting to put into place illegal financial and other controls over the District Attorney's Office. Additionally, Valencia was directed to file a baseless complaint with the Attorney General's Office against Plaintiff, a complaint which Valencia did send, later admitting under oath she did not know to be true, or words to that effect. The Attorney General's Office declined to take any action on the complaint.

28. As a result of the continuing harassment and retaliation directed against Plaintiff at the March 28th, 2006 hearing by County and Defendants, Plaintiff was forced to and did receive a Temporary Restraining Order, and later a Preliminary Injunction, in San Benito County, against Defendants.

29. The actions described above were taken by Defendants and each of them with malice and with the intent to vex, annoy and harass Plaintiff, to inflict severe emotional

distress and physical harm, and were designed and calculated to take Plaintiff's property without just compensation, and to punish and retaliate against Plaintiff for reporting allegations of illegal and or wrongful conduct to both federal law enforcement authorities, and the county human resources department, as required by and in compliance with federal and state law, as well as the County's own anti-harrassment policies, and had the effect of infringing upon Plaintiff's liberty without due process of law.  Defendants' actions also negligently inflicted severe emotional distress upon Plaintiff.

30.  As a direct and proximate result of the actions taken by County and Defendants De La Cruz, Monaco, Botelho, and Marcus, Plaintiff has suffered economic harm by the loss of the value of the Fancher/Roybal I settlement agreement , wrongfully been forced to incur an approximate $14,000.00 debt in the Fancher/Roybal II matter, had his liberty infringed without due process of law, and been subjected to severe and pervasive emotional distress, with resulting physical harm to Plaintiff's cardio-vascular system, been denied equal protection of the laws, been denied due process of law, suffered a breach of the contract of the Fancher/Roybal I matter, and had his privacy wrongfully invaded.  Additionally, Defendants actions created a hostile work environment for Plaintiff with the resulting severe physical and emotional harm.

31.  Pursuant to 42 U.S.C. Section 1988, plaintiff is entitled to reasonable attorney's fees.

32.  On or about September 22, 2006, Plaintiff submitted an administrative claim regarding the matters in this complaint to County pursuant to State Law.  Said claim was denied by County on November 13, 2006.

**SECOND CAUSE OF ACTION**

33.  As part of his Second Cause of Action, Plaintiff incorporated Paragraphs 1 through 32 of the First Cause of Action as though said Paragraphs were set forth herein in full by this reference.

34.  In January, 2005, Plaintiff and County, through Defendants Botelho and Marcus, entered into an agreement whereby County agreed to defend and indemnify Plaintiff for the litigation costs arising out of future legal actions anticipated to be brought by employees

11

Fancher and Roybal, and to maintain the confidentiality provisions of the settlement agreement in the Fancher/Roybal I matter, and its terms.  The facts and circumstances surrounding said agreement are set forth in more detail in Paragraph 12 above.

35.  Plaintiff agreed to the written settlement agreement resolving the Fancher/Roybal I matter and otherwise performed all covenants, conditions and other acts to be performed by him under the terms of the said contract.

36.  Defendants breached the contract by doing the things described above in Paragraph 16 and by failing to pay legal fees incurred by Plaintiff in the sum of approximately $14,000.00 in the successful defense of the Fancher/Roybal I agreement as described above in Paragraph 19.

37.  As a result of said breach of contract by Defendants, Plaintiff has been damages as alleged above in Paragraph 30.

WHEREFORE, Plaintiff prays relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

38.  Plaintiff, as part of his Third Cause of Action, hereby incorporates Paragraphs 1 through 32 of the First Cause of Action.

39.  Plaintiff had a legal right to the benefits under the contract described above in Paragraphs 12 and 34.

40.  By doing the things described above in Paragraph 16, 18, 20, 21, 22, 23, 24, 25, 26 and 27, Defendants County, De La Cruz, Monaco, Botelho and Marcus, caused Plaintiff to be deprived of the benefits of the contract described above in Paragraphs 12 and 34.  Said Defendants engaged in the conduct described above in Paragraphs 16, 18, 20, 21, 22, 23, 24, 25, 26 and 27, willfully, oppressively, fraudulently, maliciously, and with the knowledge that said conduct by said Defendants would cause Plaintiff to be deprived of the benefit of the contract described above in Paragraphs 12 and 34.  Plaintiff is therefore entitled to punitive damages.

