1  STEPHAN A. BARBER (SBN 70070)
   DANIEL P. MCKINNON (SBN 234749)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   80 North First Street
3  San Jose, CA 95113
   Telephone:    (408) 287-6262
4  Facsimile:    (408) 918-4501
   Email:        sbarber@ropers.com
5  Email:        dmckinnon@ropers.com

6  Attorneys for Defendant
   COUNTY OF SAN BENITO

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA
                      SAN JOSE DIVISION

10

11                                    CASE NO.  C-07-2528 JF

   JOHN J. SARSFIELD
12                                    **NOTICE OF MOTION AND MOTION TO
          Plaintiff,                  DISMISS PLAINTIFF'S FIRST AMENDED
13                                    COMPLAINT FOR FAILURE TO STATE
                                      A CLAIM UPON WHICH RELIEF CAN BE
      v.                              GRANTED [FRCP 12(b)(6)]; FAILURE TO
14                                    PROVIDE A BRIEF STATEMENT OF THE
   COUNTY OF SAN BENITO, JAIME DE     CLAIM [FRCP 8(a)]; REQUEST FOR
15 LA CRUZ, in his official capacity, REB   JUDICIAL NOTICE [FRE 201]**
   MONACO, in his official capacity,
16 ANTHONY BOTELHO, in his official
   capacity, DON MARCUS, in his official
17 capacity, and DOES 1 through 10,   **Date:      March 7, 2008
   inclusive,                         Time:       9:00 a.m.
18                                    Courtroom: 3
          Defendants.                 Judge:      Hon. Jeremy Fogel**
19

20

21 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22        PLEASE TAKE NOTICE that on March 7, 2008, at 9:00a.m., or as soon thereafter as the

23 matter may be heard in Courtroom 3 of the above entitled Court, located at 280 S. First Street,

24 San Jose, California, defendants COUNTY OF SAN BENITO, JAIME DE LA CRUZ, REB

25 MONACO, ANTHONY BOTELHO, and DON MARCUS (collectively "Defendants") will move

26 the Court to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(6) because

27 Plaintiff JOHN SARSFIELD ("Plaintiff") fails to state a claim upon which relief can be granted.

28        It is requested the Court dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil

                              - 1 -                    Case No. C-07-2528 JF

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Procedure 12(b)(6) on the grounds that:

(1)    Plaintiff's first cause of action for violation of civil rights under 42 U.S.C. §1983 fails to state a claim upon which relief can be granted. Specifically, Plaintiff fails to identify any deprivation of a right, privilege, or immunity secured by the Constitution;

(2)    Plaintiff's second cause of action for breach of contract fails because Plaintiff voluntarily incurred attorney's fees when no legal claim or cause of action had been asserted against him and the Defendants were required by law and authorized by the agreement to disclose its terms;

(3)    Plaintiff's third cause of action for tortious interference with contract fails because Plaintiff has essentially plead a cause of action for breach of contract;

(4)    Plaintiff's fourth cause of action for intentional infliction of emotional distress fails because the conduct complained of is protected by an absolute privilege, and emotional distress damages are not available for a breach of contract;

In addition to the foregoing, all causes of action directed against the individual board members should be dismissed because they are entitled to absolute legislative immunity under California Civil Code Section 47. It is also requested that the action be dismissed for failure to provide a short and plain statement of the claim as required by Federal Rules of Civil Procedure 8(a).

The Motion will be based on this Notice of motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Daniel P. McKinnon, the Request for Judicial Notice and attached exhibits, the pleadings and papers filed herein, and upon such other oral or documentary evidence of showing as may be made at the hearing of said motion.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   Dated: December 19, 2007                    ROPERS, MAJESKI, KOHN & BENTLEY

2

3                                              By: _____
                                                   STEPHAN A. BARBER
4                                                  DANIEL P. MCKINNON
                                                   Attorneys for Defendant
5                                                  COUNTY OF SAN BENITO

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose



STEPHAN A. BARBER (SBN 70070)
DANIEL P. MCKINNON (SBN 234749)
ROPERS, MAJESKI, KOHN & BENTLEY
80 North First Street
San Jose, CA 95113
Telephone:    (408) 287-6262
Facsimile:    (408) 918-4501
Email:        sbarber@ropers.com
Email:        dmckinnon@ropers.com

Attorneys for Defendant
COUNTY OF SAN BENITO

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

JOHN J. SARSFIELD

Plaintiff,

v.

COUNTY OF SAN BENITO, JAIME DE
LA CRUZ, in his official capacity, REB
MONACO, in his official capacity,
ANTHONY BOTELHO, in his official
capacity, DON MARCUS, in his official
capacity, and DOES 1 through 10,
inclusive,

Defendants.

CASE NO. C-07-2528 JF

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED
[FRCP 12(b)(6)]; FAILURE TO PROVIDE
A BRIEF STATEMENT OF THE CLAIM
[FRCP 8(a)]; REQUEST FOR JUDICIAL
NOTICE [FRE 201]**

**Date:        March 7, 2008
Time:        9:00 a.m.
Courtroom: 3
Judge:      Hon. Jeremy Fogel**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5038917.2/DPM

CASE NO. C-07-2528 JF

1

# TABLE OF CONTENTS

2

Page

3  I.    INTRODUCTION .................................................................................. 1

4  II.   PROCEDURAL HISTORY ..................................................................... 2

   III.  PLAINTIFF'S ALLEGATIONS ............................................................. 3

5        A.   Background ............................................................................... 3

6        B.   Plaintiff's First Cause of Action for Violation of Civil Rights 42 U.S.C.
              Section 1983 ............................................................................. 3

7        C.   Plaintiff's Second and Third Causes of Action for Breach of Contract and
8             Tortious Interference with Contract .......................................... 4

         D.   Plaintiff's Fourth Cause of Action for Intentional Infliction of Emotional
9             Distress .................................................................................... 4

10 IV.   LEGAL STANDARD ............................................................................ 4

   V.    DISCUSSION ....................................................................................... 5

11       A.   First Cause of Action for Violation of Civil Rights Under 42 U.S.C.
              Section 1983 ............................................................................. 5
12
              1.    Plaintiff's Own Allegations Confirm That The Alleged Speech Was
13                  Made In His Capacity As District Attorney and Therefore Is Not
                    Constitutionally Protected Speech ..................................... 5
14
              2.    Plaintiff Was Not Denied a Valuable Public Benefit ............ 10
15       B.   Plaintiff's Perfunctory References to Constitutional Rights Does Not
              Support A Claim Arising Under Section 1983 ............................ 13
16
              1.    Breach of The Confidential Settlement Agreement by Disclosing its
17                  Details .............................................................................. 13

18            2.    Breach of the Confidential Settlement Agreement by Refusing to
                    Reimburse Plaintiff for Attorney's Fees ............................ 14
19
              3.    Defamation of Plaintiff During a Public Hearing .................. 15
20
              4.    Financial Restrictions Over the District Attorney's Office........ 17
21
              5.    Filing a Baseless Complaint Against Plaintiff in the Attorney
                    General's Office ................................................................. 18
22       C.   Plaintiff's Second Cause of Action for Breach of Contract Fails Because
              The County Was not Required to Indemnify Plaintiff for Voluntarily
23            Incurred Attorney's Fees .......................................................... 18

         D.   Plaintiff Has Failed to State a Cause of Action for Tortious Interference
24            With Contract ........................................................................... 20

25       E.   Plaintiff's Sixth Cause of Action for Intentional Infliction of Emotional
              Distress Fails Because the Conduct Complained of is Protected by an
26            Absolute Privilege, and Emotional Distress Damages are not Available for
              a Breach of Contract ................................................................ 22

27       F.   None of the Claims Can Be Maintained Against The Individual Members
              of the County Board of Supervisors ........................................... 24
28
         G.   The Court Should Abstain from Taking Part in a Political Dispute ....... 24

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

- i -

# TABLE OF CONTENTS
## (continued)

                                                                                    **Page**

    H.    The Court Should Dismiss the Complaint for Failure to Make a Short and
        Plain Statement of Plaintiff's Claim, or Alternatively, Require Plaintiff to
        Provide a More Definite Statement of his Claims ................................................ 24

VI.    CONCLUSION ................................................................................................................ 25

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Board of County Com'rs v. Umbehr* (1996) 518 U.S. 668 .................................................. 12

*Bradley v. Chiron Corp.* (1998) 136 F.3d 1317 ................................................................. 7

*Burford v. Sun Oil Co.* (1943) 319 U.S. 315 .................................................................. 24

*Dumas v. Kipp* (9th Cir. 1996) 90 F.3d 386 .................................................................. 5

*Garcetti v. Ceballos* (2006) 126 S. Ct. 1951 .............................................................. 5, 10

*Givhan v. Western Line Cons. School Dist.* (1978) 439 U.S. 410 .................................. 11

*Ileto v. Glock Inc.*, (9th Cir. 2003) 349 F.3d 1191 ........................................................ 4

*In re Silicon Graphics, Inc. Securities Litigation* (9th Cir., 1999) 183 F.3d 970 .............. 4

*Jacobson v. Schwarzenegger* (2004) 357 F. Supp. 2d 1198 .......................................... 24

*Jenkins v. McKeithen* (1969) 395 U.S. 411 .................................................................. 4

*Keyishian v. Board of Regents* (1967) 385 U.S. 589 ..................................................... 11

*Lucas v. Department of Corrections* (9th Cir., 1995) 66 F.3d 245 .................................. 5

*Lujan v. G&G Sprinklers* (2001) 532 U.S. 189 ............................................................. 15

*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279 ............................ 4

*Marder v. Lopez* (9th Cir. 2006) 405 F.3d 445 ............................................................. 19

*Mullis v. United States Bankruptcy Ct. (9th Cir. 1987)*, 828 F.2d 1385 ......................... 4

*Perry v. Sindermann*, 408 U.S. 593, 594-595 ......................................................... 10, 11

*Progressive Transport Services v. County of Essex*, 999 F. Supp. 701 .......... 10, 11, 12, 15

*Rankin v. McPherson* (1987) 483 U.S. 378 .................................................................. 11

*Swartz v. KPMG LLP* (9th Cir. 2007) 476 F.3d 756 ...................................................... 19

*Transphase Systems, Inc. v. Southern Calif. Edison Co.* (1993) 839 F. Supp. 711 ............ 9

*United States v. Treasury Employees* (1995) 513 U.S. 454 ............................................ 12

*Weiner v. San Diego County* (9th Cir. 2000) 210 F.3d 1025 .......................................... 17

*Weisbuch v. County of Los Angeles* (9th Cir., 1997) 119 F.3d 778, fn. 1 ........................ 9

**STATE CASES**

*Angell v. Peterson Tractor, Inc.*, 21 Cal. 4th 981 (1994)................................................ 23

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

*Careau & Co. v. Security Pacific Business Credit Corporation*, 222 Cal. App. 3d 1371 (1990) ........................................................................................ 23

*Christensen v. Superior Court* (1991) 54 Cal.39 ....................................... 22

County. *Register Division of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal. App. 3d 893.................................................... 13, 20

*Fisher v. San Pedro Peninsula Hosp.* (1989) 214 Cal. App. 3d 590 ............... 22

*Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85 (1995).................. 23

*Molko v. Holy Spirit Assn.* (1988) 46 Cal. 3d 1092 ................................ 22

*Potter v. Firestone Tire and Rubber Co.* (1993) 6 Cal.4th 965, 1001 ............ 22

*Reeves v. Hanlon* (2004) 33 Cal. 4th 1140 ........................................... 21

*Shoemaker v. Myers*, 192 Cal. App. 3d 788 (1987) ............................ 21, 23

*United States Liability Insurance Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal. 3d 586............................................................................................ 24

## FEDERAL STATUTES

42 U.S.C. §1983 ..................................................................... 12, 14, 18

28 U.S.C. §1367(c)(3)..................................................................... 15

F.R.C.P. 8(a) ................................................................................. 1

F.R.C.P. 12(b)(6)..................................................................... 1, 19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)**

# I.
## INTRODUCTION

Plaintiff JOHN J. SARSFIELD ("Plaintiff") is the former District Attorney for the County of San Benito.  Plaintiff is suing defendants COUNTY OF SAN BENITO ("County"), JAIME DE LA CRUZ, REB MONACO, ANTHONY BOTELHO, and DON MARCUS (collectively "Defendants") for damages arising out of an alleged breach of a settlement agreement during his tenure as District Attorney.  De La Cruz, Monaco, Botelho, and Marcus are being sued in their official capacity as members of the County Board of Supervisors.

Pursuant to the Court's November 9, 2007 Order, Plaintiff was given leave to amend to allege facts which show that Plaintiff's speech concerned matters outside his job responsibilities as the District Attorney. However, Plaintiff has done nothing more than add legal conclusions cast in the form of factual allegations that the speech in question was made in his personal capacity as a citizen.

