Terence O. Mayo, Esq.  SBN 62035
Mary E. Mayo, Esq. SBN 188142
Mayo & Mayo
114 Sansome Street, Suite 825
San Francisco, CA  94104

Telephone: (415) 397-1515
Fax: (415) 397-1540

Attorneys for Plaintiff
JOHN J. SARSFIELD

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN J. SARSFIELD, | ) Case No. C-07-2528 EDL |
| | ) |
| Plaintiff, | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN OPPOSITION TO** |
| v. | ) **DEFENDANTS' MOTION TO DISMISS** |
| | ) **FIRST AMENDED COMPLAINT** |
| COUNTY OF SAN BENITO, JAIME DE LA | ) |
| CRUZ, in his official capacity, REB | ) **Date:  March 7, 2008** |
| MONACO, in his official capacity, | ) |
| ANTHONY BOTELHO, in his official | ) **Time:  9:00 A.M.** |
| capacity, DON MARCUS, in his official | ) |
| capacity, and DOES 1 through 10, inclusive, | ) **Dept:  Courtroom 3, Fifth Floor** |
| | ) |
| Defendants. | ) **Judge: The Hon. Jeremy Fogel, District** |
| _____ | ) **Judge** |

_____

1

## TABLE OF CONTENTS

I.  INTRODUCTION............................................................................................................5

    A.  Allegations of the First Amended Complaint...........................................5

II. ARGUMENT .............................................................................................................. 6

    A.  The Acts and Speech Which Caused Defendants to Retaliate Against Plaintiff Were Not Undertaken by Plaintiff as Part of Plaintiff's Official Duties as District Attorney…………………………………………………………………………………………..6

        1.  Defendants, in their Memorandum, Have Seriously Misrepresented to this Court the Substance of Plaintiff's Administrative Claim……………………………8

        2.  Plaintiff Had No Duty as District Attorney to Report Workplace Harassment Claims Against Mr. De La Cruz to the HR Dept……………………….…10

    B.  Defendants' Argument that the FAC is Barred Under Gov't Code Section 910 Fails Since the Administrative Claim Does Contain the Same Factual Allegations Set Forth in the FAC ………....................................................................................11

    C.  Plaintiff Was Deprived of a Valuable Benefit and an Important Property Right............................................................................................................................11

    D.  In Light of the Holding in *Perry v. Sindermann, supra,* and Other Cases Cited Above, Defendants Fail in Their Argument that Defendants' Public Discussion and Publication of the Confidential Settlement Agreement in *Fancher v. Roybal I* Cannot Support a Section 1983 Claim…..………………………………………………….....14

    E.  The Fact That Plaintiff Also Has a Pendent State Law Breach of Contract Claim for the Same Retaliatory Conduct by Defendants Which Gave Rise to Plaintiff's Section 1983 Claim Does Not Negate the Existence of Plaintiff's Section 1983 Claim.....16

    F.  The Gravamen of Plaintiff's Claims Arising from Defendants' Conduct at the Ultra Vires, De Facto Disciplinary Proceeding Is Not Defamation...................................19

    G.  Government Code Section 25303 Does Not Permit a Board of Supervisors to Place Illegal, Financial and Other Controls on the District Attorney's Office Run By Plaintiff, Particularly Where, As Here, Defendants' Placed Such Illegal Financial and Other Controls on the District Attorney's Office for an Unlawful and Retaliatory Reason. …………………………………………………………………………………………………19

        1.  Assuming Arguendo That the Individual Defendants are Entitled to Absolute Immunity for Some or All Their Acts, the Defendant County is not Entitled to Any Such Immunity…………………………………………………………………….....21

**H.  The Interpretation of the Meaning of the Indemnity Provision in the Settlement Agreement in *Fancher/Roybal I* is Properly Addressed at Trial, or At Least After Discovery is Complete,  Not on a Motion to Dismiss at the Beginning of the Case. ..........21**

**I.  The Individual Defendants Were Not Signatories to the Confidential Settlement Agreement and thus Were Not Parties to It; for this Reason, a Cause of Action for Tortious Interference with Contractual Rights Properly Lies Against the Individual Defendants.................................................................................................................22**

**J.  The Conduct of Defendants Was Sufficiently Extreme and Outrageous to Support Sixth Cause of Action for Intentional Infliction of Emotional Distress. ..............23**

**K.  The Test of Whether or Not the Individual Defendants Are Entitled to Official Immunity for Their Acts is Not the Scope of the Acts, but a "Functional" Inquiry..........24**

**TABLE OF CASES AND STATUTES**

**CASES**

*Elrod v. Burns* (1976) 427 U.S. 347, 360-61, 96 S. Ct. 2673, 2683, 49 L. Ed.2d 547**............14**
*Forrester v. White* (1988) 484 US 219, 223, 108 S. Ct. 538, 542, 98 L. Ed. 2d. 555**............24**
*Garcetti v. Ceballos* 126 S. Ct. 1951 (2006)…………………………………………… **7, 8**
*Keyishian v. Board of Regents of Univ. of State of N.Y.,* 385 U.S. 589, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967) **....................................................................................14**
*Lujan v. G&G Sprinklers* 532 US 189 (2001)…………………………………………...**18., 19**
*People v. Terry* (1994) 30 Cal. App. 4th 97**...............................................................11**
*Perry v. Sindermann* 408 U.S. 593, 92 S. Ct. 2694, 2697, 33 L. Ed.2d 570 (1972)……..**12, 16**
*Progressive Transp. Services v. County of Essex* 999 F. Supp. 701 (1998) **...................16, 17**
*Rabkin v. Dean* (1994) 856 F. Supp. 543 **................................................13, 14, 21, 23**
*Sugarman v. Dougall* ((1973) 413 U.S. 634, 644, 93 S. Ct. 2842, 2848, 37 L. Ed.2d 853**.....14**
*Sherbert v. Verner* (1963) 374 U.S. 398, 404, 83 S. Ct. 1790, 1794, 10 L. Ed.2d 965**...........14**
*Shoemaker v. Myers* (1990) 52 Cal. 3d 1…………………………………………………**23**

