Terence O. Mayo, Esq.  SBN 62035
Mary E. Mayo, Esq. SBN 188142
Mayo & Mayo
114 Sansome Street, Suite 825
San Francisco, CA  94104

Telephone: (415) 397-1515
Fax: (415) 397-1540

Attorneys for Plaintiff
JOHN J. SARSFIELD

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN J. SARSFIELD,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BENITO, JAIME DE LA CRUZ, in his official capacity, REB MONACO, in his official capacity, ANTHONY BOTELHO, in his official capacity, DON MARCUS, in his official capacity, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. C-07-2528 JF<br><br>**STIPULATION AND ORDER GRANTING LEAVE TO FILE FOURTH AMENDED COMPLAINT** |

1

Plaintiff JOHN SARSFIELD, through his attorneys, MAYO & MAYO and TERENCE

O. MAYO, and Defendants COUNTY OF SAN BENITO, JAIME DE LA CRUZ, in his official

capacity, REB MONACO, in his official capacity, ANTHONY BOTELHO, in his official

capacity, DON MARCUS, in his official capacity, through their attorneys, ROPERS MAJESKI

KOHN BENTLEY and STEPHAN A. BARBER, hereby stipulate that said Plaintiff shall have

leave to file a Fourth Amended Complaint in the form attached hereto, marked Exhibit A and

incorporated by reference.

IT IS SO STIPULATED.

Dated: July 31, , 2009

MAYO & MAYO
Attorneys for Plaintiff JOHN J.
SARSFIELD

By: _____
TERENCE O. MAYO

Dated: July 29, , 2009

ROPERS MAJESKI KOHN BENTLEY
Attorneys for Defendants COUNTY OF
SAN BENITO, JAIME DE LA CRUZ, in
his official capacity, REB MONACO, in
his official capacity, ANTHONY
BOTELHO, in his official capacity, DON
MARCUS, in his official capacity

By: _____
STEPHAN A. BARBER

IT IS SO ORDERED.

Dated: ___8/10_____, 2009

_____
The Honorable Jeremy Fogel, United
States District Judge

2

TERENCE O. MAYO, SBN #62035
MAYO & MAYO
114 SANSOME STREET, SUITE 825
SAN FRANCISCO, CA 94104
TELEPHONE: 415-397-1515

Attorneys for Plaintiff
JOHN SARSFIELD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SARSFIELD | CASE NO. C 07-2528 JF |
| Plaintiff, | FOURTH AMENDED COMPLAINT FOR DAMAGES |
| | (1) 42 U.S.C. SECTION 1983 |
| v. | (2) BREACH OF CONTRACT |
| | (3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| County of San Benito, | |
| Jaime De La Cruz, in his official capacity | |
| Reb Monaco, in his official capacity | |
| Anthony Botelho, in his official capacity | |
| Don Marcus, in his official capacity | |
| and Does 1 through 10, inclusive, | |
| Defendants. | |
| | DEMAND FOR JURY |

Plaintiff John J. Sarsfield alleges on information and belief:

<u>Jurisdiction and Venue:</u>

1. This action arises under the Constitution of the United States, particularly the First, Fifth and Fourteenth Amendments, under the laws of the United States, particularly 42 U.S.C. Sections 1983 and 1988, and the laws of the State of California.

2.  The jurisdiction of this court is invoked under the provisions of 28 U.S.C. Sections 1331 and 1343.

3.  Venue is in this district because it is where the events complained of occurred.

## FIRST CAUSE OF ACTION

(42 U.S.C. Section 1983)

4.  Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants  are responsible in some manner for the acts of omissions herein alleged, and that Plaintiff's injuries as alleged herein were proximately caused by the acts of omissions.

5.  Plaintiff is informed and believes and thereon alleges that at all times relevant to and mentioned herein, the Defendants and each of them, were the agents and employees of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as such agents and employees with the permission and consent of their co-Defendants.