WHEREFORE, Plaintiff prays judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION

41. Plaintiff, as part of his Fourth Cause of Action, hereby incorporates Paragraphs 1 through 32 of the First Cause of Action.

42. The conduct of Defendants, and each of them, was outrageous and unprivileged, amounting to a willful, intentional and reckless disregard for the rights of Plaintiff with the probability of causing emotional distress to Plaintiff and was intentional and malicious, done for the purpose of causing plaintiffs to suffer anxiety, mental anguish and severe emotional and physical distress.

43. The conduct set forth above directly and proximately caused severed and protracted emotional distress to Plaintiff and still causes Plaintiff to suffer, and will continue to cause Plaintiff to suffer in the future.

44. As a direct and proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff has suffered physical, mental and psychological pain and anguish. As a further result thereof, by reason of his injuries, Plaintiff has incurred expenses and will necessarily incur additional like expenses for an indefinite period of time in the future; the exact amount of such expenses will be stated according to proof, pursuant to California Code of Civil Procedure Section 425.10.

45. As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff was hurt and injured in his health, strength and activity, sustaining injury to his body and shock and injury to his nervous system and person, all of which said injuries have caused and continue to cause Plaintiff great physical, mental and nervous pain and suffering. Plaintiff is informed and believes, and thereupon alleges, that said injuries will result in some permanent disability to him, all to his general damage, in an amount according to proof pursuant to California Code of Civil Procedure Section 425.10.

46. As further direct and proximate result of the conduct of Defendants, and each of them, Plaintiff was caused to, and did suffer, severe emotional distress and anxiety, causing

additional injuries according to proof, pursuant to California Code of Civil Procedure Section 425.10.

47. All of the foregoing acts by Defendants, and each of them, constituted an utter wanton, conscious and careless disregard of the rights of Plaintiff and, as such conduct constituted oppression, fraud or malice under California Civil Code Section 3294, Plaintiff requests punitive and exemplary damages as set forth hereinafter; inherent in Plaintiff's right to redress by exemplary damages are the following purposes: that said Defendants, and each of them, be deterred from continuing their conscious and despicable disregard for the rights of Plaintiffs and persons similarly situated; that said Defendants, and each of them, be liable for such punitive measures and in such punitive amounts as to constitute an example which would deter them, as well as similar persons and entities in the same industries, from like wanton, malicious, conscious and despicable disregard for the rights of the public; and that in order for the purposes to be fulfilled of the right to redress by exemplary damages, the punitive and exemplary damages should be in proportion to the assets and income of said Defendants.

48. As a further proximate result of the said negligent, careless, wanton and reckless conduct of the defendant, plaintiff has suffered general damages.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

On account of all Causes of Action,

1. The damages in the sum of approximately $14,000.00, consisting of the amount which Plaintiff incurred for attorney's fees and costs and the successful defense of the Fancher/Roybal I agreement and its terms;

2. General damages of not less than $1,000,000.00;

3. Damages for Plaintiff's mental anguish and emotional distress, in an amount within jurisdiction of this Court, according to proof;

4. For costs of suit herein incurred; and

5. For such other and further relief as the Court deems proper.

On account of the First and Second Causes of Action,

1. For attorney's fees, according to proof;

On account of the Third and Fourth Causes of Action,

1. For punitive damages against all Defendants in the sum of not less than $5,000,000.00.

Dated: November 29, 2007                    MAYO & ROGERS
                                            Attorneys for Plaintiff,
                                            John Sarsfield


                                    By:     _____
                                            Terence O. Mayo

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: November 29, 2007                    MAYO & ROGERS
                                            Attorneys for Plaintiff,
                                            John Sarsfield


                                    By:     _____
                                            Terence O. Mayo