Plaintiff's claim that the speech at issue was "outside his duties as a state law enforcement official" [¶11 of Plaintiff's Amended Complaint] is flatly contradicted by his own factual allegations that at all relevant times he was the District Attorney of the County of San Benito [¶6 of Plaintiff's Amended Complaint], that he forwarded workplace harassment complaints as a result of his own staff coming to their superior with issues related to their employment [Ibid], and he reported criminal wrongdoing as he was required to do in his capacity as District Attorney. [¶29 of Plaintiff's Amended Complaint.]

Moreover, Plaintiff's allegation that he was retaliated against for "reporting" the wrongful conduct of one of the individual board members to federal and state agencies [¶16 of Plaintiff's Amended Complaint] is a blatant misrepresentation of fact to this Court as evidenced by his prior allegations that the he retaliated against for "criminally prosecuting" one of the individual board members.  [¶8 of Plaintiff's Administrative Claim; *Exhibit A* to Defendants' Request for Judicial Notice.]  Thus, the alleged retaliation did not occur as a result of Plaintiff exercising his right to free speech as a private citizen, but rather as a result of Plaintiff prosecuting the criminal wrongdoing of one of the board members, an act that falls squarely within his responsibilities as

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    the District Attorney.

2         Plaintiff's amended complaint makes it obvious that the only way he can allege a federal

3    claim under Section 1983 is by making false allegations supported only by erroneous legal

4    conclusions. Under these circumstances, Plaintiff's first cause of action for violation of 42 U.S.C.

5    section 1983 is a sham. Since Plaintiff's current and prior allegations effectively bar his ability to

6    truthfully allege facts which would support a claim arising under Section 1983, Plaintiff's first

7    amended complaint should be dismissed with prejudice. The remaining causes of action are

8    based wholly on state law, and should similarly be dismissed for lack of jurisdiction.

## II.
## PROCEDURAL HISTORY

10        On May 11, 2007, Plaintiff filed a complaint alleging various causes of action including

11   violation of his civil rights pursuant to 42 U.S.C. Section 1983. Defendants moved to dismiss

12   Plaintiff's complaint pursuant Rule 12(b) (6) and the Court heard oral arguments on October 19,

13   2007. On November 9, 2007, the Court issued an Order granting Defendants' Motion to Dismiss

14   *without leave to amend* as to Plaintiff's causes of action for violation of California Labor Codes

15   sections 1102.5 and 203, and negligent infliction of emotional distress. The Court also granted

16   Defendants' Motion to Dismiss *with leave to amend* as to Plaintiff's causes of action for violation

17   of civil rights under 42 U.S.C. Section 1983 and tortious interference with contract. In light of its

18   dismissal of the §1983 claim, the Court deferred a decision on Plaintiff's claims for breach of

19   contract and intentional infliction of emotional distress by declining to exercise supplemental

20   jurisdiction for Plaintiff's state law claims.

21        On November 29, 2007, Plaintiff filed an amended complaint alleging four causes of

22   action: 1) violation of civil rights under 42 U.S.C. section 1983; 2) breach of contract; 3) tortious

23   interference with contract; and 4) intentional interference with contract. Plaintiff is seeking

24   $14,000 in attorney's fees allegedly owed pursuant to a settlement agreement, general damages in

25   excess of $1 million, unspecified damages for mental anguish and emotional distress, punitive

26   damages, and attorney's fees.

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5038917.2/DPM                         - 2 -                    Case No. C-07-2528 JF

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

### III.
### PLAINTIFF'S ALLEGATIONS

**A.    Background**

On August 12, 2004, County employees Katie Fancher ("Fancher") and Julie Roybal ("Roybal") filed a complaint against the County and Plaintiff in the San Benito County Superior Court (San Benito County Superior Court Case Number CV-04-00117).  [¶9 of Plaintiff's Amended Complaint.]  The complaint alleged that Plaintiff, as their supervisor, engaged in sexual harassment and gender discrimination against them.  In January 2005, the County and Plaintiff entered into a confidential settlement agreement with Fancher and Roybal.  [¶12 of Plaintiff's Amended Complaint.]

On March 11, 2005, Fancher and Roybal filed a petition for writ of mandate pursuant to the California Public Records Act in the San Benito County Superior Court, requesting the release of documents relating to the County's investigation of the sexual harassment complaint (San Benito County Superior Court Case Number CU-05-00042).  [¶¶15, 17 of Plaintiff's Amended Complaint.]  The only parties to this action were Petitioners Fancher and Roybal and the Respondent County. [Ibid.]  The County opposed the petition, arguing the requested records were privileged because they were prepared in anticipation of litigation and therefore protected from disclosure.

Although Plaintiff was not a party to the action, he voluntarily injected himself into the proceeding by filing an *amicus curie* brief through counsel.  [Ibid.]  As a result, Plaintiff claims to have incurred $14,000 in attorney's fees, which he sought to recover from the County under an indemnity provision in the confidential settlement agreement.  [¶19 of Plaintiff's Amended Complaint.].  County refused to reimburse Plaintiff for his attorney's fees and this lawsuit ensued. [¶20 of Plaintiff's Amended Complaint.]

**B.    Plaintiff's First Cause of Action for Violation of Civil Rights 42 U.S.C. Section 1983**

Plaintiff alleges the Defendants violated his First Amendment rights by retaliating against him for reporting alleged criminal wrongdoing of defendant De La Cruz to the FBI and Attorney General's Office, as well as forwarding workplace harassment complaints against defendant De

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]

1  La Cruz and cooperating in the investigation of those complaints. [¶11, 16, 21, 24, and 29 of

2  Plaintiff's Amended Complaint.]

3  **C.    Plaintiff's Second and Third Causes of Action for Breach of Contract and Tortious**
   **Interference with Contract**

4

5  Plaintiff alleges that the Defendants breached the settlement agreement by: 1) disclosing

   details of the settlement to the public [¶¶13, 16, and 26 of Plaintiff's Amended Complaint.]; and

6  2) by not indemnifying Plaintiff $14,000 in attorney's fees allegedly owed under the settlement

7  agreement.   [¶20 of Plaintiff's Amended Complaint.] Plaintiff's cause of action for tortious

8  interference with contract is based on the same allegations.

9

10 **D.    Plaintiff's Fourth Cause of Action for Intentional Infliction of Emotional Distress**

   Plaintiff alleges the Defendants intentionally caused him emotional distress by doing those

11 things alleged above.

12

13                                         **IV.**
                                  **LEGAL STANDARD**

14 For the purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and

15 the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v.*

16 *McKeithen* (1969) 395 U.S. 411, 421.   However, the court need not "accept any unreasonable

17 inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto*

18 *v. Glock Inc.*, (9th Cir. 2003) 349 F.3d 1191, 1200.

19 Further, the court need not accept as true, allegations that contradict facts which may be

20 judicially noticed such as matters of public record including pleadings, orders, and other papers

21 filed with the court or records of administrative bodies.  See *Mullis v. United States Bankruptcy*

22 Ct. (9th Cir. 1987) 828 F.2d 1385, 1388; *Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798

23 F.2d 1279, 1282.

24 Under the "incorporation by reference" doctrine, the Court may consider documents that

25 are referenced extensively in the complaint and accepted by all parties as authentic, even if they

26 are not physically attached to the complaint without converting the Rule 12(b)(6) motion into one

27 for summary judgment. *In re Silicon Graphics, Inc. Securities Litigation* (9th Cir., 1999) 183 F.3d

28 970; *Van Buskirk v. Cable News Network, Inc.* (9th Cir., 2002) F.3d 977, 980.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    Although leave to amend must be granted unless it is clear that the complaint's

2  deficiencies cannot be cured by amendment, when an amendment would be futile, dismissal may

3  be ordered with prejudice. *Lucas v. Department of Corrections* (9th Cir., 1995) 66 F.3d 245, 248;

4  *Dumas v. Kipp* (9th Cir., 1996) 90 F.3d 386, 393.

**V.**
**DISCUSSION**

5

6

**A.    First Cause of Action for Violation of Civil Rights Under 42 U.S.C. Section 1983**

7    This Court's November 9, 2007 Order granting Defendants' Rule 12(b)(6) Motion to

8  Dismiss Plaintiff's first cause of action for violation of civil rights under 42 U.S.C. section 1983

9  addressed two separate issues:

10   (1)    Whether Plaintiff's speech qualified as constitutionally protected speech; and

11   (2)    Whether Plaintiff had alleged a constitutionally protected right.

12   The Court found that Plaintiff had not alleged sufficient facts to show that Plaintiff's

13  speech concerned matters outside the scope of his job responsibilities as the District Attorney for

14  the County of San Benito.  Pursuant to *Garcetti v. Ceballos* (2006) 126 S.Ct. 1951, any

15  statements made by Plaintiff pursuant to his official duties as the District Attorney are not

16  protected speech for First Amendment purposes.  Therefore, Plaintiff's first cause of action was

17  dismissed with leave to amend to allow Plaintiff an opportunity to allege sufficient facts to show

18  that the alleged speech was not made in his capacity as District Attorney.

19

        **1.    Plaintiff's Own Allegations Confirm That The Alleged Speech Was Made In**
20             **His Capacity As District Attorney and Therefore Is Not Constitutionally**
                **Protected Speech**
21

22   The speech which forms the basis for Plaintiff's allegations that the Defendants retaliated

        against him in violation of his civil rights is alleged as follows:
23

24       These actions of [the Defendants] were taken to retaliate against Plaintiff for
         Plaintiff's reporting Defendant De La Cruz's alleged criminal wrongdoing to the
25       Federal Bureau of Investigation and the California Attorney General's Office, as
         well as forwarding workplace harassment complaints against Defendant De La
26       Cruz to the County human resources department in accordance with County anti-
         discrimination policies and Title VII of the Civil Rights Act of 1964.  [¶16 of
         Plaintiff's Amended Complaint.][1]
27

28

---

[1] See also ¶¶ 11, 21, 24, and 29.
RC1/5038917.2/DPM

- 5 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

This is the same allegation that was made in Plaintiff's original complaint. Pursuant to the Court's November 9, 2007 Order, Plaintiff needed to allege facts to show that the above-quoted speech concerned matters outside the scope of his job responsibilities as District Attorney:

> As currently drafted, Plaintiff's complaint does not allege sufficient facts to show that Plaintiff's speech concerned matters outside the scope of his job responsibilities; it is unclear, however, whether Plaintiff could cure the pleading defect if given the opportunity to allege additional facts. Accordingly, the §1983 claim will be dismissed with leave to amend. [Court's November 9, 2007 Order; *Exhibit B* to Defendants' Request for Judicial Notice.]

In an attempt to cure the pleading defect identified by this Court, Plaintiff added the following language to his amended complaint:

> The matters that plaintiff reported and spoke out against were done in plaintiff's personal capacity as a citizen, as District Attorney's have no jurisdiction to enforce criminal violations of federal law and they were also matters of public concern, as the topics were regarding the breach of the public trust, and violations of federal and state law by certain County Supervisors and others. [¶16 of Plaintiff's Amended Complaint.]

However, Plaintiff's conclusory allegations that his speech was made in his "personal capacity as a citizen" and characterization of that speech as related to "criminal violations of federal law" are contradicted by prior allegations made by Plaintiff in his administrative claim to the County dated September 22, 2006:

> These actions of [the Defendants] were taken to retaliate against claimant for criminally prosecuting De La Cruz in an election/political corruption case, and to punish claimant for supporting employment harassment complaints that had been filed concurrently and in that time frame against De La Cruz by and on behalf of county employees. [¶8 of Plaintiff's Administrative Claim; *Exhibit A* to Defendants' Request for Judicial Notice.][2]

The allegations in Plaintiff's amended complaint and administrative claim quoted above are nearly identical. However, the amended complaint alleges that the Defendants retaliated against Plaintiff for "reporting" the alleged criminal wrongdoing of De La Cruz, whereas the administrative claim alleges Plaintiff was retaliated against for "criminally prosecuting" the alleged criminal wrongdoing of De La Cruz.

Plaintiff conveniently mischaracterizes the nature the speech in his amended complaint because pursuant to Government Code section 26500, criminal prosecutions for criminal wrongdoing fall squarely within the scope of his job responsibilities as a district attorney:

---

[2] See also ¶¶12, 13, and 18.
RC1/5038917.2/DPM

Case No. C-07-2528 JF

The district attorney is the public prosecutor, except as otherwise provided by law.

The public prosecutor shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all prosecutions of public offenses.

Thus, the allegations in Plaintiff's amended complaint are false. The speech at issue did not relate to Plaintiff's "reporting" criminal wrongdoing. Rather, the speech at issue related to Plaintiff "prosecuting" criminal wrongdoing. Unlike the administrative claim wherein Plaintiff had no reason to make false allegations to create a federal question, here, Plaintiff needs to distort the facts to support his federal claim under Section 1983. If Plaintiff were to truthfully plead the facts he would bar his ability to bring his case in federal court because there is no constitutionally protected speech arising from his criminal prosecution of an individual for criminal wrongdoing. Contrary to his unsupported legal conclusions, the allegations of fact show the speech was not "done in plaintiff's personal capacity as a citizen," but rather, in his official capacity as the District Attorney.