**STATUTES**

**42 U.S.C.1983....................................................................................6,10,11. 14, 16**
**Civil Rights Act of 1964, Title VII…………………………………………………………..8**
**Federal Rules of Civil Procedure Section 12(b)(6)……………………………………22**
**Government Code Section 910……….........................................................................11**
**Government Code Section 6253.....................................................................................15**
**Government Code Section 25503..............................................................................19, 20**
**Government Code Section 26500............................................................................8, 11**
**Government Code Section 26500.5............................................................................10, 11**

# I. INTRODUCTION

## A. Allegations of the First Amended Complaint

The First Amended Complaint ("FAC") alleges that, while Plaintiff was the District Attorney for the County of San Benito ("County"), County and the individual defendants, who were elected members of the Board of Supervisors of County, took the following steps in retaliation for Plaintiff's reporting the criminal conduct of one of the individual defendant county supervisors, Jaime De La Cruz ("De La Cruz"), to the FBI and the U.S. Department of Justice ("US DOJ"), as well as in retaliation for forwarding workplace harassment complaints naming De La Cruz and for cooperating in the investigation of those complaints:

1.) Breached a confidentiality agreement which was part of a settlement agreement ("the settlement agreement") entered into between Plaintiff, County and third parties by publicly discussing in local newspapers matters which Plaintiff, County and the third parties had agreed to keep confidential under the settlement agreement;

2.) After the disclosure of the confidential information, County failed to investigate the leak of confidential information and failed to discipline any of the persons responsible for the leak of confidential information.

3.) Refusing, in violation of the terms of the settlement agreement, to indemnify Plaintiff for legal fees and costs incurred by him in the defense and enforcement of the settlement agreement. This failure to indemnify Plaintiff for legal fees and costs also constituted a violation of the terms of Plaintiff's employment with County.

4.) individual defendants engaged in an ultra vires and de-facto public disciplinary hearing regarding Plaintiff, in which the individual Defendants falsely accused Plaintiff of professional negligence and disclosed the confidential terms of the the comments of Botelho also violated the confidentiality provisions of the settlement agreement.

Plaintiff claims 1.) damages for economic harm for the loss of the benefit of the

4

confidentiality provisions of the settlement agreement, as well as for the amount of the legal fees and costs incurred by Plaintiff and not reimbursed by County, 2.) damages for mental distress, and 3.) attorney's fees and costs.

Plaintiff has alleged causes of action as follows:

1.) claims under 42 U.S.C. 1983 (hereinafter, "Section 1983 claim") for violation of Plaintiff's First Amendment rights of free speech, denial of Plaintiff's rights to equal protection under the Fourteenth Amendment and unlawful taking of Plaintiff's property without just compensation in violation of the Fifth and Fourteenth Amendments, all arising from Defendants' retaliatory conduct as stated above in Items 1, 2, 3 and 4; Plaintiff reported the criminal conduct of De La Cruz to the FBI and the US DOJ, and also forwarded workplace harassment complaints naming De La Cruz and cooperated in the investigation of those complaints; Plaintiff's Section 1983 claim for unlawful taking of Plaintiff's property without just compensation in violation of the Fifth and Fourteenth Amendment is based on, among other things, the following: A.) Defendants' refusal to pay Plaintiff the attorney's fees which Defendant County had agreed to pay Plaintiff in connection with the settlement of a law suit referred to in the complaint as *Fancher/Roybal I* as well as from B.) Defendants' violation of Plaintiff's confidentiality rights under the settlement reached by the parties in *Fancher/Roybal I;*

2.) breach of contract,

3.) tortious interference with contract; and

4.) intentional infliction of emotional distress

## II. ARGUMENT

### A.  The Acts and Speech Which Caused Defendants to Retaliate Against Plaintiff Were Not Undertaken by Plaintiff as Part of Plaintiff's Official Duties as District Attorney

Defendants, in their Memorandum (hereinafter, "Defts' Memo") argue that the acts and speech of Plaintiff which caused Defendants to retaliate against him were undertaken by Plaintiff as part of Plaintiff's official duties as District Attorney and were thus not protected

1   under the First Amendment under the holding of the Court in *Garcetti v. Ceballos* 126 S. Ct.

2   1951 (2006); see Defts' Memo, 5:20 – 9:3.

3        Defendants' argument fails because the FAC alleges, in Paragraph 6, 2:18 – 3:12, that

4   A.) Plaintiff had no duty as a state law enforcement official (district attorney) to investigate,

5   report or enforce violations of federal criminal or civil law.  Plaintiff's reporting of allegations

6   of criminal misconduct on the part of De La Cruz to the FBI and the US DOJ were not part of

7   Plaintiff's official duties.  Similarly, because Plaintiff as district attorney has no authority to

8   enforce civil laws, Plaintiff's referral of workplace harassment claims against De La Cruz to

9   the human resources department ("HR Dept.") of Defendant county was not part of Plaintiff's

10  official duties.  Plaintiff as district attorney has no duty or authority to report, investigate or to

11  take any other steps regarding civil law matters such as workplace harassment complaints.

12  Moreover, instead of personally reporting the workplace harassment claims to the HR Dept.,

13  Plaintiff could have simply told the complaining employees to report the matter to the HR

14  Dept. themselves.  He didn't, since, as a private citizen, he believed the workplace harassment

15  claims against De La Cruz, a public figure, to be a matter of public concern.

16       As the Court in *Garcetti, supra,* noted, and as this Court noted in its Order Granting

17  Motion to Dismiss with Leave to Amend,

18         "(t)he controlling factor in Ceballos' case is that his expressions
19         were made pursuant to his duties as a calendar deputy.  That consideration –
       the fact Ceballos spoke as a prosecutor fulfilling a responsibility
20         to advise a superior about how best to proceed with a pending case –
       distinguishes Ceballos' case from those in which the First Amendment
21         provides protection against discipline."
       *Garcetti, supra,* 126 S. Ct. @1959-1960
22

23  By contrast, in the instant case, Plaintiff *had no duty* to personally report the workplace civil

24  law harassment claims against De La Cruz to the HR Dept.; similarly, Plaintiff had no duty

25  to investigate or report to federal law enforcement officials alleged violations of federal law.