6.  Plaintiff John Sarsfield was at all times relevant to this matter the District Attorney of the County of San Benito and a resident of the Northern District of California and the County of San Benito.  Plaintiff, as District Attorney, had a duty to enforce violations of state criminal law, and limited violations of state civil law, such as unfair business practices or environmental violations.  As District Attorney Plaintiff had no jurisdiction to investigate, speak about, or prosecute violations of federal criminal law. Plaintiff as District Attorney had no duty to speak out on matters of public concern such as breaches of the public trust, or the criminal misconduct of high ranking county government officials.  Further, Plaintiff had no duty as a state law enforcement official (district attorney) to investigate, report or enforce violations of federal criminal or civil law.  At all times

2

relevant to this complaint when Plaintiff spoke out on matters of public concern, allegations of criminal misconduct by high ranking local government officials, or breaches of the public trust, he was speaking in his personal capacity as a citizen. Plaintiff's duties as district attorney were limited to the investigation and prosecution of violations of state law. Plaintiff had no duty as district attorney to investigate, participate in, support, or otherwise forward to third parties or government entities personnel complaints, workplace harassment claims, allegations of employment discrimination, or employment retaliation brought against high ranking local government officials such as supervisor defendants. Further, Plaintiff as district attorney had no authority to investigate claims of workplace harassment brought by employees of the County of San Benito, including staff of the district attorney's office. Said authority to investigate any such complaints rested exclusively with defendant County. At all times relevant herein, when Plaintiff engaged in any such activities in support of personnel complaints filed by third persons, said actions were in Plaintiff's personal capacity as a citizen, and not as district attorney. At all times relevant herein, the personnel workplace harassment complaints referred to herein that were forwarded and supported by Plaintiff were brought by district attorney employees solely against defendant supervisors and their agents.

7. Defendant County of San Benito (hereinafter "County") is and was a local governmental entity, organized under the laws of the State of California and subject to the laws of the United States, the State of California, and the Constitutions of the United States and the State of California. County promulgates rules, ordinances and regulations which are binding upon County and its officers and employees, and have the force and effect of law. The County is governed and lead by a five person Board of Supervisors (hereinafter "Board"). The County exercises its powers through the direction and orders of the Board. The County sets the pay and benefits of County employees, department heads, and officers,

including Plaintiff, issues paychecks, contributes to the retirement funds of County

employees, department heads and officers, including Plaintiff, and supervises the personnel

hiring practices, fills employee vacancies, including the position of District Attorney in the

event it becomes vacant, and is the employer of all County employees.  The County also

furnishes employees, department heads, and officers, including the District Attorney, their

workplace and equipment necessary to perform their work.  The County also issues annual

income tax statements to employees, department heads, and officers, including the District

Attorney.  County in all aspects is the employer of Plaintiff, except as to the performance of

Plaintiff's professional duties.  County has also adopted rules, policies and procedures which

require and mandate confidentiality in personnel matters, including complaints against staff

or department heads.

    8.  Defendants Jaime De La Cruz, Reb Monaco, Anthony Botelho, and Don Marcus

are members of the Board of Supervisors of the County and as such are responsible for

creating and setting policy, directing its actions and omissions, and otherwise supervising

subordinate County personnel.  At all times relevant to this complaint, the supervisor

defendants mentioned herein were not personally bound by the terms of the various

contractual agreements entered into and in effect between Plaintiff, County, Fancher,

Roybal, and others.  As such, any actions taken by said supervisor defendants that affected

said contractual agreements were either taken on behalf of and at the behest of defendant

County, or were in their personal capacities and as strangers to the agreements.

    9.  On or about the late Spring and continuing into the Summer of 2004, County

employees Katie Fancher ("Fancher") and Julia Roybal ("Roybal") filed a lawsuit in San

Benito County Superior Court against County and Plaintiff (hereinafter referred to as

Fancher/Roybal I).

    10.  On or about October 2004, Plaintiff County, and Fancher and Roybal, while in

San Francisco, California, entered into a written agreement to engage in confidential

mediation talks in an effort to settle and resolve the Fancher/Roybal I matter.  The

agreement required all parties to it (Plaintiff, County, its employees, Fancher, and Roybal) to

maintain the confidentiality of the scope of the discussions held during mediation.  The

agreement was binding and applicable to County, its officers, employees, including Fancher and Roybal, department heads, officers, Board members, and Plaintiff.  Said agreement was of value to Plaintiff and as such constituted his personal property.