This is further evidenced by Plaintiff's vague reference in the amended complaint to the "criminal wrongdoing" of De La Cruz. Plaintiff purposely excludes the nature of the criminal wrongdoing in an attempt to suggest that it arose under federal law which presumably supports his assertion that he had "no jurisdiction to enforce criminal violations of federal law." [¶16 of Plaintiff's Amended Complaint.] However, Plaintiff's prior allegation that he was retaliated against for criminally prosecuting an "election/political corruption" case of one of the individual County board members contradicts Plaintiff's assertion that he did not have jurisdiction to prosecute the case because it involved violations of federal law.

Therefore Plaintiff's allegations in the his amended complaint are a sham and contrived for the sole purpose of creating a federal claim under Section 1983 by intentionally mischaracterizing the nature of the speech at issue. Under these circumstances, the court may strike the contradictory allegations as "false and sham" and dismiss the complaint for failure to state a claim. *Bradley v. Chiron Corp.* (1998) 136 F.3d 1317, 1324. In fact, this Court noted in its November 9, 2007 Order, that Plaintiff admitted that "reporting alleged criminal conduct *may* have been part of Plaintiff's job description." [Emphasis in the original.] In light Plaintiff's

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   allegations in the administrative claim that the County retaliated against Plaintiff for criminally

2   prosecuting De La Cruz in an election/political corruption case, there can be no question that this

3   speech was made as the District Attorney for the County of San Benito.

4        Plaintiff's willingness to manipulate facts and mischaracterize the nature of his claim is

5   undermined by his inability to do so consistently. For example, Plaintiff's legal conclusion that

6   his reporting of personnel harassment complaints were outside of his job responsibilities is

7   contradicted by his own allegations that it was his own staff members who allegedly reported to

8   him they had been harassed:

9        "At all times relevant herein, the personnel workplace harassment complaints
         referred to herein that were forwarded and supported by Plaintiff were brought by
10       district attorney employees solely against defendant supervisors and their agents."
         [¶6 of Plaintiff's Amended Complaint.]

11  Therefore, Plaintiff did not forward workplace complaints in his capacity as a private

12  citizen, but rather, as the District Attorney, whose staff allegedly came to their superior with

13  complaints. Moreover, pursuant to Government Code section 26500.5, Plaintiff had a duty to

14  participate in any program which would improve the administration of justice:

15       The district attorney may sponsor, supervise, or participate in any project or
         program to improve the administration of justice.
16
    It was clearly within Plaintiff's job responsibilities to participate in a County anti-
17
    harassment program that serves to address County employee's grievances in lieu of formal
18
    litigation. In fact, Plaintiff himself acknowledges that he "was at all time relevant to this matter
19
    the District Attorney of the County of San Benito," [¶6 of Plaintiff's Amended Complaint] and
20
    he reported the misconduct as he was required to do in his capacity as District Attorney:

21       [The] allegations of illegal and or wrongful conduct to both federal law
         enforcement authorities, and the county human resources department, *as required
22       by* and in compliance with federal and state law, as well as the County's own anti-
         harrassment [sic] policies.... [Emphasis added.] [¶29 of Plaintiff's Amended
23       Complaint.]

24  Thus, Plaintiff readily admits that as the District Attorney, he was required to participate

25  in the administration of justice by reporting misconduct that was brought to his attention by his

26  own employees. Like trying to fit a square peg into a round hole, Plaintiff is constantly fighting

27  with factual allegations that are contradictory to his legal conclusions. Plaintiff's federal claim

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  cannot be saved by pleading legal conclusions where the facts pleaded are inconsistent with

2  those legal conclusions.  *Weisbuch v. County of Los Angeles* (9th Cir., 1997) 119 F.3d 778, 783,

3  fn. 1.

4      Moreover, Plaintiff's first cause of action should be dismissed for failure to file a proper

5  claim pursuant to Government Code section 910.  Plaintiff alleges that on September 22, 2006,

6  he "submitted an administrative claim regarding the matters in this complaint to the County

7  pursuant to State Law." [¶32 of Plaintiff's Amended Complaint.]  However, as discussed above,

8  the factual allegations of Plaintiff's administrative claim contradicts those in his amended

9  complaint.

> The filing of a proper a claim pursuant to Government Code section 910 is a condition precedent to the maintenance of an action against the state for damages caused by tort.  [Citations.]  "If a plaintiff relies on more than one theory of recovery against the State, each cause of action must have been reflected in a timely claim.  In addition, ***the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint***; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim. [Emphasis added.] [Citations.] *Donohue v. State of California* (1986) 178 Cal.App.3d 795, 802.

15      Here, the factual circumstances set forth in the administrative claim do not correspond

16  with the facts alleged in the amended complaint.  As discussed above, the facts relating to

17  alleged speech at issue is significant because it goes to the very heart of Plaintiff's cause of

18  action for violation of civil rights under Section 1983.  The facts alleged in the administrative

19  claim contradict those alleged in the amended complaint and therefore could not have formed the

20  basis for the County's rejection of Plaintiff's claim.   Thus, in addition to making patently false

21  allegations, Plaintiff failed to file a proper claim pursuant to Government Code section 910.

22      The only thing left in Plaintiff's amended complaint which could conceivably support the

23  Section 1983 claim is his conclusory allegations regarding his duties as a district attorney and

24  that his actions were taken in Plaintiff's personal capacity as a citizen.  This Court need not

25  accept as true Plaintiff's conclusory allegations or legal characterizations.  *Transphase Systems,*

26  *Inc. v. Southern Calif. Edison Co.* (1993) 839 F.Supp. 711, 718.  As one court has put it, courts

27  need not "swallow the plaintiff's invective hook, line and sinker; bald assertions, unsupportable

28  conclusions, periphrastic circumlocutions, and the like need not be credited.   *Aulson v.*

*Blanchard* (1996) 83 F.3d 1, 3.

For the reasons discussed above, Plaintiff has failed to allege sufficient facts to show that Plaintiff's speech concerned matters outside the scope of his job responsibilities.    Rather, Plaintiff's allegations show that the speech was made in his capacity as District Attorney for the County of San Benito and pursuant to his official duties entrusted to him by the people who elected him to that office. As such, Plaintiff's speech can not form the basis for his Section 1983 claim. *Garcetti v. Ceballos* (2006) 126 S.Ct. 1951.

Since Plaintiff's current and prior allegations have shown that Plaintiff does not have and could not truthfully plead a claim arising under Section 1983, Plaintiff's first cause of action should be dismissed with prejudice.

## 2.    Plaintiff Was Not Denied a Valuable Public Benefit

Alternatively, Plaintiff was not denied a valuable public benefit.    The rights and obligations arising under a settlement agreement is a private benefit, not a public benefit.   The fact that one of the contracting parties is a public entity does not change what is otherwise simply a private right to enforce the provisions under a settlement agreement.   Otherwise, any settlement agreement between a public agency and an individual would inherently contain a claim arising under Section 1983 for the public agency's alleged breach of that agreement.   This outcome would be nonsensical and contrary to the law.

Cases such as *Perry v. Sindermann* (1972) 408 U.S. 593 and *Progressive Transp. Services v. County of Essex* (1998) 999 F.Supp. 701 do not support the conclusion that simply because a public agency is a party to a private settlement agreement, a breach of that agreement by the public agency gives rise to a denial of a valuable public benefit.

In *Perry*, Odessa Junior College allegedly refused to rehire plaintiff as a professor because he publicly criticized the college's Board of Regents in a newspaper advertisement and by testifying on several occasions before the Texas Legislature. *Perry v. Sindermann, supra*, 408 U.S. at 594-595.   The issue in *Perry* was whether the government could terminate a government employee because of their speech on matters of public concern.   The *Perry* court held that the government may not deny a valuable public benefit to a person because of his exercise of

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    constitutionally protected speech or associations. *Id.* at 597. The valuable public benefit was the

2    right to government employment. Government employment is a public benefit because it is

3    available to all members of the public limited only by availability and qualifications. Therefore,

4    assuming a member of the public is both qualified and the position is available, a denial of the

5    right to that employment would be a denial of a public benefit.

6        Here, there is no public benefit arising from a settlement agreement between the county

7    and three other individuals. Only the parties to the settlement agreement can claim any benefit

8    arising from the settlement agreement. Under no circumstances could the settlement agreement

9    be construed as a public benefit and therefore the breach of that agreement is not a denial of a

10   public benefit. Rather, it is simply a breach of contract which would give the non-breaching party

11   a right to compensatory damages flowing from that breach.

12       Similarly, in *Progressive*, Essex County allegedly refused to rehire plaintiff, an

13   independent contractor, to transport handicapped children to and from school programs because

14   of plaintiff's exercise of its First Amendment rights. *Progressive Transp. Services v. County of*

15   *Essex, supra,* 999 F.Supp. at 702-703. The issue in *Progressive* was whether plaintiff's speech

16   involved matters of public concern. The *Progressive* court held that plaintiff's speech did not

17   implicate matters of public concern. *Id.* at 705.

18       Neither of these cases support the proposition that Plaintiff has, or can, adequately allege a

19   Section 1983 claim based on the facts of this case. Unlike *Perry* and *Progressive*, Plaintiff has

20   not alleged that the County denied any valuable public benefit because of his exercise of free

21   speech. Rather, Plaintiff is asserting the County breached a settlement agreement by disclosing

22   its confidential terms and refusing to indemnify his attorney's fees. In each of the cases involving

23   a Section 1983 claim, the government was alleged to have deprived the plaintiff of a <u>valuable</u>

24   <u>public benefit</u> because the benefit was available to all members of the public.

25       For example, in *Perry v. Sindermann, supra,* 408 U.S. 593, *Givhan v. Western Line Cons.*

26   *School Dist.* (1978) 439 U.S. 410, *Keyishian v. Board of Regents* (1967) 385 U.S. 589, and

27   *Rankin v. McPherson* (1987) 483 U.S. 378 each of the plaintiffs were allegedly deprived of

28   employment by the government as a result of their speech on matters of public concern.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5038917.2/DPM                     - 11 -                    Case No. C-07-2528 JF

1    Similarly, in *Progressive Transp. Services v. County of Essex, supra*, 999 F.Supp. 701, and

2    *Board of County Com'rs v. Umbehr* (1996) 518 U.S. 668, the plaintiffs were alleged deprived the

3    right to be hired by the government as a result of their free speech. Finally, in *United States v.*

4    *Treasury Employees* (1995) 513 U.S. 454, the plaintiffs were denied the right to earn

5    compensation for participating in public speech.

6         Each of these cases involve a benefit that is available to all members of the public. The

7    plaintiff in these cases alleged he/she was singularly denied the public benefit as a result of

8    exercising his/her constitutionally protected rights. Here, Plaintiff does not allege any facts to

9    support a claim that he was denied a public benefit. Rather, Plaintiff alleges he was denied the

10   benefit of the confidentiality and indemnity provisions in an agreement. These are exclusive and

11   individual rights not available to the public. Any benefit that was allegedly denied to Plaintiff

12   arose pursuant to an arms-length settlement agreement, wherein the parties to that agreement

13   agreed amongst themselves to compromise and settle the claims arising from the Francher/Roybal

14   lawsuit.

15        There is not a single case to support the proposition that a breach of a settlement

16   agreement between an individual and a public agency gives rise to a Section 1983 claim. If this

17   were the case, every single contract entered into by a public agency would subject that agency to

18   a claim under 42 U.S.C. §1983 and its enhanced remedies. The public agency would not only be

19   potentially liable for damages arises from the common law breach of contract claim, but also for

20   tort damages, punitive damages, and attorney's fees. Such a result is certainly not supported by

21   the legislative intent envisioned by Section 1983 or any of the cases that involve that provision.

22        Moreover, as discussed in detail in Section V(C) below, the Defendants did not breach the

23   agreement because any disclosure of its terms was required by law and authorized by terms of the

24   agreement, and Plaintiff was not entitled to indemnity for attorney's fees voluntarily incurred as a

25   result of filing an *amicus curie* brief. Thus, even if it is assumed that the alleged breach of the

26   settlement agreement constitutes a denial of a valuable public benefit, pursuant to the agreement

27   at issue, Plaintiff was not denied any benefit that arose out of that settlement agreement.

28        Thus, Plaintiff has failed to allege any violation of his First Amendment rights. Even

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5038917.2/DPM                - 12 -                Case No. C-07-2528 JF

1    assuming Plaintiff's speech was constitutionally protected (which as discussed above, it was not)

2    Plaintiff was not denied any public benefit.

3    **B.    Plaintiff's Perfunctory References to Constitutional Rights Does Not Support A**
     **Claim Arising Under Section 1983**

4

5    Despite the Court's November 9, 2007 Order providing a clear roadmap of the significant

     issues to be addressed by Plaintiff's amended complaint, Plaintiff continues to make perfunctory

6    references to various violations of constitutional rights arising from the Defendants' alleged

7    breach of the settlement agreement.  In light of the prior briefing on these issues and the Court's

8    November 9, 2007 Order, there appears to be very little need to readdress these fruitless

9    allegations.  Nevertheless, in an abundance of caution a further discussion is provided herein.