26       Defendants appear to argue that, because Plaintiff's reporting of workplace harassment

27  complaints against De La Cruz to the HR Dept. was consistent with applicable law, including

28

Title VII of the Civil Rights acts of 1964, the legality of Plaintiff's acts somehow transform Plaintiff's acts into part of his official duties as district attorney.  This is simply not the case; as is discussed below, Plaintiff, as District Attorney, has the duty to conduct prosecutions for "public offenses." Gov't Code Section 26500.  "Public offenses" do not include private civil claims based on workplace harassment.

Even if for any reason this Court were inclined to the view that Plaintiff's reporting of possible violations of federal law by De La Cruz to the FBI and the US DOJ and Plaintiff's reporting of the workplace harassment claims against De La Cruz to the HR Dept. were somehow part of Plaintiff's official duties as district attorney, the issue is not properly resolved at the pleading stage.  As this Court noted in its Order Granting Motion to Dismiss, the issue of whether or not Plaintiff's conduct was part of his official duties

> "cannot easily be resolved at the pleading stage because *Garcetti* provides little concrete guidance as to what does and does not constitute an employee's official duties.  Both *Garcetti* and subsequent cases relying on *Garcetti* were decided on summary judgment. "
> Order Granting Motion to Dismiss, 7:7 - 9

### 1.  Defendants, in their Memorandum, Have Seriously Misrepresented to this Court the Text and Substance of Plaintiff's Administrative Claim

Defendants, in their Memorandum, have seriously mischaracterized the text, substance and clear meaning of the facts and claims set forth in Plaintiff's administrative claim against Defendant county.  In an apparent effort to undermine the credibility of Plaintiff's Section 1983 claims, Defendants have attempted to mislead this Court into concluding that Plaintiff, in his administrative claim against Defendant County ("the Administrative Claim") made no reference to "reporting" alleged criminal violations by Mr. De La Cruz to law enforcement agencies and authorities such as the FBI and the U.S. Department of Justice.   Defendants' state as follows in their Memorandum:

7

1
2
3

> "…the amended complaint alleges that Defendants retaliated
> against Plaintiff for "reporting" the alleged criminal wrongdoing
> of De La Cruz, whereas the administrative claim alleges that
> Plaintiff was retaliated against for 'criminally prosecuting'
> the alleged criminal wrongdoing of De La Cruz."
> Defendants' Memorandum, 6:21 - 24

4
5
6
7

In an effort to support their false premise that the Administrative Claim contains to reference to

the reporting of De La Cruz' conduct to law enforcement agencies, Defendants have ignored

the clear statement in Paragraph 12 of the Administrative Claim, in which it states:

8
9
10

> "The actions of the Board (of Supervisors) …were taken …
> to retaliate against (Plaintiff) **for bringing violations of
> the law by certain members of the Board to the attention
> of law enforcement persons and agencies."**
> Administrative Claim, Paragraph 12

11
12
13
14
15
16
17

Clearly, "bringing violations of the law by certain members of the Board to the attention of law

enforcement persons and agencies" is the "reporting" of alleged criminal conduct by Defendant

De La Cruz to the FBI and U.S. Department of Justice.  Because the Administrative Claim

without question contains allegations of the reporting – as opposed to the prosecution – of

alleged criminal conduct to law enforcement persons and agencies, there is no disconnect

between the Administrative Claim and the FAC.

18
19
20
21
22

Moreover – and perhaps most importantly – the alleged criminal conduct of De La Cruz

which Plaintiff reported to the FBI and the US DOJ was factually separate from and unrelated

to the election/political corruption case referred to in Paragraph 8 which Plaintiff did prosecute

against De La Cruz.

23
24
25
26
27
28

Defendants have made serious factual misrepresentations to this Court in suggesting

that there is no allegation in the Administrative Claim of "reporting" the alleged criminal

conduct of De La Cruz to the FBI and the US DOJ, and in attempting to urge upon this Court

the false premise that the "election/political corruption" referred to in Paragraph 8 of the

Administrative Claim is the same criminal conduct which Plaintiff states in Paragraph 12 of the

Administrative Claim that he brought to the attention of law enforcement persons and agencies. Moreover, Defendants have coupled these misrepresentations with comments that the FAC is "a sham and contrived for the sole purpose of creating a federal claim under Section 1983." Such conduct by Defendants is by any measure inappropriate.

To the extent this Court concludes that the allegations in the FAC are insufficient to establish a prima facie the case that at least some of the conduct of Plaintiff was not part of Plaintiff's official duties, Plaintiff seeks further leave to establish that the alleged criminal conduct of Defendant De La Cruz which Plaintiff reported to the FBI and the United States Department of Justice was factually separate from and unrelated to the election/political corruption case referred to in Paragraph 8 which Plaintiff did prosecute against De La Cruz.

### 2.) Plaintiff Had No Duty as District Attorney to Report Workplace Harassment Claims Against Mr. De La Cruz to the HR Dept.