11.  On or about November 2004, Defendant Monaco, acting on behalf of Defendant County and in his official capacity, intentionally and tortiously interfered with the contractual relationship between County, plaintiff, Fancher, and Roybal, and breached the mediation agreement without legal excuse or just cause, by publicly discussing in a local San Benito County newspaper the confidential topics of discussions held during the mediation talks in October 2004.  Defendant Monaco's actions also violated County's own policies, practices and rules requiring confidentiality in personnel matters.  Defendant Monaco's actions were designed to and calculated to take the property interests of Plaintiff; moreover, Defendant Monaco's actions did in fact constitute a taking of Plaintiff's property, i.e., the value of the confidentiality agreement, without compensation and in retaliation for Plaintiff having engaged in the following conduct, all of which conduct constituted speech or conduct protected under the First Amendment of the United States Constitution and all of which was undertaken by Plaintiff in his personal capacity and not as part of his official duties as District Attorney:  Reporting to the Federal Bureau of Investigation, in his (Plaintiff's) individual capacity as a citizen,  alleged criminal wrongdoing by Defendant De La Cruz and others (said report having been made in late Spring and early Summer of 2004), as well as reports made to the California Attorney General's Office/Department of Justice at the same time,

12.  Neither Defendant Monaco, nor any other Supervisor defendant were parties in their personal capacity to the mediation agreement contract between Plaintiff, County, Fancher and Roybal, and any documents that may have been executed by any of them were done merely as representatives of County.  At no time did Plaintiff receive compensation for the taking of his property by Defendants, as is required by the First and Fourteenth Amendments.  Plaintiff objected to Defendant Monaco's actions by County failed to take any action to discipline Monaco or to otherwise prevent future similar acts by Defendant Monaco and others.

13.  On and about December 2004 and continuing into January 2005, the County, through Defendants Botelho and Marcus, negotiated and entered into a written settlement agreement (contract) with Plaintiff in the Fancher/Roybal I matter.  The County, through Defendants Botelho and Marcus, induced Plaintiff to settle the Fancher/Roybal I matter by agreeing to and promising to, among other things, defend and indemnify Plaintiff for litigation costs arising out of future legal actions anticipated to be brought by employees Fancher and Roybal, and to maintain the confidentiality provisions of the settlement agreement in the Fancher/Roybal I matter, and its terms.  Relying on County's promises, Plaintiff agreed to settle the Fancher/Roybal I matter.  The terms of the agreement were binding and applicable to  County, its officers, employees, including Fancher and Roybal, department heads, officers, Board members in their official capacities, and Plaintiff. Additionally, County's own rules, regulations and practices required county and its officers and employees to keep the terms of the settlement agreement and any underlying personnel issues or information confidential.

14.  Shortly after the agreement was reached in the Fancher/Roybal I matter, County employees, or agents of County employees, in retaliation for the conduct of Plaintiff as described above in Paragraph 11, breached the confidentiality terms of the agreement in violation of County rules, regulations and practices, by releasing to the local media copies of confidential documents disclosed during the mediation talks in October 2004 pursuant to the earlier mentioned mediation agreement.   These actions were taken on behalf of defendant County and by the individual defendant's or their agents. Said release of documents had the effect of taking the value of the contract from Plaintiff and was designed and intended to inflict harm, physical and emotional distress upon Plaintiff, and was done with malicious intent.

15.  Immediately after the release of the confidential documents, Plaintiff complained to County and its officers and demanded that the employees responsible be located, identified and disciplined.  County failed and refused to adequately investigate the leak of the private and confidential information and failed to discipline any County

1   employee, officer, or department head, thereby condoning such conduct through County's

2   inaction.

3       16.  On and about the late Winter of 2005 and continuing through the Spring and into

4   the Summer, County employees Fancher and Roybal initiated new litigation in San Benito

5   County Superior Court, as anticipated by Plaintiff and County during the negotiations

6   described above.  The new litigation (hereinafter referred to as Fancher/Roybal II) was an

7   attempt to overturn the confidentiality provisions of the settlement agreement of

8   Fancher/Roybal I, as well as to violate County's confidentiality rules in personnel matters.

9       17.  Contemporaneously to and following the filing of the Fancher/Roybal II,

10  Defendant De La Cruz acting on behalf of County, either personally or through his agents,

11  and also acting in his individual capacity as a private person who was not personally bound

12  by the terms of the settlement agreement and contract entered into between Plaintiff,

13  County, Fancher, and Roybal, began publicly discussing, publishing, and assisting to be

14  published, details of the confidential settlement agreement entered into in the

15  Fancher/Roybal I matter, thereby interfering with the performance of defendant County's

16  contractual obligations to Plaintiff, and the enjoyment of the contractual benefits enjoyed by