10

11   **1.    Breach of The Confidential Settlement Agreement by Disclosing its Details**

     Plaintiff alleges that:

12

13   Defendant De La Cruz acting on behalf of the County,…began publicly
     discussing, publishing and assisting to be published, details of the confidential
14   settlement agreement…thereby breaching the settlement agreement/contract and
     invading Plaintiff's right to privacy and taking from Plaintiff without just cause,
15   due process, or fair compensation the value of Plaintiff's property.  [¶16 of
     Plaintiff's Amended Complaint.]

16   Plaintiff, as an elected public official, does not have a constitutional right to privacy

17   related to the performance of his duties as the District Attorney.  Any potential right to privacy is

18   outweighed by the public's First Amendment right to political discourse about the activities of

19   their elected officials.  Similarly, as discussed in detail below in Section V(C), the Defendants

20   were required by law and permitted by the terms of the settlement agreement to disclose its

21   details because the agreement was a public record.  The County can not prevent the public from

22   accessing the terms of a settlement agreement involving the settlement of tort claims brought

23   against the County.  *Register Division of Freedom Newspapers, Inc. v. County of Orange* (1984)

24   158 Cal.App.3d 893.

25   Nevertheless, plaintiff does not allege a constitutional right to privacy.  Rather, Plaintiff

26   alleges a right to privacy stemming from the confidential settlement agreement.  Even if it is true,

27   disclosing the details of the confidential settlement agreement is, at most, a breach of the

28   agreement, not a violation of a constitutionally protected right.  As discussed in Section V(B)(2)

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

below, the breach of an agreement can not form the basis for a Section 1983 claim.

### 2. Breach of the Confidential Settlement Agreement by Refusing to Reimburse Plaintiff for Attorney's Fees

Plaintiff alleges that:

> On or about September 13, 2006, County breached the settlement agreement…by failing to…pay the approximate $14,000.00 bill as required by the agreement…. As such, County's failure to pay the presented claim was a denial of and in retaliation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, as well as a denial of equal protection of the law, under the Fourteenth Amendment of the United States Constitution, as well as a taking of Plaintiff's property (the value of the indemnification clause of the [confidential settlement agreement]) without just compensation, in violation of the Fifth Amendment and Fourteenth Amendments of the United States Constitutions. [¶¶ 20 and 21 of Plaintiff's Amended Complaint.]

There is no constitutional right under the First, Fifth, and Fourteenth Amendments to be protected from a breach of contract. Even assuming that the County breached the settlement agreement by failing to reimburse Plaintiff for incurred attorney's fees, this does not amount to a violation of a constitutional or federal statutory right. Plaintiff has simply alleged a cause of action for breach of contract. Plaintiff's bare references to various amendments does not in and of itself support a cause of action under 42 U.S.C. §1983.

The reference to equal protection of the law under the Fourteenth Amendment seems to be related to the allegation that the "County had a long established practice of paying the work related expenses, including legal expenses" of various County offices. [See ¶21 of Plaintiff's Amended Complaint.] Even if true, Plaintiff is not alleging the County failed to reimburse him for a "work related expense." Rather, Plaintiff is alleging the County failed to indemnify him under the settlement agreement. In either case, it does not amount to a violation of a civil right protected by the Constitution.

Plaintiff's allegation that a breach of contract is a taking of Plaintiff's property without just compensation is certainly a creative argument, but lacks any basis in law. There is no authority supporting the position that an alleged breach of contract to pay money is a deprivation of a constitutionally protected property right. Moreover, Plaintiff is simply making an erroneous legal conclusion cast in the form of a factual allegation. If this were the law, every breach of contract claim against a public entity could be brought in federal court as a Section 1983 action.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

In Fact, the Supreme Court has held that a cause of action arising from the breach of a contract is not a proper basis for a Section 1983 claim and must be brought, if at all, in state court. *Progressive Transp. Services v. County of Essex, supra*, 999 F.Supp. 701. *Progressive* is directly on point. In addition to its claim that Essex County refused to rehire plaintiff due to plaintiff's exercise of free speech, the plaintiff in *Progressive* also alleged the county breached a contract by their refusal to pay monies allegedly owed to Plaintiff under an existing contract. In addressing the breach of contract allegation the court refused to exercise jurisdiction because it did not involve a federal question:

> As a final matter, Plaintiff brings a claim for breach of contract. It is now well settled that although the doctrine of supplemental jurisdiction is one of flexibility and discretion, it is fundamental that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." [Citations.] Moreover, "[a] district court out not 'reach out for . . . issues, thereby depriving state courts of opportunities to develop and apply state law.'" [Citations.] *Id.* at 705.

Having determined that the breach of contract claim did not involve a federal question, the *Progressive* court dismissed it pursuant to 28 U.S.C. §1367(c)(3). Moreover, in *Lujan v. G&G Sprinklers* (2001) 532 U.S. 189, the Supreme Court has held that even if it is assumed that a contractual right creates a property interest, these are interests "that can be fully protected by an ordinary breach-of-contract suit." *Id.* at 196. Thus, an action arising from the breach of a contractual right does not support a Section 1983 cause of action because the plaintiff has sufficient opportunity to pursue the claim in state court. *Id.* at 195.

Therefore, even assuming some protected interest was violated through the breach of contract, this cannot form the basis for a Section 1983 claim.

### 3.    Defamation of Plaintiff During a Public Hearing

Plaintiff alleges that individual board members and their agents "engaged in ultra-vires and de-facto public disciplinary hearing of Plaintiff" and during the hearing "defamed Plaintiff by accusing him of professional negligence" and by "wrongfully publicly stating that 'employees had to be transferred to a different office because of his (Plaintiff's) conduct...'" [¶¶22 and 23 of Plaintiff's Amended Complaint.] Plaintiff further alleges that the above-described public hearing

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

"violated Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, and was a legal sham, in that it was designed to punish and retaliate against Plaintiff." [¶24 of Plaintiff's Amended Complaint.]

There is no constitutional right under the First, Fifth, or Fourteenth Amendments protecting a publicly elected district attorney from "ultra vires" and/or "de facto" public disciplinary hearings. To the contrary, the Board of Supervisors have a statutory right and obligation to supervise the official conduct of the district attorney as it relates to the management of public funds under California Government Code §25303:

> The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management, or disbursement of public funds.

> It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection.

> This section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county.

> Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff.

Moreover, California Government Code §§25080, 54950, and 54953(a) require the County Board of Supervisors is required to hold such hearings in public:

> Except as otherwise provided by state law, all meetings of the board of supervisors shall be public. (California Government Code §25080)

> In enacting this chapter, the Legislature finds and declares that the public commissions, boards, and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. (California Government Code §54950)

> All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter. (California Government Code §54953(a))

Plaintiff had no constitutional right to be protected from criticism of his actions as a

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5038917.2/DPM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]

publicly elected government official. In addition, a public official has no right or expectation of privacy with respect to anything that he or she does in carrying out their official functions or managing their public office. Thus, allegations that a public disciplinary hearing was held regarding Plaintiff's professional negligence and conduct towards County employees, even if accepted as true, is not a violation of a constitutionally protected right.

Moreover, Plaintiff does not have a constitutional right to be free from defamation. Plaintiff alleges the defamation occurred at a public meeting of the Board of Supervisors. As discussed above, a county board of supervisors has a statutory duty to supervise officers and districts insofar as budgetary or fiscal matters are concerned. California Civil Code Section 47 provides in relevant part:

A privilege publication or broadcast is one made:

(a) In the proper discharge of an official duty.

(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law,…

California Civil Code §47 establishes an absolute privilege for comments or statements made at an official or legislative proceeding, thereby protecting Defendants from any civil liability even if they recklessly or intentionally made untruthful statements about Plaintiff.

Even if Plaintiff was defamed and the statements were not protected by an absolute privilege, a claim for defamation cannot support a Section 1983 action. *Weiner v. San Diego County* (9th Cir. 2000), 210 F.3d 1025, 1032, holding that defamation is not a proper basis for a Section 1983 claim because there is no violation of a right, privilege, or immunity protected by the Constitution or laws of the United States. Plaintiff conceded that defamation cannot support a Section 1983 claim in his opposition to the Defendants' prior motion to dismiss.

As discussed above, Plaintiff does not have a constitutional right to be protected from a breach of contract and there is no authority to support the contention that the breach of a confidentiality clause is a taking of Plaintiff's property without just compensation within the meaning of the Fifth Amendment.

## 4. Financial Restrictions Over the District Attorney's Office

Plaintiff alleges that the County Board of Supervisors "continued to retaliate against

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    Plaintiff by interfering with and attempting to put into place illegal financial and other controls

2    over the District Attorney's Office." [¶27 of Plaintiff's Amended Complaint.]

3        Plaintiff does not have a constitutional or federal statutory right protecting the District

4    Attorney's Office from financial restrictions by the County Board of Supervisors.  As discussed

5    above, the only control or authority that a board of supervisors has over a district attorney is the

6    latter's budget.  By statute, a county board of supervisors shall supervise the official conduct of

7    all county officers and districts insofar as the functions and duties of such officers and districts

8    relate to the assessing, collecting, safekeeping, management or disbursement of public funds.

9    California Government Code §25303. [Quoted in full above.]  Further, California Government

10   Code §25252 provides in relevant part:

11       The board of supervisors shall establish or abolish, those funds as are necessary
         for the proper transaction of the business of the county, and may transfer money
12       from one fund to another, as the public interest requires.

13   **5.    Filing a Baseless Complaint Against Plaintiff in the Attorney General's
         Office.**
14
         Plaintiff alleges that the County of Board of Supervisors directed one of its agents  "to file
15
     a baseless complaint with the Attorney General's Office against Plaintiff." [¶27 of Plaintiff's
16
     Amended Complaint.]
17
         Plaintiff does not have a constitutional or federal statutory right to be protected against a
18
     complaint being filed against him in the Attorney General's Office, even if the complaint is
19
     baseless.
20
         Assuming each of the alleged retaliations are true, they do not constitute a violation of a
21
     constitutionally protected civil right.  At best, they could be construed as alleging a cause of
22
     action for breach of contract or defamation, each of which do not raise a federal question and
23
     must be brought, if at all, in state court.  As such, Plaintiff's first cause of action for violation of
24
     42 U.S.C. 1983 should be dismissed with prejudice.
25
     **C.   Plaintiff's Second Cause of Action for Breach of Contract Fails Because The County
26        Was not Required to Indemnify Plaintiff for Voluntarily Incurred Attorney's Fees**

27       The entire focus of Plaintiff's Complaint involves the alleged breach of the confidential

28   settlement agreement.  Yet, Plaintiff does not attach the settlement agreement or otherwise quote

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

the relevant provisions. Rather, Plaintiff paraphrases in his own words the contractual language he claims to have been breached. Plaintiff alleges that the County was obligated under the settlement agreement to "among other things, defend and indemnify Plaintiff for litigation costs arising out of future legal actions anticipated to be brought by employees Fancher and Roybal." [¶12 of Plaintiff's Amended Complaint.]

Even though Plaintiff did not attach the agreement to the Complaint it is proper for the court to consider the actual indemnity provision in deciding this 12(b)(6) Motion. *Marder v. Lopez* (9th Cir. 2006) 450 F.3d 445, 448. As explained in *Swartz v. KPMG LLP* (9th Cir. 2007) 476 F.3d 756:

> In ruling on a Fed. R. Civ. P. 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. [Citations omitted.] However, in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned. [Citations omitted.]

Here, the authenticity of the settlement agreement is not in question. Therefore, the indemnity provision is not "outside" the complaint. The court may treat it as part of the complaint and assume it to be true for the purposes of a motion to dismiss under Rule 12(b)(6). *Marder v. Lopez, supra,* 450 F.3d at 448.

Paragraph 27 of the settlement agreement states:

> The COUNTY agrees to defend and indemnify the District Attorney in the manner and subject to the requirements of the California Government Code concerning any legal claims or causes of action asserted by the parties to this AGREEMENT. [¶5 of the Declaration of Daniel P. McKinnon.]

Here, there was no legal claim or cause of action asserted against Plaintiff. Rather, Fancher and Roybal brought a claim against the County only. [¶17 of Plaintiff's Amended Complaint.] Plaintiff voluntarily interjected himself into the suit by submitted an *amicus curie* brief. [Ibid.] Therefore, the County's refusal to pay $14,000 of Plaintiff's attorney's fees was not a breach of the contract because the County did not have a duty to indemnify Plaintiff under the terms of the settlement agreement.