Plaintiff's job duties as district attorney simply did not require him to report to the HR Dept. workplace harassment complaints against individuals such as De La Cruz, who was not employed by the District Attorney's office but was instead an elected County supervisor. As stated above, Plaintiff, as district attorney, was not required to report, investigate or prosecute civil law claims such as workplace harassment complaints to the HR Dept. This is particularly true where the accused party is not employed by or part of the District Attorney's office. Defendant's suggestion in their Memorandum that, because a district attorney "*may* sponsor, supervise or participate in any project or program to improve the administration of justice" under Gov't Code Section 26500.5, somehow Plaintiff had a *duty* under Gov't Code Section 26500.5 to personally report workplace harassment claims against elected members of the Board of Supervisors to the HR Dept., is not legally supportable. "The administration of justice", as that term is used in Gov't Code Section 26500.5, must be informed by the definition

of the duties of a district attorney as set forth in Gov't Code Section 26500.  Gov't Code

Section 26500 states that "the district attorney is the *public* prosecutor," … and … shall initiate

and conduct on behalf of the people all prosecutions for *public* offenses.  "Public offenses" are

those prosecuted on behalf of "the People."  Claims brought on behalf of "the People" do not

include private employment harassment claims made by individuals.  See *People v. Terry*

(1994) 30 Cal. App. 4th 97.  Clearly, 'the administration of justice", as that term is used in

Gov't Code Section 26500.5, refers to criminal justice and the prosecution of "public offenses"

in the name of "the People."

Allegations of harassment of County employees by elected members of the Board of

Supervisors are, however, matters of public concern; it was because such workplace

harassment claims were matters of public concern that Plaintiff personally brought them to the

attention of the HR Dept., not because it was within his job duties as district attorney to do so.

**B.  Defendants' Argument that the FAC is Barred Under Gov't Code Section 910
Fails Since the Administrative Claim Does Contain the Same Factual Allegations Set
Forth in the FAC**

Defendant claim in Defts' Memo that the FAC is barred by Gov't Code Section 910

because the Administrative Claim allegedly does not correspond with the facts alleged in the

FAC.  As was made clear above, the allegations in the Administrative Claim without question

corresponds factually with the allegations in the FAC; see discussion above in Section

A 1.) at 8:22 – 10:19.  Accordingly, Defendant's argument that the FAC is barred for failure to

comply with the requirements of Gov't Code Section 910 is groundless and must be rejected.

**C.  Plaintiff Was Deprived of a Valuable Benefit and an Important Property Right**

Defendants argue that Plaintiff does not have a Section 1983 claim because Plaintiff

was not deprived of a valuable public benefit; see Defts' Memo, 10:11 – 13:2.  In its Order

Granting Motion to Dismiss with Leave to Amend, this Court already has ruled on this issue as

follows:

> "Defendants argue that unlike his counterparts in *Perry*
> and *Progressive,* Plaintiff has not been denied a "valuable
> public benefit," since the retaliation he alleges is a breach
> of the settlement agreement, not the loss of his government
> job. … However, even though here Plaintiff does not allege
> that he lost his job, he arguably was denied "a valuable benefit"
> in that, as a result of his exercising his First Amendment rights,
> he allegedly lost his the (sic) protections of the settlement
> agreement and spent $14,000 defending a lawsuit that allegedly
> stemmed from Defendant's retaliatory conduct."
> Order Granting Motion to Dismiss with Leave to Amend, 5:18 - -24

The denial of property rights under the Fourteenth Amendment which occurs as a result of a

person's exercise of their First Amendment rights of free speech is to be construed broadly.  As

the United States Supreme Court stated in *Perry v. Sindermann, supra,*

> "We have made clear in *Roth* …that 'property 'interests subject
> to procedural due process are not limited by a few rigid, technical
> forms.  Rather, 'property' denotes a broad range of interests that
> are secured by 'existing rules or understandings.' … A person's
> interest in a benefit is a 'property' interest for due process purposes
> if there are such rules or mutually explicit understandings that
> support his claim of entitlement to the benefit and that he may
> invoke at a hearing.
> 408 U.S. @ 601

As this Court has already stated in its Order Granting Motion to Dismiss with Leave to Amend,

Plaintiff claims the loss, among other things, of his confidentiality rights under the settlement

agreement reached in *Fancher/Roybal I,* as well as the denial by Defendants of his right to

reimbursement of attorney's fees and costs in the sum of approximately $14,000 in retaliation

for Plaintiff's exercise of his free speech rights.  There is no question that these rights meet the

test for "property interests" enunciated by the United States Supreme Court in *Perry v.*

*Sindermann, supra.*

Moreover, the FAC alleges that, in retaliation for Plaintiff's protected free speech and

conduct, Defendants directed County employee Irma Valencia to file a baseless complaint

against Plaintiff with the California State Attorney General's Office.  Defendants' filing of a

11

baseless complaint with the State Attorney General's Office against Plaintiff is within the

"broad range of interests" that are secured by "existing rules or understandings" enumerated by

the U.S. Supreme Court in *Perry v. Sindermann, supra*.  It must be kept in mind that

Defendants are accused of filing a baseless complaint against Plaintiff with the State Attorney

General's Office for a retaliatory and vastly improper reason, i.e., Plaintiff's having reported to

the FBI and the US DOJ alleged criminal wrongdoing by De La Cruz and others and for

reporting workplace harassment complaints to the HR Dept.  The ruling of the Court in *Rabkin*

*v. Dean, supra,* is instructive here.  In *Rabkin v. Dean, supra,* Judge Wilken denied a Rule

12(b)(6) motion to dismiss a claim by the Berkeley City Auditor against the City of Berkeley

and the members of the Berkeley City Council for refusing to give Plaintiff a salary increase in

retaliation for Plaintiff's exercise of her rights of free speech and political association.  In

denying the Rule 12(b)(6) motion, Judge Wilken stated as follows:

> Defendants' argument that Plaintiff has insufficiently alleged
> a constitutional injury is equally unavailing.  Their assertion that
> Plaintiff has suffered no actual impairment to her political
> activities misses the point: it is Defendants' alleged attempt
> to punish Plaintiff for exercising her first amendment rights
> that constitutes the injury, While it's true, as Defendants point
> out, that the cases relied upon by Plaintiff involve more serious
> adverse job decisions taken against public employees or
> appointees and not elected officials, this distinction does
> not compel the conclusion that no constitutional injury occurred.
> Plaintiff's first amendment claim does not rest on her alleged
> rights as a government employee.  Rather, the Supreme Court
> "has made clear that even though a person has no 'right' to a
> valuable governmental benefit and even though the government
> may deny him the benefit for any number of reasons, there
> are some reasons on which the government cannot rely."
> *Elrod v. Burns* (1976) 427 U.S. 347, 360-61, 96 S. Ct. 2673,
> 2683, 49 L. Ed.2d 547 (quoting *Perry v. Sindermann, supra.*
> 856 F. Supp. @ 548.