17  Plaintiff under the terms of the agreement, and thereby breaching the settlement

18  agreement/contract and invading Plaintiff's right to privacy and taking from Plaintiff

19  without just cause, due process, or fair compensation the value of Plaintiff's property.  These

20  actions of Defendant De La Cruz were taken to retaliate against Plaintiff for Plaintiff having

21  engaged in the conduct described above in Paragraph 11, as well as in retaliation for

22  Plaintiff having engaged in the following conduct, in which Plaintiff had commenced to

23  engage in the Spring of 2005, in the following conduct: Forwarding County employee

24  workplace harassment complaints against De La Cruz  to the County of San Benito human

25  resources department ,

26      18.  The litigation in the Fancher/Roybal II matter was brought against County

27  although Plaintiff appeared as Amicus and was the de facto real party in interest, as County

28  employees Fancher and Roybal were attempting to overturn provisions of the settlement

    agreement in Fancher/Roybal I under the pretext of a Public Record Act action, as well as to

invade Plaintiff's privacy, and to take Plaintiff's property (the value of the confidentiality clause of the Fancher/Roybal I agreement) without just compensation.

19.  Subsequent to the filing of Fancher/Roybal II, County, through its agents, pressured  Plaintiff to voluntarily agree to the release of confidential personnel documents without any compensation or consideration as demanded in said lawsuit.  Plaintiff refused.

20.  Plaintiff's position in the Fancher/Roybal II matter prevailed, as no additional confidential documents were released by the court, other than those already illegally released in violation of the settlement agreement in Fancher/Roybal I.  Plaintiff incurred legal fees of approximately $14,000.00 in the successful defense of the Fancher/Roybal I agreement and its terms.

21.  On or about August 28, 2006, Plaintiff, through counsel, presented County with the bill/request for indemnification for the legal services in Fancher/Roybal II matter, pursuant to the indemnification clause of the Fancher/Roybal I agreement and the past practices of County,.  On or about September 13, 2006, County breached the settlement agreement in Fancher/Roybal I by failing to indemnify Plaintiff as required.  Specifically County failed to pay the legal fees and costs incurred by Plaintiff in the approximate $14,000.00 bill as required both by the agreement and promises of Defendants Botelho and Marcus as well as by the past practices of County.  County's actions in failing to honor the requirements of the agreement by failing to indemnify Plaintiff for said legal fees and costs occurred through the direction and control of the individual Defendants named herein and was done in retaliation for the conduct of Plaintiff as described above in Paragraphs 11 and 17, as well as in retaliation for the following conduct of Plaintiff, all of which was conduct undertaken by Plaintiff in his capacity as a private citizen and protected free speech under the First Amendment to the United States Constitution:

A.  Speaking out publicly as a private citizen about matters of public concern, that is, allegations of criminal and other serious misconduct, and breaches of the public trust, of high ranking County government officials such as Defendant De La Cruz and others;

B.  Assisting, in his personal capacity only, in the publication of an online, satirical political commentary (blog) known as "The Hollister Free Press Online;"

8

(hereinafter referred to as the "HFPO"), which was a compilation of opinion, satire and news articles commenting on political events, personalities, and governmental actions, and elected officials in San Benito County, and which criticized and/or satirized the County of San Benito as well as members of its Board of Supervisors, including, but not limited to, the individual defendants named herein,   The HFPO was frequently critical of the statements, actions and associations of the individual Defendants named herein.

   C.  Having reported to the print and electronic media that Defendant Monaco belonged to an organization entitled "Society for the Scientific Study of Sexuality," which organization, among other things, provided a forum for advocates of the legalization of pedophilia;

   D.  Politically opposing Defendant Monaco by, among other things, including Plaintiff having supported an opponent of Defendant Monaco in the June 2006 election for County supervisor, as well as in assisting in the publication of information about Defendants Monaco and De La Cruz in the HFPO, and including Plaintiff having supported the recall effort against Defendant De La Cruz.

  22.  Additionally, County had a long established practice of paying the work related expenses, including legal expenses, of County department heads and officers, including members of the Board of Supervisors, the County Sheriff, the County Clerk, the District Attorney, and the County Auditor.  County's failure to pay the presented claim was a denial of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, as well as a denial of equal protection of the law, under the Fourteenth Amendment of the United States Constitution, as well as a taking of Plaintiff's property (the value of the indemnification clause of the Fancher/Roybal I agreement) without just compensation, in violation of the Fifth Amendment and Fourteenth Amendments of the United States Constitution, in retaliation for Plaintiff's conduct as described in Paragraphs 11, 17, and subparagraphs 21A, 21B, 21C and 21D.