Similarly, the confidentiality clause is contained in Paragraph 14 of the settlement

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  agreement which states:

2      FANCHER and ROYBAL, SARSFIELD and the COUNTY understand and agree
       that this agreement and this terms shall remain confidential, but that this
3      agreement is subject to disclosure pursuant to subpoena, a request for public
       records, a signed waiver from FANCHER and ROYBAL, and SARSFIELD, *or as*
4      *otherwise required by law or court order*.  [Emphasis added.] [¶6 of the
       Declaration of Daniel P. McKinnon.]

5      Documents relating to the settlement of a private personal injury claim with public funds

6  is a public record and must be disclosed pursuant to Government Code sections 6252 and 6253:

7      "Public records" includes any writing containing information relating to the
       conduct of the public's business prepared, owned, used, or retained by any state or
8      local agency regardless of physical form or characteristics.  "Public records" in
       the custody of, or maintained by, the Governor's office means any writing
9      prepared on or after January 6, 1975. Gov. Code §6252(e).

10     Public records are open to inspection at all times during the office hours of the
       state or local agency and every person has a right to inspect any public record,
11     except as hereafter provided. Gov. Code §6253(a).

12     Thus, the Defendants were required by law to disclose the terms of the settlement

13  agreement because the settlement agreement was a public record.   The settlement agreement

14  expressly allows the parties to disclose its terms as required by law.   The County can not prevent

15  the public from accessing the terms of a settlement agreement involving the settlement of claims

16  brought against the County.  *Register Division of Freedom Newspapers, Inc. v. County of Orange*

17  (1984) 158 Cal.App.3d 893.  Although Plaintiff would have it otherwise, the tax-paying public

18  has a right to know where their tax dollars are being spent.  Therefore, the County did not breach

19  the settlement agreement even if Plaintiff's allegations are accepted as true.

20     Since the allegations are contradicted by the express provisions of the settlement

21  agreement, this Court should dismiss Plaintiff's breach of contract cause of action with prejudice.

22  Even if the Court does not dismiss this cause of action for failure to state a claim under Rule

23  12(b)(6), it should be dismissed for lack of jurisdiction over the subject matter under Rule

24  12(b)(1).

25  **D.    Plaintiff Has Failed to State a Cause of Action for Tortious Interference With
        Contract**

26     Like the first cause of action for violation of civil rights under Section 1983, Plaintiff's

27  third cause of action for tortious interference with contract was dismissed with leave to amend to

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  allow Plaintiff an opportunity to allege facts to show that that the tort was committed by someone

2  other than the parties who were bound by the contract. [November 9, 2007 Order; **Exhibit B** to

3  Defendants' Request for Judicial Notice.]    However, this claim is plagued by the same

4  contradictions between Plaintiff's conclusory allegations and the facts purportedly giving rise to

5  this claim.

6      As discussed by this Court in its November 9, 2007 Order, tortious interference of

7  contract arises where a **stranger** to a contract intentionally interferes with the performance of the

8  contract. *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148. Similarly, the California Supreme

9  Court has made clear that any alleged interference by the agents and/or employees of the County

10 can not support a claim for tortious interference with contract:

> For purpose of this cause of action, then, these defendants stand in the place of the
> employer, because the employer—the other party to the supposed contract—
> cannot act except through such agents. *Shoemaker v. Myers* (1990) 52 Cal.3d 1,
> 14.

13 Plaintiff alleges that the County is the "is the employer of all County employees,

14 department head, and officers, including the District Attorney." [¶7 of Plaintiff's Amended

15 Complaint.]  Additionally, Plaintiff alleges:

> [A]t all times relevant and mentioned herein, the Defendants and each of them,
> were the agents and employees of each of the remaining Defendants, and in doing
> the things hereinafter alleged, were acting within the course and scope of their
> authority as such agents and employees with the permission and consent of their
> co-Defendants. [¶5 of Plaintiff's Amended Complaint.]

19 Finally, Plaintiff alleges the agreements were "binding and applicable to County, its

20 officers, employees, including Fancher and Roybal, department heads, officers, Board members,

21 and Plaintiff." [¶¶10 and 12 of Plaintiff's Amended Complaint.]

22     Therefore, the individual board members stand in the place of the County, and based on

23 the Plaintiff's own allegations can not be characterized as "strangers" to the contract. Rather, as

24 alleged by Plaintiff, "[t]he County exercises its powers through the direction and orders of the

25 Board." [¶7 of Plaintiff's Amended Complaint.]

26     Thus, Plaintiff has failed to allege a cause of action for tortious interference with contract

27 and based on the facts already alleged, is unable to do so. Even so, this is a state law claim that

28 has no reason being entertained in federal court.  As such, Plaintiff's cause of action for

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    intentional interference with contract should be dismissed with prejudice.

2    **E.    Plaintiff's Sixth Cause of Action for Intentional Infliction of Emotional Distress Fails Because the Conduct Complained of is Protected by an Absolute Privilege, and Emotional Distress Damages are not Available for a Breach of Contract**

3    This cause of action alleges intentional infliction of mental distress. The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregarding of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Christensen v. Superior Court* (1991) 54 Cal.39 869, 903.

California law defines "outrageous conduct" as conduct so extreme that exceeds all possible bounds of that usually tolerated in a decent and civilized community and is of a nature which is especially calculated to cause, and does cause, mental illness. *Potter v. Firestone Tire and Rubber Co.* (1993) 6 Cal.4th 965, 1001; *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092. "Outrageous conduct" does not include trivialities such as insults, indignities, threats, annoyances, petty oppressions, hurt feelings, or bad manners that a reasonable person is expected to endure. *Fisher v. San Pedro Peninsula Hosp.* (1989) 214 Cal.App.3d 590. Moreover, the defendant must have engaged in conduct intending to inflict injury or with the realization that injury will result. *Potter v. Firestone Tire and Rubber Co.*, *supra*, 6 Cal.4th at 1001; *See also* Judicial Council of California Civil Jury Instructions, Nos. 1600-1603.

A defendant is not responsible for emotional distress if the defendant was exercising a legal right or protecting his economic interests; the conduct was lawful and consistent with community standards; and the defendant had a good faith belief that he had a legal right to engage in the conduct. Judicial Council of California Civil Jury Instructions, No. 1605.

It is absolutely ludicrous for an ex-elected official to believe that he can prove the necessary elements of intentional infliction of emotional distress against the county and its board of supervisors. First, criticisms of a public official's performance is protected by the First Amendment and does not constitute conduct that cannot be tolerated in a civilized society. <u>All</u> public officials are criticized at some point, even if it is unjustified. Criticism and comment come

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    with the territory, particularly for elected officials. More importantly, any actions or comments

2    by the County or its Supervisors were privileged as a matter of law because the statements or

3    conduct occurred while exercising their First Amendment rights and their statutory obligation to

4    supervise officers and districts. California Civil Code §47; California Government Code §25303.

5    [Both Section quoted in full above.]

6        Plaintiff is alleging he is an employee of the County.    [¶7 of Plaintiff's Amended

7    Complaint.]    Assuming this allegation is true, he cannot pursue a civil action against the

8    Defendants for emotional distress or physical injury as his <u>exclusive</u> remedy is under Worker's

9    Compensation. See, e.g., *Shoemaker v. Myers*, 192 Cal.App.3d 788 (1987). Therefore, this cause

10    of action should be dismissed on that basis alone.

11        Moreover, Plaintiff alleges he was "hurt and injured in his health, strength and activity,

12    sustaining injury to his body and shock and injury to his nervous system and person." [¶44 of

13    Plaintiff's Amended Complaint.] This cause of action should be dismissed based on Plaintiff's

14    own allegations because where as here, the plaintiff claims an injury to the heart or other physical

15    condition, his exclusive remedy is Worker's Compensation. See *Angell v. Peterson Tractor, Inc.,*

16    21 Cal.4th 981 (1994).

17        Similarly, one of the sources of Plaintiff's claimed distress is the alleged breach of the

18    contract. It is elementary law that emotional distress damages are not available for the breach of

19    a contract, particularly when the claimed damage is purely economic. See, e.g., *Freeman &*

20    *Mills, Inc. v. Belcher Oil Co.,* 11 Cal.4th 85 (1995); *Careau & Co. v. Security Pacific Business*

21    *Credit Corporation,* 222 Cal.App.3d 1371 (1990).

22        In conclusion, Plaintiff's cause of action for intentional infliction of emotional distress

23    cannot be sustained either legally or factually. Plaintiff was an elected public official who had

24    certain policy-making authority as a judicial officer of the state. Plaintiff's claim that as a result

25    of public criticism he sustained "injury to his body and shock and injury to his nervous system

26    and person" which have resulted in "permanent disability" is not only embarrassing to himself,

27    but an embarrassment to our legal community.

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5038917.2/DPM                    - 23 -                    Case No. C-07-2528 JF

This cause of action should be dismissed with prejudice.

**F.     None of the Claims Can Be Maintained Against The Individual Members of the County Board of Supervisors**

None of the individual members of the board of supervisors is a proper defendant in this case.  The individual board members are not parties to the confidential settlement agreement.  None of the supervisors signed the agreement except Mr. Monaco in his capacity as the then-Chair of the Board.  Plaintiff himself admits that none of the individual board members were personally bound by the terms of the contractual agreements.  [¶8 of Plaintiff's Amended Complaint.]  Therefore, as a matter of law, the individual board members cannot be sued for breach of a contract to which they are not parties or where they have not agreed to be personally liable. *United States Liability Insurance Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal.3d 586.

Any negative comments or criticisms they may have made about Plaintiff are absolutely privileged under Civil Code §47, protected by the First Amendment, and/or not actionable.

Moreover, none of the individual board members are a necessary party.  If one or more of them committed a legally actionable tort or breach of an agreement, the County is vicariously liable for such conduct.

**G.     The Court Should Abstain from Taking Part in a Political Dispute**

Setting aside the merits of the case, this Court should abstain from hearing this matter because it is clear from Plaintiff's allegations that it is a political controversy between members of the executive and legislative branches of local government. *Burford v. Sun Oil Co.* (1943) 319 U.S. 315.

**H.     The Court Should Dismiss the Complaint for Failure to Make a Short and Plain Statement of Plaintiff's Claim, or Alternatively, Require Plaintiff to Provide a More Definite Statement of his Claims**

Plaintiff's Complaint is a political diatribe filled with immaterial information, unsupported legal conclusions and references to constitutional amendments.  Each claim for relief incorporates undifferentiated facts.  The Court should strike Plaintiff's Complaint in its entirety for failing to comply with Rule 8(a).  See *Jacobson v. Schwarzenegger* (2004) 357 F.Supp.2d 1198, 1205.  In the alternative, this Court should require Plaintiff to provide a more definite statement of his

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    claims under Rule 12(e).

2
# VI.
## CONCLUSION

3        As discussed above, the first, second, third, and fourth causes of Plaintiff's amended

4    complaint are simply not actionable under the law.  The only way Plaintiff can assert a cause of

5    action arising under Section 1983 is by distorting the facts which inevitably contradict prior and

6    current pleadings.  Plaintiff can not support his claim based on erroneous legal conclusions cast in

7    the form of factual allegations, where the factual allegations are facially false.  This dishonest

8    attempt to plead a federal claim should not be condoned by this Court, and it is apparent Plaintiff

9    can not truthfully plead a claim arising under Section 1983.  Therefore Plaintiff's first cause of

10   action for violation of civil rights under Section 1983 should be dismissed with prejudice.  The

11   remaining causes of action arising wholly under state law and should likewise be dismissed for

12   lack of jurisdiction, or alternatively, for failure to state a claim based on the reasons discussed

13   herein.

14        Wherefore, Plaintiff's Complaint should be dismissed with prejudice.

15

16

17   Dated: December 19, 2007                    ROPERS, MAJESKI, KOHN & BENTLEY

18

19                                              By: _____
                                                    STEPHAN A. BARBER
20                                                  DANIEL P. MCKINNON
                                                    Attorneys for Defendant
21                                                  COUNTY OF SAN BENITO

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    STEPHAN A. BARBER (SBN 70070)
     DANIEL P. MCKINNON (SBN 234749)
2    ROPERS, MAJESKI, KOHN & BENTLEY
     80 North First Street
3    San Jose, CA 95113
     Telephone:    (408) 287-6262
4    Facsimile:    (408) 918-4501
     Email:    sbarber@ropers.com
5    Email:    dmckinnon@ropers.com

6    Attorneys for Defendant
     COUNTY OF SAN BENITO

7

8                    IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA
                            SAN JOSE DIVISION

10

11                                        CASE NO.  C-07-2528 FL

12   JOHN J. SARSFIELD                    DECLARATION OF DANIEL P.
                                          MCKINNON IN SUPPORT OF
                 Plaintiff,               DEFENDANTS' MOTION TO DISMISS
13                                        FOR FAILURE TO STATE A CLAIM
        v.                                UPON WHICH RELIEF CAN BE
14                                        GRANTED
     COUNTY OF SAN BENITO, JAIME DE
15   LA CRUZ, in his official capacity, REB
     MONACO, in his official capacity,
16   ANTHONY BOTELHO, in his official     Date:        March 7, 2008
     capacity, DON MARCUS, in his official Time:        9:00 a.m.
17   capacity, and DOES 1 through 10,     Courtroom :3
     inclusive,                           Judge:       Hon. Jeremy Fogel
18
                 Defendants.
19

20

21       I, Daniel P. McKinnon, declare:

22       1.     I am an attorney duly licensed to practice in all the State Courts of California and

23   the Northern District for California.  I make this Declaration in support of Defendants' Motion to

24   Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6).