Thus, there need be no loss of property rights *per se* for Plaintiff to assert a claim against

Defendants based on the First Amendment.  If a governmental entity takes adverse action

12

against a plaintiff for a reason "upon which the government cannot rely," the government's

conduct is actionable.  "Freedom of expression under the First Amendment may not be

infringed by the denial of or placing of conditions upon a benefit or privilege."  *Rabkin v.*

*Dean, supra, 856* F. Supp. @ 548; *Elrod v. Burns* (1976) 427 U.S. 347, 360-61, 96 S. Ct. 2673,

2683, 49 L. Ed.2d 547; *Sherbert v. Verner* (1963) 374 U.S. 398, 404, 83 S. Ct. 1790, 1794, 10

L. Ed.2d 965; *Sugarman v. Dougall* ((1973) 413 U.S. 634, 644, 93 S. Ct. 2842, 2848, 37 L.

Ed.2d 853; *Keyishian v. Board of Regents* (1967)385 U.S. 589, 605 – 606, 87 S. Ct. 675, 684 –

685, 17 L. Ed.2d 629.

**D.  In Light of the Holding in *Perry v. Sindermann, supra,* and Other Cases Cited Above, Defendants Fail in Their Argument that Defendants' Public Discussion and Publication of the Confidential Settlement Agreement in *Fancher v. Roybal I* Cannot Support a Section 1983 Claim**

Defendants argue that the public's First Amendment rights outweigh any right of

Plaintiff to have the terms of the confidential settlement agreement in *Fancher/Roybal I* kept

confidential; see Defts' Memo, 13:3 – 14:1.  Defendants' position makes no sense.  What

makes the public discussion of the terms of the confidential settlement agreement in

*Fancher/Roybal I* actionable under 42 USC Section 1983 is that Defendant County *agreed* in

the *Fancher/Roybal I* settlement agreement to keep the terms of the agreement confidential;

had the agreement not required that its terms remain confidential, Plaintiff would not have

entered

into it.  The enforceability of confidentiality provisions in settlement agreements has been

upheld in a vast litany of cases, including cases involving settlements with public entities.

Plaintiff is claiming that defendants 1.) agreed not to make the terms of the Settlement

Agreement confidential and 2.) thereafter breached that agreement.  It ill suits Defendants to

argue that they are entitled to make agreements, break them and escape liability for such

breach, all under the rubric of First Amendment rights.  If the terms of the original Settlement

Agreement should have been a matter of public record, Defendants had no right to agree that

the terms thereof should be made confidential.  Defendants must be held accountable for their

breach of agreement both under common law breach of contract principle as well as under 42

USC Section 1983 for their misconduct.  Moreover, as is discussed more fully below in Section

E, the fact that Plaintiff also has a pendent breach of contract claim under state law for the same

retaliatory conduct by Defendants which gave rise to Plaintiff's claim under 42 USC Section

1983 claim does not negate the existence of Plaintiff's Section 1983 claim.

Defendants further argue that "Defendants were required by Gov't Code Section 6253

to disclose the terms of the confidential settlement agreement in *Fancher/Roybal I*.   However,

a review of Gov't Code Section 6253 demonstrates clearly that 1.) the statute specifically

excludes from its disclosure requirements "public records exempt from disclosure by express

provisions of law," and 2.) while the statute requires *disclosure upon request* of public records

not otherwise exempt from disclosure under express provisions of law, it does not in any way

require – or even mention – the public disclosure and discussion of public documents not

exempt from disclosure *other than in response to a request.* The FAC alleges *sua sponte* public

disclosure and discussion in a public forum by Defendants of the terms of the confidential

settlement agreement in *Fancher/Roybal I* in retaliation for Plaintiff's exercise of his free

speech rights.  The FAC does not allege that Defendants produced a copy of the settlement

agreement in response to a request for disclosure of the documents under Gov't Code Section

6253.  Gov't Code Section 6253 is a red herring with no application to the instant case.

Moreover, Defendants had no *duty* to disclose such documents.  Gov't Code Section

6253 contains an exemption from its disclosure requirements for public records which are

"exempt from disclosure by express provisions of law," such as a settlement agreement which

is by its terms confidential.  Courts have often upheld the confidentiality provisions contained in settlement agreements; the confidentiality provisions of such settlement agreements where a public entity is a party can be enforced by parties other than the public entity.

**E.  The Fact That Plaintiff Also Has a Pendent State Law Breach of Contract Claim for the Same Retaliatory Conduct by Defendants Which Gave Rise to Plaintiff's Section 1983 Claim Does Not Negate the Existence of Plaintiff's Section 1983 Claim**

Defendants argue that the fact that Plaintiff also has a pendent breach of contract claim under state law for the same retaliatory conduct by Defendants which gave rise to Plaintiff's Section 1983 claim somehow negates the existence of Plaintiff's Section 1983 claim.  The requirement in a Section 1983 for the loss of a valuable benefit is discussed above in Section C; the holdings in the cases cited in Section C, above, including *Perry v. Sindermann, supra,* make clear that the test for determining whether a plaintiff has been deprived of a valuable benefit has nothing to do with whether or not the facts underlying a plaintiff's claim also support a state law cause of action for breach of contract.