  23.  Separate and distinct from the above breaches of contract and retaliations, on or about March 28, 2006, County, through the actions of Defendants Jaime De La Cruz, Reb Monaco, Anthony Botelho, and Don Marcus, with the assistance of County employees

Susan Thompson and Irma Valencia, engaged in an ultra-vires and de-facto public disciplinary hearing of Plaintiff.  Valencia and Thompson are agents and employees of Defendants and at all times herein were acting in that capacity.  Defendants engaged in said ultra vires and de facto public disciplinary hearing of Plaintiff in retaliation against Plaintiff because Plaintiff had engaged in the conduct described above in Paragraphs 11, 17 and 21, except for the conduct of Plaintiff described in subparagraph 21D, which had not yet occurred.  Moreover, County, through the actions of Defendants De La Cruz, Monaco, Botelho, and Marcus, with the assistance of Susan Thompson and Irma Valencia, has engaged and continues to engage in a practice of conducting personnel actions that affect either county employees,  department heads, and other officials, including Plaintiff, in violation of basic minimal tenets of Constitutional due process, and in violation of County's own policies requiring confidentiality in such matters.  County failed and continues to fail to adequately notify persons, including Plaintiff, subjected to disciplinary or personnel process of the nature of the allegations against them, failed and continues to fail to provide for independent and unbiased investigators to examine and investigate allegations of misconduct, and failed and continues to fail to separate fact-gathering from fact-finding roles.  Additionally, County failed and continues to fail to establish any meaningful guidelines or policies to guide the sound exercise of discretion in deciding personnel or disciplinary matters, and as a result, said actions were and continue to be decided in arbitrary and capricious manner.  Furthermore, County has failed to adopt policies which prevent biased decision makers from participating in the disciplinary or personnel process, and County failed and continues to fail to establish any meaningful procedures for appeal of unfavorable actions or decisions.  Furthermore, County failed and continues to fail to provide for person's accused of misconduct to submit evidence on their behalf during disciplinary or personnel actions.  Furthermore, County has disclosed and continues to routinely disclose confidential personnel matters in violation of its own policy to the contrary.

    24.  Furthermore, County repeatedly subjected Plaintiff to this unconstitutional personnel and/or disciplinary system starting in 2004, in retaliation for Plaintiff engaging in

the conduct described above in Paragraph 11,  and continuing until Plaintiff departed from his employment in San Benito County.  County's actions have the affect of taking without due process the property of person's subjected to the disciplinary/personnel scheme, or infringing upon the liberty interests of such persons, including Plaintiff.  County's conduct in subjecting Plaintiff to this unconstitutional personnel and/or disciplinary system, as it continued until Plaintiff departed from his employment in San Benito County, was, commencing in early 2005, was also undertaken by County in retaliation for the conduct of Plaintiff described above in Paragraph 17.   County's conduct in subjecting Plaintiff to this unconstitutional personnel and/or disciplinary system, as it continued until Plaintiff departed from his employment in San Benito County, was, commencing in early 2006, also undertaken by County in retaliation for the conduct of Plaintiff described above in subparagraphs 21A, 21B, and 21C.  County's conduct in subjecting Plaintiff to this unconstitutional personnel and/or disciplinary system, as it continued until Plaintiff departed from his employment in San Benito County, was, commencing in mid- 2006, was also undertaken by County in retaliation for the conduct of Plaintiff described above in subparagraphs 21D.

25.  County subjected Plaintiff to the de facto, illegal disciplinary process in the Spring of 2006, as described above in Paragraphs 23 and 24, which was calculated to and had the effect of infringing upon Plaintiff's liberty interests and property interests.  This disciplinary process consisted of public accusations public accusations and discussions of professional negligence, or words to that effect, against Plaintiff by Defendants, and further violating of the confidentiality provisions of the agreements in Fancher-Roybal I.  Defendant County failed to conduct any sort of investigation prior to making accusations of professional misconduct, failed to provide Plaintiff of notice of the allegations against him upon which the adverse disciplinary action was being based, failed to provide Plaintiff with the materials upon which such contemplated actions were based, failed to provide Plaintiff with an opportunity to rebut said allegations, failed to provide Plaintiff for an opportunity to appeal any findings, and violated basic tenets of fairness and due process by allowing decision makers who were witnesses against Plaintiff to make fact finding decisions and