25       2.     I am a United States citizen over the age of 18 years.  I am competent to testify to

26   the matters set forth herein.

27       3.     I have reviewed the confidential settlement agreement between Katie Fancher and

28   Julie Roybal, the County of San Benito, and John Sarsfield referenced throughout Plaintiff's

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    amended complaint.

2        4.    I have specifically reviewed the indemnity clause which Plaintiff paraphrases and

3    alleges in his amended complaint was breached by Defendants. [See e.g., ¶¶12, 13, 16, 17, 20, 21,

4    23, 25, 26, 30, 34, 36, 39 of Plaintiff's Amended Complaint.]

5        5.    The indemnity clause referenced in Plaintiff's amended complaint is contained in

6    paragraph 27 of the settlement agreement and states in full:

7            The COUNTY agrees to defend and indemnify the District
             Attorney in the manner and subject to the requirements of the
8            California Government Code concerning any legal claims or causes
             of action asserted by the parties to this AGREEMENT.

9        6.    The confidentiality clause referenced in Plaintiff's amended complaint is contained

10   in paragraph 14 of the settlement agreement and states in full:

11           FANCHER and ROYBAL, SARSFIELD and the COUNTY
12           understand and agree that this agreement and this terms shall
             remain confidential, but that this agreement is subject to disclosure
             pursuant to subpoena, a request for public records, a signed waiver
13           from FANCHER and ROYBAL, and SARSFIELD, *or as*
             *otherwise required by law or court order.* [Emphasis added.]
14

15       7.    I have also reviewed the signature page of the settlement agreement.  In addition to

16   counsel for the parties who approved as to form, the only other signatories to the settlement

17   agreement are Katie Fancher, Julie Roybal, John Sarsfield, and the County of San Benito.

18       8.    Reb Monaco signed on behalf of the County of San Benito in his official capacity

19   as the then-Chair of the County Board of Supervisors.  There are no other signatories to the

20   agreement.

21       I declare under penalty of perjury that the foregoing is true and correct to the best of my

22   personal knowledge.  Executed on December 19, 2007 in San Jose, California.

23

24                                                      _____
                                                        DANIEL P. MCKINNON
25

26

27

28

RCI/5043484.1/DPM                           - 2 -                        Case No. C-07-2528 JF

**DECLARATION OF DANIEL P. MCKINNON IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]**

STEPHAN A. BARBER (SBN 70070)
DANIEL P. MCKINNON (SBN 234749)
ROPERS, MAJESKI, KOHN & BENTLEY
80 North First Street
San Jose, CA 95113
Telephone:     (408) 287-6262
Facsimile:      (408) 918-4501
Email:          sbarber@ropers.com
Email:          dmckinnon@ropers.com

Attorneys for Defendant
COUNTY OF SAN BENITO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

JOHN J. SARSFIELD

       Plaintiff,

v.

COUNTY OF SAN BENITO, JAIME DE
LA CRUZ, in his official capacity, REB
MONACO, in his official capacity,
ANTHONY BOTELHO, in his official
capacity, DON MARCUS, in his official
capacity, and DOES 1 through 10,
inclusive,

       Defendants.

CASE NO.  C-07-2528 FL

**REQUEST FOR JUDICIAL NOTICE [FRE 201]**

Date:        **March 7, 2008**
Time:        **9:00 a.m.**
Courtroom :3
Judge:       **Hon. Jeremy Fogel**

Pursuant to Federal Rules of Evidence, Rule 201, Defendants respectfully request the

Court take judicial notice of the following:

1.     The administrative claim filed by Plaintiff on September 22, 2006, pursuant to

Government Code section 910.  A true and correct copy is attached hereto as ***Exhibit A***.

2.     This Court's November 7, 2007 Order granting Defendants' prior Motion to

Dismiss.  A true and correct copy is attached hereto as ***Exhibit B***.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

DECLARATION OF DANIEL P. MCKINNON IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]

1    Dated: December 19, 2007          ROPERS, MAJESKI, KOHN & BENTLEY

2

3                                      By: _____
                                           STEPHAN A. BARBER
4                                          DANIEL P. MCKINNON
                                           Attorneys for Defendant
5                                          COUNTY OF SAN BENITO

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5043500.1/DPM          - 2 -              Case No. C-07-2528 JF

**DECLARATION OF DANIEL P. MCKINNON IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(B)(6)]**

**EXHIBIT "A"**

CLAIM AGAINST THE
COUNTY OF SAN BENITO
STATE OF CALIFORNIA

| |
|---|
| Return Completed Claim Form to: |
| Clerk Of the Board |
| San Benito County Administration Bldg. |
| 481 Fourth Street |
| Hollister. CA 95023 |

IFV COPY

Government Code Section 910 et. seq. requires the following information be received by the Clerk of the Board within six (6) months from the date of accident or incident relating to death or injury to persons or personal property.

In the matter of the Claim of )
)
John Sarsfield )
)
                    Claimant )
)
)
against )
)
The County of San Benito, )
a political subdivision of )
the State of California )
)
)
                    Respondent )
)

RECEIVED
SEP 22 2006
SAN BENITO COUNTY COUNSEL

1. a. Claimants Name:      John Sarsfield

   b  Claimants Address:   PMB # 127,   1760 Airline Highway, Suite F

                           Hollister, CA 95023
                           City                State              Zip

   c. Claimants Telephone:              831        261 6207
                           Area Code_____Number_____

2.   Address To Which Notices Are To Be Sent:

                           Law Offices of Mayo & Rogers

                           Attention:  Terence Mayo

                           114 Sansome Street, # 1310

                           City                State              Zip
                           San Francisco       CA                 94104

3. a. Date of Incident:

                           See attached pages

**COPY**

    b. Location of Incident:     See attached pages

    c. How Did Incident Occur:     See attached pages

4.     Describe Damage or Injury:     See attached pages

5.     Name of Public Employee(s) Causing Injury Or Damage, If Known Or If Applicable:     See attached pages

6.     Itemization Of Claim:     See attached pages     $

    $

    $

    $

TOTAL AMOUNT OF CLAIM     $

7.     Date: 9/22/06

8.     Signature (By Or On Behalf Of Claimant):

forms/claims vs cosb

**Attachment as to Question 3 (a,b,c), and Question 4**

1. Claimant alleges on information and belief, that the following is true and correct, and that the actions alleged occurred in and near the county government complex located within the City of Hollister, San Benito County, State of California, and at other places throughout San Benito County, the exact location being as yet unknown:

2. The County of San Benito is a political sub-division of the State of California, and as such, is bound by state and federal law, as well as the Constitutions of the United States and State of California.

3. Claimant is the District Attorney of the County of San Benito.

4. The County of San Benito (hereinafter "County") is governed and led by a five person Board of Supervisors (**Anthony Botelho, Don Marcus, Pat Loe, Jaime De La Cruz, and Reb Monaco**).  The County sets the pay and benefits of County employees, department heads, and officers, including claimant, issues paychecks, contributes to the retirement funds of County employees, department heads, and officers, including claimant, pays claims, reimburses work related expenses, conducts and supervises the personnel hiring processes, fills employee vacancies, including the position currently held by claimant if said position becomes vacant prior to an election, and acts and is the employer for all County officers, department heads, and employees, including claimant. The County also furnishes employees, officers, and claimant with their workplace, and issues annual income tax statements.

5. In the late Spring and/or Summer of 2004, County employees **Fancher and Roybal** filed a lawsuit against County and claimant (hereinafter referred to as the Fancher/Roybal I matter).

6. On and about late December 2004, and into January 2005, the County, through its leadership, the Board of Supervisors (**specifically Supervisors Botelho and Marcus**), negotiated and entered into a written settlement agreement (contract) with claimant in the Fancher/Roybal I matter.  The County, through **Supervisors Botelho and Marcus**, induced claimant to settle the Fancher/Roybal I matter by agreeing to, among other things, defend and indemnify claimant for litigation costs arising out of future actions anticipated to be brought by parties to the Fancher/Roybal I matter, or words to that effect and to maintain the confidentiality of the settlement agreement in the Fancher/Roybal I matter, and its terms, or words to that effect.  Relying on the County's promises, claimant agreed to settle the Fancher/Roybal I matter.

7. Shortly after the agreement was reached in the Fancher/Roybal I matter, **Fancher and Roybal** initiated new litigation (hereinafter referred to as the Fancher/Roybal II matter), as was anticipated by claimant and the County during the negotiations described above. The litigation in the Fancher/Roybal II matter was an attempt to overturn the

Claim:  Sarsfield, John                                                                      1

confidentiality provisions of the underlying agreement in the Fancher/Roybal I matter, ostensibly pursuant to the Public Records Act.

8. Contemporaneous to and following the filing of the Fancher/Roybal II matter, **Supervisor De La Cruz** began publicly discussing and publishing and assisting to be published details of the confidential settlement agreement in the Fancher/Roybal I matter, breaching, on behalf of the County, the settlement agreement/contract in the Fancher/Roybal I matter, and invading claimant's right to privacy. These actions of **De La Cruz** were taken to retaliate against claimant for criminally prosecuting **De La Cruz** in an election/political corruption case, and to punish claimant for supporting employment harassment complaints that had been filed concurrently and in that time frame against **De La Cruz** by and on behalf of county employees. The Board, on behalf of the County, failed to stop the violations of the confidentiality agreement in the Fancher/Roybal I matter by **De La Cruz.**

9. The litigation in the Fancher/Roybal II matter was brought against the County of San Benito, although claimant was the real party in interest and appeared as amicus. Claimant's position prevailed in the litigation, as no additional records were ordered released by the court, other than those that had already been illegally released by unknown county employees or officers, or agents of county employees or officers, in violation of the confidentiality agreement in the Fancher/Roybal I matter and claimant's right to privacy. Although claimant complained to the County of the leak of the information by county employees or their agents, the County refused to adequately investigate the source of the leak, and failed to discipline those responsible.

10. On August 28, 2006, claimant, through counsel, presented the County with a bill for legal services for the litigation in the Fancher/Roybal II matter, pursuant to the indemnification clause in the Fancher/Roybal I matter's settlement agreement. On or about September 13, 2006, the County breached the Fancher/Roybal I matter contract by failing to defend and indemnify claimant. Specifically, the County failed to and refused to pay the legal services bill (approximately $14,000.00) in Fancher/Roybal II matter, as required by the agreement in the Fancher/Roybal I matter, past practices of the County, and state law or federal law.

11. Separate and distinct from the above breaches of contract, on March 28, 2006, the Board of Supervisors of the County of San Benito (**Don Marcus, Pat Loe, Anthony Botelho, Jaime De La Cruz, Reb Monaco**) (hereinafter "Board"), with the assistance of **County Administrative Officer Susan Thompson and Acting County Counsel Irma Valencia**, engaged in an ultra-vires, de facto and public disciplinary hearing of claimant. During the course of the hearing, the Board, through the actions and statements of the individual members defamed claimant by accusing him of professional negligence, or words to that effect and by stating that "employees had to be transferred to a different office because of his conduct" or words to that effect, all of which the Board, **Thompson and Valencia** knew to be false.

Claim:  Sarsfield, John                                                                2

12. Further, the Board's public discussion and comments regarding the terms of the settlement of Fancher/Roybal I matter was in violation of its confidentiality agreement then in effect, and constituted a separate and distinct breach of the contract in the Fancher/Roybal I matter, as well as an invasion of claimant's right to privacy, and an interference with claimant's right to the benefit of the settlement agreement and contract. The actions of the Board, **Thompson and Valencia** were taken with actual malice, and designed to vex, annoy, or harass claimant, and to retaliate against him for bringing violations of the law by certain members of the Board to the attention of law enforcement persons and agencies, for investigating whether **Supervisor Monaco** was affiliated with, provided assistance to, and then subsequently lied to prosecutors regarding his involvement with a group and individuals being prosecuted for civil rights violations, for criminally prosecuting **Supervisor De La Cruz** in a political/election corruption case, and for supporting County employees who had filed or had filed on their behalf employment harassment complaints against **Supervisor De La Cruz** and other county employees.