In support of their argument that facts which give rise to a state law breach of contract claim cannot also support a Section 1983 claim, Defendants cite the holding in *Progressive Transp. Services v. County of Essex* 999 F. Supp. 701 (1998).  As they did with the provisions of Gov't Code Section 6253, Defendants' counsel also have misrepresented the holding of the Court in *Progressive, supra;* Defendants have also represented that the holding in *Progressive, supra,* is a U.S. Supreme Court decision, when in fact it is a District Court decision. Defendants cite *Progressive, supra,* as holding that "a cause of action arising from a breach of contract is not a proper basis for a Section 1983 action and must be brought, if at all, in state court" (see Defts' Memo, 15:1 – 3).  In fact, the holding in *Progressive, supra,* says no such thing.  In *Progressive, supra,* the plaintiff ("Progressive") was a transportation company which provided transportation services for Medicaid recipients and handicapped individuals under

contract with Essex County, New Jersey ("Essex").  Progressive had the contract for

transporting such individuals on four routes.  Progressive determined that it would be more

economical for Progressive - not for Essex – to services two of the routes with one vehicle.

Progressive started servicing these two routes with one vehicle, and advised an Essex employee

that it was doing so.  Thereafter, Essex objected to the practice of servicing two routes with one

vehicle. Progressive wrote a letter to Essex explaining its position, stating that using one

vehicle on the two routes "…maximizes the effectiveness of taxpayers' dollars and reduces

energy consumption through lower fuel usage."   Essex refused to pay for both routes and

rejected a number of low bids from Progressive for the ensuing summer and for the next school

year, awarding Progressive only one route.  Progressive filed suit against Essex under 42 USC

Section 1983 as well as under state law for breach of contract, claiming that it was denied

compensation and routes on which it was the low bidder because it had exercised its free

speech rights by writing the letter to Essex.   The Court in *Progressive, supra,* held that 1.)

Progressive did not have a Section 1983 claim because its exercise of its free speech did not

involve a matter of public concern.  The Court in *Progressive, supra,* stated that

> "Progressive's speech was merely an issue of economic
> concern to Progressive."
>  999 F. Supp @ 704.

Because it had found that Progressive had no federal case under 42 USC Section 1983,

the Court in *Progressive, supra,* declined to exercise supplemental jurisdiction over

Progressive's state law claim for breach of contract, stating as follows:

> "Having determined that Plaintiff's federal claim should
> Be dismissed, this Court chooses to exercise it discretion
> and dismiss the remaining state law claim …"
> 999 F. Supp. 705.

The dismissal of the claims of the plaintiff in *Progressive, supra,* had nothing to do with the

fact that the facts giving rise to Progressive's claim under 42 USC Section 1983 also supported

a breach of contract claim under state law; rather, the Court found that the speech of the

plaintiff did not involve an issue of public concern and dismissed Progressive's claim under 42

USC Section 1983; having dismissed Progressive's only federal claim, the Court then exercised

its discretion to dismiss Progressive's pendent state law breach of contract claim.  The Court in

*Progressivie, supra,* never held, as Defendants' counsel would have this Court believe, that "a

cause of action arising from the breach of a contract is not a proper basis for a Section 1983

claim." (See Defts' Memo, 15:1 – 3).

Defendants' counsel also misrepresents the holding of the Court in *Lujan v. G&G*

*Sprinklers* (2001) 532 US 189.  *Lujan, supra,* was a case brought by a contractor (G&G

Sprinklers, "G&G") against the California Division of Labor Standards Enforcement ("DLSE")

to recover funds due to G&G on public works projects withheld by DLSE because DLSE

claimed that G&G had not paid sufficient wages to its employees.  The California Labor Code

permitted DLSE to withhold such amounts until the issue was adjudicated in the Courts.  G&G

sued on the grounds that the withholding of the funds constituted a denial of due process under

the Fourteenth Amendment.  The Supreme Court held that

> "Because we believe that California law affords (G&G)
> sufficient opportunity to pursue it claim in state court,
> we conclude that the California statutory scheme does
> not deprive G&G of its claim for payment without due
> process of law."
> 532 US @196.

Thus, the Court in *Lujan, supra,* did not hold, as Defendants' counsel claims, that "even if it is

assumed that a contract right creates a property interest, these interests … can be fully

protected by an ordinary breach of contract suit."  The Court in *Lujan, supra,* simply held that

the property interest of G&G, having been determined not to involve due process claims, could

be litigated in a state court breach of contract suit.  The Court in *Lujan, supra,* in fact

distinguished from the property interests of G&G certain  property interests in other cases

where due process issues were found by the Court to exist.  As the Court in *Lujan, supra,* stated,

> "(G&G's) interest, *unlike the interests discussed above,* … can be fully protected by an ordinary breach of contract suit."
> 532 US @196.

### F.   The Gravamen of Plaintiff's Claims Arising from Defendants' Conduct at the Ultra Vires, De Facto Disciplinary Proceeding Is Not Defamation

Defendants claim that the public humiliation, accusations and other misconduct inflicted on Plaintiff by Defendants at the ultra vires, de facto disciplinary proceeding in retaliation for Plaintiff's exercise of his free speech rights cannot be the basis for a claim under 42 USC Section 1983 because it is a claim for "defamation;" see Defts' Memo, 15:22 – 16:3 and 17:6 – 26.  The gravamen of Plaintiff's claims arising from the conduct of Defendant's at the ultra vires de facto disciplinary proceeding; rather, Plaintiff's claims arising from the conduct of Defendants at the de facto disciplinary hearing are: 1.) loss of the benefits of the confidential settlement agreement in *Fancher v. Roybal I;* 2.) emotional distress; and 3.) interference with Plaintiff's ability to pursue his profession as district attorney.  Since the gravamen of Plaintiff's claims is not defamation, the privilege contained in California Civil Code Section 47 is irrelevant to Plaintiff's claims.

### G.   Government Code Section 25303 Does Not Permit a Board of Supervisors to Place Illegal, Financial and Other Controls on the District Attorney's Office Run By Plaintiff, Particularly Where, As Here, Defendants' Placed Such Illegal Financial and Other Controls on the District Attorney's Office for an Unlawful and Retaliatory Reason.