11

vote to impose de facto discipline upon Plaintiff. Defendants actions prevented and foreclosed Plaintiff from being able to seek employment in his career of choice as a prosecutor, and in fact has so prevented Plaintiff. Further, Defendants actions as described above in Paragraphs 23 and 24 as well as in this Paragraph 25 constituted a violation of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments; and said actions were undertaken by Defendant in retaliation for Plaintiff having engaged in the conduct described above in Paragraph 11 and in subparagraphs A through F thereof.

26.. During the course of said hearing, County, through the actions of and statements of Defendants De La Cruz, Monaco, Botelho and Marcus, defamed Plaintiff by accusing him of professional negligence, or words to that effect, and by Defendant Botelho wrongfully publicly stating that "employees had to be transferred to a different office because of his (Plaintiff's) conduct" or words to that effect, which Defendant Botelho knew in fact at the time was both false and in specific violation of the confidentiality provisions of the Fancher/Roybal I settlement agreement.

27.. Additionally, Plaintiff is unaware of any other County employee, department head, or officer who has ever been subjected to a similar public and de-facto disciplinary hearing and on information and belief asserts that no other department head has been similarly treated, and as such violated Plaintiff's right to equal protection of the laws. Plaintiff was not furnished with any evidence relied upon by Defendants during the course of said hearing, and was therefore not provided a meaningful opportunity to rebut said evidence. Finally, the hearing by County and breach of the terms of the confidentiality clause in the Fancher/Roybal I matter had the effect of taking the property of Plaintiff without just compensation, ie, the economic value of the confidentiality provision of the Fancher/Roybal I agreement.

28.. The actions at the de-facto disciplinary hearing taken by County and Defendants De La Cruz, Monaco, Botelho and Marcus, were in violation of Plaintiff's right to privacy arising out of the settlement agreement in Fancher/Roybal I, as well as in violation of County policies requiring confidentiality in such matters, as well as an illegal interference with Plaintiff's right to the benefits of the settlement agreement at all of its provisions. The

actions were taken to and did in fact retaliate against Plaintiff as described above, and to inflict severe emotional distress upon him, and were in violation of County's own policies preventing retaliation against persons who cooperate in anti-discrimination matters, and were an infringement of Plaintiff's right to liberty under the Fifth and Fourteenth Amendments of the United States Constitution, in that they were designed to and did in fact interfere with Plaintiff's ability to pursue his chosen profession, and constituted a taking of Plaintiff's property without just compensation.

29. As a result of the continuing harassment and retaliation directed against Plaintiff by Defendants as described above, Plaintiff, in his official capacity, was forced to seek and did obtain a temporary restraining order and later a preliminary injunction in San Benito County Superior Court against the individual Defendants named herein.

30. In addition to the foregoing conduct by defendants, Defendant De La Cruz continued to retaliate against Plaintiff by repeatedly and publicly stating that Plaintiff was mentally ill or words to that effect and demanded that Plaintiff be hospitalized and examined or words to that effect.

31.. Following said hearing, County and Defendants De La Cruz, Monaco, Botelho and Marcus, assisted by their agents Thompson and Valencia, continued to retaliate against Plaintiff by interfering with and attempting to put into place illegal financial and other controls over the District Attorney's Office. Additionally, Valencia was directed to file a baseless complaint with the Attorney General's Office against Plaintiff, a complaint which Valencia did send, later admitting under oath she did not know to be true, or words to that effect. The Attorney General's Office declined to take any action on the complaint.

32.. In addition to the foregoing acts, Defendants De La Cruz, Monaco, Botelho and Marcus, continued to retaliate against Plaintiff by refusing, and by causing other agents and employees of Defendant County to refuse, to protect Plaintiff from repeated harassment from County contract service providers, including, but not limited to, Arthur Cantu ("Cantu"). Cantu would routinely harass Plaintiff and Plaintiff's employees in the District Attorney's Office in and for Defendant County by filing baseless complaints, by engaging in offensive touching of Plaintiff (August 2004), and by scaring Plaintiff's daughter by