13. Further, the actions of the Board were designed to and did take without just compensation or due process claimant's property interests, specifically, the value of the settlement agreement in the Fancher/Roybal I matter. The actions of the Board were also taken to obstruct and interfere with the law enforcement activities of claimant, in his official capacity, and his office. During the hearing, the Board adopted policies designed to interfere with claimant's ability to conduct criminal and civil prosecutions, in violation of Government Code Sections 25303 and 29601. The actions of the Board and Supervisors **Botelho, De La Cruz, Monaco, and Marcus**, and their agents/employees such as **Thompson and Valencia**, on March 28, 2006, and following, were designed to and did prevent and obstruct the ability of claimant and claimant's office from taking the depositions of **De La Cruz, Monaco, and Botelho** in the civil matter of People of the State of California v. P. Michael Pekin, et. al. and to retaliate against claimant for enforcing and seeking to enforce and prosecute violations of law, and for cooperating and supporting County employees who had filed or had filed on their behalf employment harassment complaints against **Supervisor De La Cruz** and other county employees.

14. Following the above described hearing on March 28, 2006, **Acting County Counsel Irma Valencia**, submitted, at the direction of the Board, a letter to the Attorney General's Office relating the false and defamatory information, and seeking an unwarranted investigation into claimant's professional activities. The Attorney General's Office declined to take action on the issues raised in the letter from the **Acting County Counsel Valencia.**

15. **Acting County Counsel Valencia** participated in the actions against claimant notwithstanding that her office represented claimant's office and claimant, had provided legal advice to claimant in the past, and she herself had been a specially appointed member of claimant's office during the time frame complained of by the Board, and had a professional duty of loyalty to claimant and claimant's office. **Acting County Counsel Valencia** refused to recuse or disqualify herself or her office from participating in the actions directed by the Board for the above conflict of interest, even though claimant did

Claim: Sarsfield, John                                                                                                3

not waive any conflict of representation, nor consent to the above actions. **Valencia** failed to stop or object to the actions and directions of the Board, notwithstanding the clear illegality of the actions of the Board, despite an affirmative duty to uphold the law, professional rules of conduct, and the Constitutions. As a result of **Valencia's** actions, claimant sustained injuries, including but not limited to defamation, infliction of emotion/mental distress, physical harm, and potential loss of future earnings.

16. Following the hearing on March 28, 2006, claimant demanded, in his capacity as District Attorney, that the County Counsel's Office and/or the Board provide his office with legal representation to challenge the illegal actions of the Board. The Board and/or County Counsel's Office refused to and continues to refuse to provide the requested counsel. The action's of the County Counsel's Office rise to the level of abandonment of their client, claimant, in his official capacity, and his office.

17. As a result, claimant was and is forced to represent himself in ongoing litigation against the Board, brought in his official capacity, and on behalf of the real party in interest, the People of the State of California. The Board and County Counsel's Office has maliciously failed to provide claimant with legal counsel, despite past practices of routinely providing legal representation to other County officers, department heads and employees involved in litigation. Further the failure of the County to provide required legal support to claimant's office is a separate and distinct breach of the settlement agreement/contract in the Fancher/Roybal I matter, in that said agreement required the parties to it, including the County, to provide legally required support to the District Attorney's Office in order to carry out its duties, or words to that effect. The actions of the County and the County Counsel's Office in denying claimant and his office legal counsel were designed to and did retaliate against claimant for his actions in seeking to enforce violations of the law as described above, and for supporting county employees who had filed employment harassment complaints against Supervisor De La Cruz and other county employees.

18. As a result of the actions of the Board on March 28, 2006, that interfered with and obstructed the operations of the District Attorney's Office, claimant sought in court, in his capacity as District Attorney, a Temporary Restraining Order against the Board and other County officers or employees, which was granted. Subsequently, following a hearing on the temporary restraining order, a preliminary injunction was granted by the court against the Board and other County employees. During the hearing on the preliminary injunction, **Acting County Counsel Valencia** admitted under oath that she did not know if the allegations she had sent to the Attorney General's Office against claimant were in fact true, or words to that effect.

19. The actions taken by the Board, and its agents/employees, on March 28, 2006, and thereafter, violated claimant's rights under the 1st, 5th and 14th Amendments of the U.S. Constitution, and the parallel provisions in the California Constitution. Specifically, Board members refused and failed to recuse themselves from the hearing notwithstanding that they were biased against claimant, that they acted both as witnesses and decision makers in the same hearing, and they had an actual conflict of interest, in that some of

Claim: Sarsfield, John

4

them had been identified as being supporters of, providing assistance to, or belonging to an organization, and some of its members, which were then being prosecuted by claimant for civil rights violations. The Board's actions also violated claimant's right to liberty, in that they adversely impacted his professional standing and reputation, and have harmed claimant's future earnings capability, and said actions were taken in violation of due process of law and claimant's right to equal protection. The actions of County also caused claimant to suffer extreme physical and emotional distress, and negatively impacted claimant's physical health, and created a hostile work environment for claimant.

20. Additionally, the Board's actions were in violation of the equal protection clause of the U.S. and California Constitutions in that other similarly situated county department heads, officers, or employees have not been treated in a similar manner, or subjected to such de facto disciplinary hearings.

**Attachment as to Question 5:**

Names of County Employees/Officers Involved and Causing the Injuries or Damages:

1. Jaime De La Cruz
2. Reb Monaco
3. Anthony Botelho
4. Don Marcus
5. Pat Loe
6. Susan Thompson
7. Irma Valencia
8. Does 1 through 20 (County employees who were involved but whose identities are as yet unknown to claimant).

**Attachment as to Question 6:**

As a result of the board's and individuals' actions as described above, claimant has suffered the following civil wrongs:

1. Breach of Contract (Fancher/Roybal I)
2. Tortious interference with contract (Fancher/Roybal I)
3. Breach of the Covenant of Good Faith and Fair Dealing (Fancher/Roybal I)
4. Detrimental Reliance
5. Fraud
6. Misappropriate of property (the value of the contract in Fancher/Roybal I)
7. Malpractice (as to the Office of the County Counsel)
8. Retaliation
9. Defamation
10. Invasion of privacy
11. Denial of Equal Protection
12. Denial of Due Process

Claim: Sarsfield, John

13. Conflict of Interest  (As to the Board members who were unable to act in this matter)
14. Civil Rights Violations
15. Hostile Work Environment
16. Infliction of Mental/Emotional Distress
17. Infliction of bodily injury

and sustained economic and other damages as a direct and proximate result in an amount as itemized below:

1. Breach of Contract (Fancher/Roybal I) for Failure to indemnify:    No less than $14,000.00 and according to proof
2. Breach of Contract (Fancher/Roybal I) for violation of confidentiality agreement: No less than $1,000,000.00 and according to proof
3. Breach of Contract (Fancher/Roybal I) for violation of support requirement: No less than $1,000,000.00 and according to proof
4. Tortious interference with contract (Fancher/Roybal I) for Failure to indemnify: No less than $14,000.00 and according to proof
5. Tortious interference with contract (Fancher/Roybal I) for violation of confidentiality agreement: No less than $1,000,000.00 and according to proof
6. Tortious interference with contract (Fancher/Roybal I) for violation of support agreement: No less than $1,000,000.00 and according to proof
7. Breach of the Covenant of Good Faith and Fair Dealing (Fancher/Roybal I) for Failure to indemnify:  No less than $14,000.00 and according to proof
8. Breach of the Covenant of Good Faith and Fair Dealing (Fancher/Roybal I) for violation of confidentiality agreement: No less than $1,000,000.00 and according to proof
9. Breach of the Covenant of Good Faith and Fair Dealing (Fancher/Roybal I) for violation of support agreement: No less than $1,000,000.00 and according to proof
10. Detrimental Reliance for Failure to indemnify: No less than $14,000.00 and according to proof
11. Detrimental Reliance for violation of confidentiality agreement: No less than $1,000,000.00 and according to proof
12. Detrimental Reliance for violation of support agreement: No less than $1,000,000.00 and according to proof
13. Fraud for Failure to indemnify: No less than $14,000.00 and according to proof
14. Fraud for violation of confidentiality agreement: No less than $1,000,000.00 and according to proof
15. Fraud for violation of support agreement: No less than $1,000,000.00 and according to proof
16. Misappropriation of property (the value of the contract in Fancher/Roybal I) for failure to indemnify: No less than $14,000.00 and according to proof

Claim:  Sarsfield, John                                                      6

17. Misappropriation of property (the value of the contract in Fancher/Roybal I) for violation of confidentiality agreement:  No less than $1,000,000.00

18. Malpractice and professional negligence (as to the Office of the County Counsel and its attorneys):  No less than $1,000,000.00 and according to proof

19. Retaliation:  No less than $5,000,000.00 and according to proof

20. Defamation:  No less than $1,000,000.00 and according to proof

21. Invasion of privacy:  No less than $1,000,000.00 and according to proof

22. Denial of Equal Protection:  No less than $2,000,000.00 and according to proof

23. Denial of Due Process:  No less than $2,000,000.00 and according to proof

24. Conflict of Interest  (As to the Board members who were unable to act on March 28, 2006 and this matter):  No less than $2,000,000.00 and according to proof

25. Civil Rights Violations:  No less than $5,000,000.00 and according to proof

26. Hostile Work Environment:  No less than $1,000,000.00 and according to proof

27. Infliction of Mental/Emotional Distress:  No less than $1,000,000.00 and according to proof

28. Infliction of bodily injury:  No less than $1,000,000.00 and according to proof

29. Loss of future earnings:  No less than $2,000,000.00 and according to proof

Claim:  Sarsfield, John

7

**EXHIBIT "B"**

**E-Filed 11/09/2007**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOHN J. SARSFIELD,<br><br>              Plaintiff,<br><br>       v.<br><br>COUNTY OF SAN BENITO, JAMIE DE LA CRUZ, in his official capacity, REB MONACO, in his official capacity, ANTHONY BOTELHO, in his official capacity, DON MARCU, in his official capacity, and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case Number C 07-2528 JF<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AS TO CLAIMS I, II, III, AND VI AND WITHOUT LEAVE TO AMEND AS TO CLAIMS IV, V, AND VII.<br><br>[re: docket no. 13] |

     Defendants County of San Benito ("the County"), Jamie De La Cruz ("De La Cruz"), Reb Monaco ("Monaco"), Anthony Botelho ("Botelho"), and Don Marcus ("Marcus") (collectively, "Defendants") move to dismiss the complaint of Plaintiff John J. Sarsfield ("Plaintiff") pursuant to Fed. R. Civ. Pro. 12(b)(6). Plaintiff opposes the motion. The Court heard oral argument on October 19, 2007. For the reasons set forth below, the Court will grant the motion with leave to amend as to Counts I, II, III and VI and without leave to amend as to Counts IV, V, and VII of the complaint.

---

     [1] This disposition is not designated for publication and may not be cited.

# I. BACKGROUND

On August 12, 2004, County employees Katie Fancher ("Fancher") and Julie Roybal ("Roybal") filed a complaint against the County and Plaintiff in the San Benito Superior Court, (San Benito Case Number CV-04-00117). Complaint at ¶9. Fancher and Roybal alleged that Plaintiff, as their supervisor, engaged in sexual harassment and gender discrimination against them. In January 2005, the County and Plaintiff entered into a confidential settlement agreement ("the settlement agreement") with Fancher and Roybal. *Id.* at ¶10.

On March 11, 2005, Fancher and Roybal filed a petition for writ of mandate pursuant to the California Public Records Act in the San Benito Superior Court, requesting the release of documents relating to the County's investigation of their sexual harassment complaint (San Benito Superior Court Case Number CU-05-00042). *Id.* at ¶15. The parties to this action were Fancher, Roybal, and the County. *Id.* at ¶17. The County opposed the petition, arguing the requested records were privileged because they were prepared in anticipation of litigation and therefore protected from disclosure. Plaintiff voluntarily filed an *amicus curie* brief through counsel. *Id.* Plaintiff claims to have incurred $14,000 in attorneys' fees in connection with the writ proceedings and he sought to recover these fees from the County under an indemnity provision in the settlement agreement. *Id.* at ¶19. Under this provision:

> The COUNTY agrees to defend and indemnify the District Attorney in the manner and subject to the requirements of the California Government Code concerning any legal claims or causes of action asserted by the parties to this AGREEMENT.

The County refused Plaintiff's request for indemnity. *Id.* at ¶20.

On May 11, 2007, Plaintiff filed the instant federal complaint against the County and the individual Defendants, who are the elected members of the County's Board of Supervisors ("the Board"). Plaintiff alleges that Defendants retaliated against him because while he was District Attorney, he reported to the FBI and Attorney General's Office alleged criminal conduct of one of the individual defendants, De La Cruz. *Id.* at ¶16. Plaintiff also alleges retaliation because he forwarded workplace harassment complaints naming De La Cruz and cooperated in the investigation of those complaints. *Id.* Plaintiff claims that Defendants breached the settlement agreement by publicly discussing in local newspapers matters which Plaintiff, the County, and

2

1  Fancher and Roybal had agreed to keep confidential under the settlement agreement. *Id.* at ¶13.

2  Plaintiff alleges that after the confidential information had been disclosed, the County failed to

3  investigate the disclosure and failed to discipline any of the individuals responsible for it. *Id.* at

4  ¶14.