Defendants argue that the conduct of the individual Defendants at the ultra vires, de facto disciplinary hearing, in placing illegal and other financial controls over the District Attorney's Office, and in filing a baseless claim against Plaintiff with the State Attorney

General's Office, even if undertaken to retaliate against Plaintiff for his exercise of his free

speech rights, is privileged and for that reason not actionable under 42 UCS Section 1983; see

Defts' Memo, 16:4 – 17:5; 17:27 – 18:25.   The FAC states that, among other things

Defendants did in retaliation for Plaintiff's exercise of his free speech rights, Defendants place

illegal financial and other controls on the District Attorney's Office and in other ways

interfered with Plaintiff's management of the District Attorney's Office, all in wrongful and

illegal retaliation for the legitimate and proper exercise by Plaintiff of his free speech rights in

his capacity as District Attorney for San Benito County.  Defendants' counsel cited Gov't Code

Section 25503 as a basis for essentially immunizing Defendants' conduct in this regard from

liability to Plaintiff.  Gov't Code Section 25503 states in relevant part that "the board of

supervisors shall establish or abolish those funds as are necessary for the proper transaction in

the business of the county and may transfer money from one fund to another, as the public

interest requires."  The illegal financial and other controls implemented by Defendants in

retaliation against Plaintiff for exercising his First Amendment rights of free speech go far

beyond "establishing and abolishing funds as are necessary for the proper transaction in the

business of the county" and "transferring money from one fund to another."  In fact, the

financial controls implemented by Defendants were so egregious that they constituted *ultra

vires* conduct.

Moreover, regardless of whether Defendants, in implementing the financial and other

controls on the District Attorney's Office, were engaging in *ultra vires* conduct, there is

nothing in the above-quoted language from Gov't Code Section 25503 which in any way

immunizes Defendants from the liability they have for asserting such financial controls over the

District Attorney's office in retaliation for Plaintiff's exercise of his rights of free speech.  The

existence of legal authority on the part of a public entity to exercise the powers in question (i.e.,

19

implementing financial and other controls over the District Attorney's Office) is irrelevant to whether or not liability on the part of the public entity exists for exercising such powers "in bad faith with improper motives" and whether or not such action was taken by the public entity in retaliation Plaintiff's exercise of his rights of free speech.  *Rabkin v. Dean, supra,* 856 F. Supp. at 549.

### 1.  Assuming Arguendo That the Individual Defendants are Entitled to Absolute Immunity for Some or All Their Acts, the Defendant County is not Entitled to Any Such Immunity.

Assuming arguendo that the individual Defendant are entitled to absolute immunity for some or all of their acts, Defendant County is not entitled to such immunity.  As the Court stated in *Rabkin v. Dean, supra*,

> Plaintiff's Section 1983 claims against the City cannot be resolved on grounds of absolute immunity.  Rather, under *Monell v. Dept. of Social Serv. of the City of New York (1978)* 436 U.S. 658, 98S Ct 2018, 56Led 2d 611, the official acts of municipal policy makers are acts of the municipality for the purposes of Section 1983.
> 856 F. Supp. 543

Thus, even if the individual Defendants are dismissed, defendant County is not entitled to immunity.

### H.  The Interpretation of the Meaning of the Indemnity Provision in the Settlement Agreement in *Fancher/Roybal I* is Properly Addressed at Trial, or At Least After Discovery is Complete, Not on a Motion to Dismiss at the Beginning of the Case.

Defendants argue that Plaintiff's breach of contract cause of action fails because Defendant County was not required to indemnify Plaintiff for attorney's fees incurred by Plaintiff in Plaintiff's attempts to protect his rights under the confidential settlement agreement in *Fancher v. Roybal I*; see Defts' Memo, 18:26 – 20:24.  The indemnity agreement contained in the Settlement Agreement in *Fancher/Roybal I* is as follows:

> The COUNTY agrees to defend and indemnify the District Attorney in the manner and subject to the requirements of the California Government Code

concerning any legal claims or causes of action asserted by the parties to this AGREEMENT.

The language in the foregoing indemnity provision which defines the scope of the indemnity obligations of the County, i.e., indemnity "concerning any legal claims or causes of action asserted by the parties to this agreement," is quite broad.  It does not exclude Plaintiff's rights to indemnity for attorney's fees and costs incurred in Plaintiff's efforts in *Fancher II* to prevent public dissemination of documents and information relating to the subject of the Settlement Agreement.  The indemnity provision is broad enough and/or ambiguous enough to bring within its ambit the attorney's fees incurred by Plaintiff in his efforts to enforce his rights to confidentiality of the Settlement Agreement – an important benefit to which Plaintiff was legally entitled under the Settlement Agreement.  Plaintiff was a real party in interest in *Fancher/Roybal I,* and had every right to file an amicus brief to prevent disclosure of confidential information protected under the terms of the confidentiality provision of the settlement agreement.

This is a motion to dismiss brought under FRCP Section 12 (b) (6).  Arguments regarding the interpretation of the indemnity provision of the settlement agreement cannot be made at this early juncture.  As the Court in *Rabkin v. Dean, supra,* stated:

> Defendants also argue that their decision (in denying Plaintiff City Auditor a salary increase) advanced a public policy interest and that they applied the same policy when voting not to propose salary increases for other elected officials.  This is a factual argument aimed at defeating Plaintiff's allegation that she was singled out for political reasons.  As such, it is irrelevant to the sufficiency of the complaints allegations, and thus irrelevant to the Court's inquiry on a motion to dismiss under Rule 12(b) (6).  Plaintiff need only allege that her political activities were a substantial or motivating factor in the adverse salary decisions…
> 856 F. Supp. @ 548 – 549.