bringing a horse that Cantu was riding in a parade in June, 2004, so close to Plaintiff and his daughter during a parade that Plaintiff was extremely fearful for his safety and that of his daughter.  Despite requests by Plaintiff that Defendant County take steps to prevent Cantu from engaging in such conduct, Defendants De La Cruz, Monaco, Botelho and Marcus failed and refused to take any such steps to prevent Cantu from continuing to engage in such conduct. The conduct of Defendants De La Cruz, Monaco, Botelho and Marcus as described above in this Paragraph 32, as it continued until Plaintiff departed from his employment in San Benito County, was, commencing in mid-2004, undertaken by De La Cruz, Monaco, Botelho and Marcus in retaliation for the conduct of Plaintiff described above in Paragraph 11.  The conduct of Defendants De La Cruz, Monaco, Botelho and Marcus as described above in this Paragraph 32, as it continued until Plaintiff departed from his employment in San Benito County, was, commencing in early 2005, undertaken by De La Cruz, Monaco, Botelho and Marcus in retaliation for the conduct of Plaintiff described above in Paragraphs 11 and 17.  The conduct of Defendants De La Cruz, Monaco, Botelho and Marcus as described above in this Paragraph 32, as it continued until Plaintiff departed from his employment in San Benito County, was, commencing in early 2006, undertaken by De La Cruz, Monaco, Botelho and Marcus in retaliation for the conduct of Plaintiff described above in Paragraphs 11 and 17 as well as in subparagraphs 21A, 21B and 21C.  The conduct of Defendants De La Cruz, Monaco, Botelho and Marcus as described above in this Paragraph 32, as it continued until Plaintiff departed from his employment in San Benito County, was, commencing in mid-2006, undertaken by De La Cruz, Monaco, Botelho and Marcus in retaliation for the conduct of Plaintiff described above in Paragraphs 11 and 17 as well as in subparagraphs 21A, 21B, 21C and 21D.

33.  In addition to the foregoing acts, Defendants De La Cruz, Monaco, Botelho and Marcus, continued to retaliate against Plaintiff, because Plaintiff had engaged in the conduct described above in Paragraph 11, by refusing to protect Plaintiff from threats and other dangerous actions, said threats being encouraged by the conduct and statements of Jaime De La Cruz and his agents, resulting in the killing of Plaintiff's dogs in July, 2004.

14

34.. As a result of the conduct of Defendants as hereinabove alleged, Plaintiff's health was seriously impacted, resulting in hypertension with resulting medical complications, including an impact on Plaintiff's cardiac health.

35. The actions described above were taken by Defendants and each of them with malice and with the intent to vex, annoy and harass Plaintiff, to inflict severe emotional distress and physical harm, and were designed and calculated to take Plaintiff's property without just compensation, and to punish and retaliate against Plaintiff for Plaintiff having engaged in the conduct described above in Paragraph 11 and in subparagraphs A through F thereof. Said conduct by Defendants had the effect of infringing upon Plaintiff's liberty without due process of law. Defendants' actions also negligently inflicted severe emotional distress upon Plaintiff.

36. As a direct and proximate result of the actions taken by County and Defendants De La Cruz, Monaco, Botelho, and Marcus, Plaintiff has suffered economic harm by the loss of the value of the Fancher/Roybal I settlement agreement , wrongfully been forced to incur an approximate $14,000.00 debt in the Fancher/Roybal II matter, had his liberty infringed without due process of law, and been subjected to severe and pervasive emotional distress, with resulting physical harm to Plaintiff's cardio-vascular system, been denied equal protection of the laws, been denied due process of law, suffered a breach of the contract of the Fancher/Roybal I matter, and had his privacy wrongfully invaded. Additionally, Defendants actions created a hostile work environment for Plaintiff with the resulting severe physical and emotional harm.

37. . Pursuant to 42 U.S.C. Section 1988, plaintiff is entitled to reasonable attorney's fees.

38. On or about September 22, 2006, Plaintiff submitted an administrative claim regarding the matters in this complaint to County pursuant to State Law. Said claim was denied by County on November 13, 2006.

///

///

## SECOND CAUSE OF ACTION

39.  As part of his Second Cause of Action, Plaintiff incorporated Paragraphs 1 through 38 of the First Cause of Action as though said Paragraphs were set forth herein in full by this reference.