5       Separately, Plaintiff claims that the County violated the settlement agreement by refusing

6  to reimburse and indemnify him for the legal fees and costs he incurred in defending and

7  enforcing the settlement agreement. *Id.* at ¶19. He alleges that the County's refusal to indemnify

8  him for legal fees and costs also constituted a violation of the terms of his employment with the

9  County. *Id.* at ¶21. Finally, Plaintiff alleges that De La Cruz, Monaco, Botelho, and Marcus,

10  assisted by County employees Susan Thompson and Irma Valencia, subjected Plaintiff to an ultra

11  vires and de-facto public disciplinary hearing and defamed Plaintiff during the hearing by falsely

12  accusing him of professional negligence. *Id.* at ¶22.

13       As a result of these allegations, Plaintiff alleges seven claims for relief, including claims

14  for: (1) violation of his First Amendment rights to free speech, denial of his right to equal

15  protection under the Fourteenth Amendment and unlawful taking of his property without just

16  compensation in violation of the Fifth and Fourteenth Amendments, all arising from Defendants'

17  retaliatory conduct and asserted pursuant to 42 U.S.C. § 1983; (2) breach of contract; (3) tortious

18  interference with contract; (4) violation of California Labor Code §1102.5 (California

19  whistleblower statute); (5) violation of California Labor Code §203 (failure to pay attorneys' fees

20  due under an employment contract); (6) intentional infliction of emotional distress; and (7)

21  negligent infliction of emotional distress.

22                                **II. LEGAL STANDARD**

23       For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

24  Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v.*

25  *McKeithen*, 395 U.S. 411, 421 (1969). Leave to amend must be granted unless it is clear that the

26  complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections,*

27  66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, dismissal may be ordered

28  with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Case No. C 07-2528 JF
ORDER GRANTING MOTION TO DISMISS WITH  LEAVE TO AMEND ETC.
(JFLC3)

1       On a motion to dismiss, the Court's review is limited to the face of the complaint and

2    matters judicially noticeable. *North Star International v. Arizona Corporation Commission*, 720

3    F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

4    1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995). However, under the

5    "incorporation by reference" doctrine, the Court also may consider documents that are referenced

6    extensively in the complaint and accepted by all parties as authentic, even if they are not

7    physically attached to the complaint. *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d

8    970 (9th Cir. 1999). "Under the 'incorporation by reference' rule of this Circuit, a court may

9    look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary

10    judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

11                        **III. DISCUSSION**

12    **1.**    **Claim I: 42 U.S.C. §1983**

13        **a.**    **Whether Plaintiff has Alleged a Constitutionally Protected Right**

14       Plaintiff's first claim seeks damages pursuant to 42 U.S.C. §1983. Complaint ¶¶ 4-32.

15    Plaintiff alleges that his First Amendment right to free speech, Fourteenth Amendment right to

16    equal protection of the law, and Fifth and Fourteenth Amendments right against unlawful taking

17    of property without just compensation have been violated as a result of his speaking out against

18    members of the Board. 42 U.S.C. § 1983 provides:

19            Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
            any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to

20            the deprivation of any rights, privileges, or immunities secured by the Constitution and
            laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

21            proceeding for redress . . . .

22    In order to prevail on a claim under §1983, a plaintiff must prove that a person (1) acted under

23    color of state law and (2) committed an act that deprived the plaintiff of some constitutional

24    right. *Redman v. County of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991). Defendants do not

25    contest that they were acting under color of state law. However, they argue that Plaintiff has

26    failed to allege the violation of a cognizable right under federal law.

27       Plaintiff asserts that "[i]n the first cause of action Plaintiff seeks damages under 42

28    U.S.C. Section 1983 for Defendant[s'] violation of Plaintiff's rights of free speech under the First

4

1   Amendment." Opp. Mem. at 7:8-9. Plaintiff alleges that the County, through the individual

2   defendants, retaliated against him for reporting the alleged criminal wrongdoing of one of the

3   board members to the California Attorney General's Office, the Federal Bureau of Investigations,

4   and the County's human resources department. The alleged acts of retaliation include: (1)

5   breaching the confidential settlement agreement by disclosing its details; (2) breaching the

6   confidential settlement agreement by refusing to indemnify Plaintiff for his attorneys' fees; (3)

7   defaming Plaintiff during a public hearing; (4) placing inappropriate financial restrictions on the

8   District Attorney's Office; and (5) filing a baseless complaint against Plaintiff with Attorney

9   General's Office. Complaint at ¶¶ 16, 20, 23, 26.

10         In *Perry v. Sindermann,* 408 U.S. at 594-595, Odessa Junior College allegedly refused to

11   rehire the plaintiff as a professor because he publicly criticized the college's Board of Regents in

12   a newspaper advertisement and by testifying on several occasions before the Texas Legislature.

13   *Id.* The court held that the government may not deny a valuable public benefit to a person

14   because of his exercise of constitutionally protected speech or associations. Similarly, in

15   *Progressive Transp. Services v. County of Essex,* 999 F.Supp at 702-703, Essex County refused

16   to rehire an independent contractor to transport handicapped children to and from school

17   programs because of the plaintiff's exercise of First Amendment rights.

18         Defendants argue that unlike his counterparts in *Perry* and *Progressive,* Plaintiff has not

19   been denied "a valuable public benefit," since the retaliation he alleges is a breach of the

20   settlement agreement, not the loss of his government job. Reply Mem. at 2:20-26. However,

21   even though here Plaintiff does not allege that he lost his job, he arguably was denied "a valuable

22   benefit" in that, as a result of his exercising his First Amendment rights, he allegedly lost his the

23   protections of the settlement agreement and spent $14,000 defending a lawsuit that allegedly

24   stemmed from Defendants' retaliatory conduct.

25         b.      Whether Plaintiff's Speech Qualifies as Constitutionally Protected Speech

26         Defendants assert for the first time in their reply memorandum that Plaintiff's claim under

27   the First Amendment is insufficient because Plaintiff did not engage in protected speech. In

28   *Garcetti v. Ceballos,* 126 S.Ct. 1951 (2006), a calendar deputy in the Los Angeles County District

5

1   Attorney's office, brought an action for retaliation against his superiors. The plaintiff alleged that

2   the retaliation occurred as a result of his having written an internal memorandum recommending

3   dismissal of an ongoing prosecution. *Id.* at 1956. In holding that the memorandum was not

4   protected First Amendment speech, the court held that "[t]he controlling factor in Ceballos' case"

5   was that Ceballos had not spoken as a citizen in writing the memo. *Id.* Rather, "his expressions

6   were made pursuant to his duties as a calendar deputy." *Id.* at 1959-60.

7          However, the court also noted that a public employee's speech is protected if the employee

8   speaks "as a citizen on a matter of public concern." *Id.* at 1958. "An employee's speech

9   addresses public concern when it can be 'fairly considered as relating to any matter of political,

10  social, or other concern to the community.'" *Wilcoxon v. Red Clay Consolidated School*, 437 F.

11  Supp. 2d 235, 243 (D.Del. 2006). "The content of the speech may involve a matter of public

12  concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on

13  the part of government officials.'" *Id.* Additionally, "[t]he Supreme Court's narrow 'hold[ing]

14  that when public employees make statements pursuant to their official duties, the employees are

15  not speaking as citizens for First Amendment purposes,' *Garcetti*, 126 S.Ct. at 1960, should not

16  be read to overrule all First Amendment whistleblower protection cases by generally categorizing

17  whistleblowing as part of employees' employment obligations." *Walters v. County of Maricopa*,

18  2006 WL 2456173, *14, (D.Ariz. August 22, 2006).

19          Here, Plaintiff alleges that:

20          "County's failure to indemnify Plaintiff was in retaliation for Plaintiff's reporting
            of Defendant De La Cruz's alleged criminal wrongdoing to the Federal Bureau of
21          Investigation and the California Attorney General's Office, as well as forwarding
            workplace harassment complaints against Defendant De La Cruz to the County
22          human resources department in accordance with County anti-discrimination
            policies and Title VII of the Civil Rights Act of 1964."
23
    Complaint at ¶6. Plaintiff states that he "was *at all times relevant to this matter* the District
24
    Attorney for the County of San Benito . . ." Complaint at ¶6 (emphasis added). Plaintiff claims
25
    that the retaliatory action occurred as a direct result of his reporting, *while he served as District*
26
    *Attorney for the County of San Benito,* "allegations of illegal and wrongful conduct to both federal
27
    law enforcement authorities, and the county human resources department, *as required by and in*
28

Case No. C 07-2528 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND ETC.
(JFLC3)

1   *compliance with* federal and state law, as well as the County's own anti-harassment policies."

2   Complaint at ¶29 (emphasis added). Thus, Plaintiff himself acknowledges that he reported the

3   misconduct as he was *required* to do in his capacity as District Attorney. However, at oral

4   argument, Plaintiff asserted that while reporting alleged criminal conduct *may* have been part of

5   Plaintiff's job description, reporting the personnel matters was not, and that at least the latter was

6   a matter of public concern and thus protected speech.

7        This issue cannot be resolved easily at the pleading stage because *Garcetti* provides little

8   concrete guidance as to what does and does not constitute an employee's official duties. Both

9   *Garcetti* and subsequent cases relying upon *Garcetti* were decided on summary judgment. In

10  *Garcetti* itself, the Supreme Court noted that "[t]he controlling factor in Ceballos' case is that his

11  expressions were made pursuant to his duties as a calendar deputy. That consideration—the fact

12  that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how

13  best to proceed with a pending case—distinguishes Ceballos' case from those in which the First

14  Amendment provides protection against discipline." *Garcetti*, 126 S.Ct. at 1959-60. As currently

15  drafted, Plaintiff's complaint does not allege sufficient facts to show that Plaintiff's speech

16  concerned matters outside the scope of his job responsibilities; it is unclear, however, whether

17  Plaintiff could cure the pleading defect if given the opportunity to allege additional facts.

18  Accordingly, the §1983 claim will be dismissed with leave to amend.

19  **2.    Claims II-VII**

20        Plaintiff does not oppose Defendants' motion to dismiss his fifth claim for violation of

21  California Labor Code § 203 and his seventh claim for negligent infliction of emotional distress.

22  Accordingly, those claims will be dismissed without leave to amend.

23        Plaintiff asserts a third claim for tortious interference with his rights under the settlement

24  agreement. Defendants argue, citing *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004), that

25  "tortious interference of contract arises where a *stranger* to a contract intentionally interferes with

26  the performance of a contract." Plaintiff responds in his opposition that the individual Defendants

27  were not named parties to the contract and that it is their conduct that supports this claim.

28  However, the facts as currently alleged in Plaintiff's complaint do not make this clear.

7

1   Accordingly, Claim III will be dismissed with leave to amend.

2       Defendants argue Plaintiff's fourth claim, based upon California Labor Code § 1102.5,

3   fails because Plaintiff was not a county employee within the meaning of the statute. Plaintiff has

4   agreed to withdraw this claim in light of Defendants' assurance that they will not claim immunity

5   on the basis that Plaintiff was a county employee. Accordingly, Count IV will be dismissed

6   without prejudice.

7       The remainder of Plaintiff's claims (Claim II for breach of contract and Claim VI for

8   intentional infliction of emotional distress) are based wholly on state law. "Where a district court

9   dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction

10  over the state claims and dismiss them without prejudice." *Wade v. Reg'l Credit Ass'n*, 87 F.3d

11  1098, 1101 (9th Cir. 1996); *see Les Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509

12  (9th Cir. 1989) (holding that when "the court dismisses the federal claim leaving only state claims

13  for resolution, the court should decline jurisdiction over the state claims and dismiss them without

14  prejudice"). In light of its disposition of the §1983 claim, the Court will defer a decision as to

15  whether to exercise supplemental jurisdiction over the remaining state-law claims and accordingly

16  will dismiss Counts II and VI with leave to amend.

17                             **IV. ORDER**

18       Good cause therefor appearing, Defendants' motion to dismiss is GRANTED with leave to

19  amend as to Claims I, II, III, and VI of the complaint and without leave to amend as to Claims IV,

20  V, and VII. Any amended complaint shall be filed within twenty (20) days of the date of this

21  order.

22

23  IT IS SO ORDERED.

24

25  DATED: November 09, 2007

                                      _____

26                              JEREMY FOGEL
                             United States District Judge

27

28

Case No. C 07-2528 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND ETC.
(JFLC3)

1    This Order has been served upon the following persons:

2

3    Terence O'Connell Mayo

4     terryomayo@aol.com

5

6    Daniel Paul McKinnon

7     dmckinnon@rmkb.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

Case No. C 07-2528 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND ETC.
(JFLC3)