**I.  The Individual Defendants Were Not Signatories to the Confidential Settlement Agreement and thus Were Not Parties to It; for this Reason, a Cause of Action for Tortious Interference with Contractual Rights Properly Lies Against the Individual Defendants**

Defendants argue that no cause of action for tortious interference with contract will lie against the individual defendants because they are agents of the defendant County which signed the confidential settlement agreement in *Fancher v. Roybal I*.  The individual defendants were not signatories to the confidential settlement agreement in *Fancher v. Roybal I* and for that reason a cause of action for tortious interference with contractual relationship properly lies against the individual defendants.  The case of *Shoemaker v. Myers* (1990) 52 Cal 3d 1, cited by Defendants for the proposition that, since the individual defendants were employees of Defendant county, they cannot be liable for tortious interference with Plaintiff's contract rights.  *Shoemaker, supra,* was a "whistleblower" employment case where the other defendants besides the state agency employer were the plaintiff's supervisors and coworkers.  By contrast, in the instant action, Plaintiff is not an employee of Defendant county or of the individual Defendants.  As an elected official, Plaintiff does not have an employer.  *Rabkin v. Dean, supra,* 856 F. Supp. @ 549.

### J.  The Conduct of Defendants Was Sufficiently Extreme and Outrageous to Support Sixth Cause of Action for Intentional Infliction of Emotional Distress

Defendants argue that the facts alleged in the FAC as a matter of law do not support a cause of action for intentional infliction of mental distress against Plaintiff; see Defts' Memo, 22:2 – 24:1.  The facts alleged in the complaint are by any measure egregious in terms of both the reasons alleged for Defendants' conduct as well as the conduct itself which was directed specifically toward Plaintiff.  As is set forth in the complaint, because Plaintiff was lawfully and appropriately reporting to the FBI and the US DOJ alleged criminal wrongdoing by De La Cruz and others and for Plaintiff reporting employee workplace harassment complaints against De La Cruz to the HR Dept. The complaint alleges that, in retaliation for engaging in the above-described conduct, Defendants

1.) Failed and refused to pay the sum of approximately $14,000 due to Plaintiff under

22

the indemnity provision contained in the Settlement Agreement in *Fancher/Roybal I* ;

2.) Publicly discussed, published and assisted to be published, details of the confidential settlement agreement reached in *Fancher/Roybal I*;

3.) Publicly and defamed Plaintiff by accusing Plaintiff of professional negligence, or words to that effect, in a false manner,

4.) Filed a baseless complaint against Plaintiff with the State Attorney General's Office;

5.) Engaged in an ultra vires and de facto public disciplinary hearing regarding Plaintiff;

The foregoing conduct meets the "extreme and outrageous" requirements of applicable case law.

There are other facts which support Plaintiff's claim for intentional infliction of mental distress which have not thus far been mentioned.  If this Court is for any reason inclined to grant the Motion to Dismiss as to the sixth cause of action, Plaintiffs seek leave of court that any such motion be granted with leave to amend, so that Plaintiff can allege additional acts in conduct of Defendants giving rise to and supporting the cause of action for intentional infliction of mental distress.

**K.  The Test of Whether or Not the Individual Defendants Are Entitled to Official Immunity for Their Acts is Not the Scope of the Acts, but a "Functional" Inquiry.**

Defendants argue that none of the claims in the FAC can be maintained against the individual defendants; see Defts' Memo, 24:2 – 16.   The U.S. Supreme Court has held that the over-riding concern in questions of official immunity is not the scope of the acts, but a "functional" inquiry in which the Court must "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and seek to evaluate that effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester v. White* (1988) 484 US 219, 223, 108 S. Ct. 538, 542, 98 L. Ed. 2d. 555; Rabkin *v. Dean, supra,* 856 F. Supp. @ 547.  Defendants bear the burden of

showing that absolute immunity "is justified by overriding considerations of public policy..."

*Forrester v. White*, supra, 484 US @ 224.  As the discussion below makes clear, the actions in

which the individual defendants engaged are not ones which are in any way necessary for

Defendants to perform their duties as members of the board of supervisors.

While the FAC lacks details on the extent to which the individual Defendants imposed

improper financial and other controls on the administration of the District Attorney's Office, in

fact, the controls implemented by the individual Defendants were such that they were

well beyond the scope of any proper or appropriate budgetary oversight of the District

Attorney's Office.   Secondly, there is absolutely nothing in the Gov't Code that states that it is

part of the Board of Supervisors' duties or powers to supervise the conduct of the District

Attorney personally.  Accordingly, the filing of a baseless  complaint against Plaintiff

and the remitting of same to the State Attorney General is by any measure an act not justified

by overriding consideration of public policy.

Similarly, the refusal of the board of supervisors to honor the confidentiality provisions

of an agreement they approved and the refusal of the board of supervisors to honor the

indemnity provisions of the same agreement cannot be justified on the basis that any of those

acts are entitled to immunity by overriding considerations of public policy.  It does not impair

the ability of the board of supervisors to perform its functions for the board of supervisors not

to have absolute immunity for such acts.

Dated: February 15, 2008                          MAYO & MAYO
                                                  Attorneys for Plaintiff JOHN J.
                                                  SARSFIELD

                                        By:    _____/s/_____
                                               TERENCE O. MAYO

**PROOF OF SERVICE**
C.C.P. Section 2015.5

I, the undersigned, declare:

I reside in the State of California, am over the age of eighteen years, and not a party to the within action.  My business address is MAYO & MAYO, 114 Sansome Street, Suite 825, San Francisco, CA  94104.  On this date I served the within document[s]:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

[X]                by transmitting via **FACSIMILE** the above-listed document(s) to the fax number(s) set forth below.

[]                by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States **MAIL** at San Francisco, California, addressed as set forth below.

[ ]                by causing to be **HAND** delivered the document(s) listed above to the person(s) at the address(es) set forth below.

[ ]                by placing the document(s) listed above in a sealed **FEDERAL EXPRESS** envelope, with delivery charges prepaid, in a Federal Express depository at San Francisco, California, addressed as set forth below.

| | |
|---|---|
| Fax: 1-408-918-4501<br>Stephan A. Barber<br>Daniel P. McKinnon<br>Ropers, Majeski, Kohn & Bentley<br>80 North First Street<br>San Jose, CA 95113 | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at San Francisco, California on February 17, 2008.

_____/s/_____
Terence O. Mayo