40..  In January, 2005, Plaintiff and County, through Defendants Botelho and Marcus, entered into an agreement whereby County agreed to defend and indemnify Plaintiff for the litigation costs arising out of future legal actions anticipated to be brought by employees Fancher and Roybal, and to maintain the confidentiality provisions of the settlement agreement in the Fancher/Roybal I matter, and its terms.  The facts and circumstances surrounding said agreement are set forth in more detail in Paragraph 12 above.

41..  Plaintiff agreed to the written settlement agreement resolving the Fancher/Roybal I matt/er and otherwise performed all covenants, conditions and other acts to be performed by him under the terms of the said contract.

42.  Defendants breached the contract by doing the things described above in Paragraphs 11 through 35 above.

43.  As a result of said breach of contract by Defendants, Plaintiff has been damaged as alleged above in Paragraphs 28 and 36.

WHEREFORE, Plaintiff prays relief as hereinafter set forth.

## THIRD CAUSE OF ACTION

44.  Plaintiff, as part of his Third Cause of Action, hereby incorporates Paragraphs 1 through 43 of the First and Second Causes of Action.

45.  The conduct of Defendants, and each of them, was outrageous and unprivileged, amounting to a willful, intentional and reckless disregard for the rights of Plaintiff with the probability of causing emotional distress to Plaintiff and was intentional and malicious, done for the purpose of causing plaintiffs to suffer anxiety, mental anguish and severe emotional and physical distress.

46.  The conduct set forth above directly and proximately caused severed and protracted emotional distress to Plaintiff and still causes Plaintiff to suffer, and will continue to cause Plaintiff to suffer in the future.

47.  As a direct and proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff has suffered physical, mental and psychological pain and anguish. As a further result thereof, by reason of his injuries, Plaintiff has incurred expenses and will necessarily incur additional like expenses for an indefinite period of time in the future; the exact amount of such expenses will be stated according to proof, pursuant to California Code of Civil Procedure Section 425.10.

48.  As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff was hurt and injured in his health, strength and activity, sustaining injury to his body and shock and injury to his nervous system and person, all of which said injuries have caused and continue to cause Plaintiff great physical, mental and nervous pain and suffering. Plaintiff is informed and believes, and thereupon alleges, that said injuries will result in some permanent disability to him, all to his general damage, in an amount according to proof pursuant to California Code of Civil Procedure Section 425.10.

49  As further direct and proximate result of the conduct of Defendants, and each of them, Plaintiff was caused to, and did suffer, severe emotional distress and anxiety, causing additional injuries according to proof, pursuant to California Code of Civil Procedure Section 425.10.

50..  All of the foregoing acts by Defendants, and each of them, constituted an utter wanton, conscious and careless disregard of the rights of Plaintiff and, as such conduct constituted oppression, fraud or malice under California Civil Code Section 3294, Plaintiff requests punitive and exemplary damages as set forth hereinafter; inherent in Plaintiff's right

17

to redress by exemplary damages are the following purposes: that said Defendants, and each of them, be deterred from continuing their conscious and despicable disregard for the rights of Plaintiffs and persons similarly situated; that said Defendants, and each of them, be liable for such punitive measures and in such punitive amounts as to constitute an example which would deter them, as well as similar persons and entities in the same industries, from like wanton, malicious, conscious and despicable disregard for the rights of the public; and that in order for the purposes to be fulfilled of the right to redress by exemplary damages, the punitive and exemplary damages should be in proportion to the assets and income of said Defendants.

51.. As a further proximate result of the said negligent, careless, wanton and reckless conduct of the defendant, plaintiff has suffered general damages.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

On account of all Causes of Action,

1.  The damages in the sum of approximately $14,000.00, consisting of the amount which Plaintiff incurred for attorney's fees and costs and the successful defense of the Fancher/Roybal I agreement and its terms;

2.  General damages of not less than $1,000,000.00;

3.  Damages for Plaintiff's mental anguish and emotional distress, in an amount within jurisdiction of this Court, according to proof;

4.  For costs of suit herein incurred; and

5.  For such other and further relief as the Court deems proper.

On account of the First and Second Causes of Action,

1.  For attorney's fees, according to proof;

On account of the Third Cause of Action,

1.  For punitive damages against all Defendants in the sum of not less than $5,000,0J00.00.

Dated: July 24, 2009

MAYO & MAYO
Attorneys for Plaintiff
John Sarsfield

By: _____
Terence O. Mayo

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: July 24, 2009

MAYO & MAYO
Attorneys for Plaintiff
John Sarsfield

By: _____
Terence O. Mayo