**E-Filed 5/12/2010**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN J. SARSFIELD,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>COUNTY OF SAN BENITO, JAMIE DE LA CRUZ, in his official capacity, REB MONACO, in his official capacity, ANTHONY BOTELHO, in his official capacity, DON MARCU, in his official capacity, and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case Number C 07-2528 JF<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT |

　　　　Defendants County of San Benito ("the County"), Jamie De la Cruz ("De la Cruz"), Reb Monaco ("Monaco"), Anthony Botelho ("Botelho"), and Don Marcus ("Marcus") (collectively "Defendants") move for summary judgment as to all three claims asserted in Plaintiff's Fourth Amended Complaint ("FAC"). Plaintiff opposes the motion. The Court heard oral argument on April 16, 2010. For the reasons set forth below, the motion will be granted in part and denied in part.

---

　　[1] This disposition is not designated for publication and may not be cited.

# I. FACTUAL BACKGROUND

## A. Fancher/Roybal I and II

From January 2003 until January 2007, Plaintiff John J. Sarsfield ("Plaintiff") served as the County's elected District Attorney. During the same period, Defendants De la Cruz, Monaco, Botelho, and Marcus served as members of the County's Board of Supervisors ("BOS"). In the spring of 2004, County employees Katie Fancher ("Fancher") and Julia Roybal ("Roybal") filed a complaint against the County and Plaintiff in the San Benito Superior Court (San Benito Case Number CV-04-00117) ("Fancher/Roybal I"). Fancher and Roybal alleged that Plaintiff, as their supervisor, engaged in sexual harassment and gender discrimination against them. In October 2004, the parties to Fancher/Roybal I participated in efforts to resolve the case with the assistance of JAMS mediator Michael J. Loeb. As part of these efforts, the parties and Loeb entered into a written confidentiality agreement with respect to efforts by the mediation (the "mediation agreement"). (*See* Mayo Decl. Ex. A.)

In January 2005, the County and Plaintiff entered into a confidential settlement agreement with Fancher and Roybal (the "settlement agreement"). (*See* Mayo Decl. Ex. B.) As part of the settlement, the County agreed "to defend and indemnify [Plaintiff] in the manner and subject to the requirements of the California Government Code concerning any legal claims or causes of action asserted by the parties to this AGREEMENT." (*Id.* at ¶ 27.) The parties also agreed that the settlement agreement "is deemed to have been drafted jointly by the parties. Any uncertainty or ambiguity shall not be construed for or against any party based upon attribution of drafting to any party." (*Id.* at ¶ 25.)

On March 11, 2005, Fancher and Roybal filed a petition for writ of mandate in the San Benito Superior Court seeking release pursuant to the California Public Records Act of "[a]ny and all documents relating to the investigation of a sexual harassment complaint made by Katie Fancher and Julie Roybal against [Plaintiff]" and "[t]he investigative report prepared by Investigator Mayne concerning complaints made by Katie Fancher and Julie Roybal against [Plaintiff]." (Barber Decl. Ex. S ("Fancher/Roybal II") ¶ 5; CU-05-0042.) The County was named as the respondent in Fancher/Roybal II. Although he was not named as a party, Plaintiff

filed an *amicus curiae* brief opposing the petition. The petition was denied with respect to all information that had not been made public previously.

Following the resolution of Fancher/Roybal II, Plaintiff twice sought indemnification from the County for the approximately $14,000 in legal fees he incurred as a result of his participation in the writ proceedings. Consistent with the position it communicated to Plaintiff shortly after the filing of Fancher/Roybal II, the BOS denied Plaintiff's requests because he was not a party to that action. (*See* Barber Decl. Ex. T. at Ex. 4C (March 23, 2005 letter from County Counsel Karen R. Forcum to Plaintiff's counsel in Fancher/Roybal I-II stating that "[s]ince the County of San Benito is the named respondent on the petition for writ of mandate, and Mr. Sarsfield is not a party to the action, the Board denied the request for legal fees to be incurred in any opposition filed by Mr. Sarsfield"); *id.* at Ex. 4D (September 13, 2006 letter from Deputy County Counsel Terra L. Chaffee to Plaintiff's counsel in Fancher/Roybal I-II stating that the issue of Plaintiff's legal fees "was presented to the Board of Supervisors twice in March 2005 and the Board denied the request for legal fees both times").)

**B.    Leak of Information Regarding the Settlement**

Plaintiff identifies no specific evidence regarding the alleged leak of the details of the settlement. He relies entirely upon the allegations of the FAC and the text of the mediation agreement itself to support his assertion that Defendant Monaco "disclosed to the press confidential topics of discussion held during the mediation" of Fancher/Raybal I. (Pl.'s Opp'n 2.)

**C.    Plaintiff's Purported Speech Activities**

Sometime prior to June 2004, Plaintiff's office initiated an investigation into the alleged criminal conduct of De la Cruz. In the spring and summer of 2004, Plaintiff reported to the FBI and the California Attorney General's Office that an individual named J. Michael Pekin had communicated a threat to expose the alleged affair between Plaintiff and another County employee if Plaintiff did not end the investigation of De la Cruz. (Barber Decl. Ex. A (Sarsfield Depo.) at 268-270; *see also* Barber Decl. Ex. I &J.) Plaintiff believed that Pekin represented De la Cruz in the matter under investigation. (Barber Decl. Ex. A. at 270:11-23.)

3

In February and March of 2005, Plaintiff and an employee in Plaintiff's office wrote a series of memoranda to County Counsel Karen Forcum and acting County Administrative Officer Susan Lyons. The memoranda contained allegations that several individuals, including De la Cruz, his attorney, Arthur Cantu, Fancher, and Roybal, had harassed and were continuing to harass Plaintiff and employees in his office. (S*ee* Barber Decl. Ex. L, M, N, & O.) All of these memoranda were written on District Attorney letterhead, and the memorandum purportedly sent from the employee in the office indicates that it was written "thru" Plaintiff. (*See id.*) Plaintiff testified that he helped the employee write the memorandum and that he typed it at the District Attorney's Office. (Barber Decl. Ex. A at 842:24-843:18.)

In 2005 and 2006, Plaintiff contributed to the publication of an online satirical political blog called the "Hollister Free Press Online" ("HFPO"). The HFPO was founded by Paul Grannis, a local columnist, with the assistance of Brian Conroy. (Barber Decl. Ex. B at 26:9-24.) In January 2006, Plaintiff reported to the HFPO that Defendant Monaco belonged to an organization entitled the "Society for the Scientific Study of Sexuality" ("SSSS") and that the organization provided a forum for individuals who advocate for the legalization of pedophilia. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("MSJ") 2.) This information was reported on the HFPO, though Plaintiff was not identified on the blog as the author of the post nor at any time as a staff member of the HFPO. (Barber Decl. Ex. B at 57:13-21.)

Following the HFPO post about Monaco, Frances Kate Woods, a local newspaper reporter, approached Monaco about the post. Woods told Monaco "words to the effect that [she] intended to do a story about his membership in SSSS, and that [she] wanted this [sic] comments. [She] also told Mr. Monaco words to the effect that unlike Sarsfield and Conroy and their HFPO blog, [she] would try to be fair to him." (Woods Decl. ¶ 4.) According to Woods, "Monaco was visibly angry during [their] conversation and refused to discuss the matter." (*Id.* at ¶ 5.)

On March 15, 2006, the Hollister Free Lance, another local newspaper, repeated the statements relating to the SSSS and Monaco's membership in the group that had been reported earlier on the HFPO. Brett Rowland, *DA Takes on County Supervisors*, Hollister Free Lance, March 15, 2006, available at http://www.hollisterfreelance.com/printer/article.asp?c =181343.

4

1 The newspaper reported that the information, had been included in a letter Plaintiff sent to BOS
2 Chair Pat Loe. *Id.*

**D.     The March 28, 2006, BOS Meeting**

On March 28, 2006, the BOS held a regularly scheduled public meeting. Two matters on the agenda at the meeting related to the District Attorney's Office. The first, agenda item number twenty-one, involved Plaintiff's request to augment the budget for his office by $350,000. After a presentation by Susan Thompson of the County Administrator's Office, discussion among the Board members, and comments from the audience, including Plaintiff, De la Cruz moved to approve a series of resolutions regarding the District Attorney's Office, including one increasing the Board's control over budget management. (*See* Mayo Decl. at Ex. 7 p.7-8.) Botelho seconded the motion, which passed on a four to one vote. (*Id.*)

The second, agenda item number twenty-two, involved consideration of a vote of no confidence in Plaintiff as District Attorney and a request that the California Attorney General investigate the District Attorney's Office. (Mayo Decl. Ex. D at 71.) After hearing from members of the community and from Plaintiff, Botelho read a prepared statement supporting the no confidence vote. Among the reasons cited by Botelho as the basis for his position were Plaintiff's purported "disregard of the budget not only of the D.A.'s office, but the entire county," "placing the county in jeopardy with court decisions causing further litigation," "law enforcement priorities," and "violations of the public trust." (*Id.* at 90-93.) Apparently referring to Fancher/Roybal I and II, Botelho said:

> It must not be forgotten that–either that Mr. Sarsfield embroiled this county in a hostile work environment lawsuit of his department in which that lawsuit cost the good taxpayers of San Benito County a couple $100,000 [sic] as well. The long-term county employees have been transferred out of his office and now perform their duties within the administration offices of the county.

(*Id.* at 90-91.) Botelho closed his statement by asking Plaintiff to resign.

Following Botelho's comments, Marcus also spoke in favor of the vote of no confidence, saying in part:

> I don't have anything prepared here.
> How do I prepare? Because overwhelmingly through e-mails, through conversations, through phone calls, something has to be done about this. [sic]

> [d]istrict attorney.
> Is it fair that you disparage–and I don't have the right wording for humiliating a supervisor with accusations pertinent to his career. What does that have possibly to do with solving county problems? And you cannot deny that happened.

(*Id.* at 96.) Then De la Cruz spoke. He stated that his approach was "from a family angle" and that his wife was "afraid that the district attorney will use the taxpayers to go after people like me and other members of the community." (*Id.* at 97.) He concluded by saying that he felt that "the time has come that we need to send a strong message to Mr. Sarsfield that enough is enough and that we go to the attorney general and have him evaluated mentally" because Plaintiff is "not capable to handle the job as a district attorney." (*Id.*)

Finally, Monaco expressed his views about the no confidence vote. He began by stating that he:

> do[es] not take this lightly when an elected body is forced to call into question the activities of another elected body. And in our system of checks and balances in government, ultimately that's–we are somewhat hamstrung.
> But when the citizens of the county are clamoring for explanations of what is happening in our district attorney's office, we as the elected overseers of the county have a responsibility to respond to them with all the legal authority we have.

(*Id.* at 98.) Monaco then moved for a final vote of no confidence in Plaintiff and to have the chairperson appoint two board members to take steps to request a formal investigation by the California Attorney General's Office into "the condition of public business entrusted to the district attorney including expenditure of public funds in excess of budget authority, and negligence in concentrating on his primary duty to prosecute criminal offenses." (*Id.* at 99.) Monaco's motion passed by a vote of four to one, with all of the Defendants voting in favor. The California Attorney General subsequently declined to undertake an investigation. (*See, e.g.*, Barber Decl. Ex. A at 645:19-646:12.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed the initial complaint in this action on May 11, 2007, alleging seven claims against Defendants. Over the past three years, the Court has granted one motion to dismiss, denied another in part with leave to amend, and twice more granted Plaintiff's own request to amend his complaint. On March 5, 2010, Plaintiff filed the operative Fourth Amended

6

Complaint, alleging three claims: retaliation resulting from Plaintiff's exercise of his First Amendment rights in violation of 42 U.S.C. § 1983; breach of contract; and intentional affliction of emotional distress. Plaintiff seeks $14,000 in attorney's fees pursuant to the settlement agreement, general damages in excess of $1 million, unspecified damages for emotional distress, punitive damages, costs, and statutory attorney's fees.

On March 12, 2010, Defendants jointly filed the instant motion.

### III.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that might affect the outcome of the case under the governing law. *Id.* at 248. There is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

The evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Summary judgment thus is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve the material issue in its favor. *Liberty Lobby*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

7
Case No. C 07-2528 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC3)

## III. DISCUSSION

### A. Section 1983

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment right to free speech. Specifically, Plaintiff alleges that Defendants retaliated against him for: his reports to the FBI, California Attorney General, and Department of Justice concerning De la Cruz's alleged criminal conduct (FAC ¶ 11); forwarding County employee workplace complaints against De la Cruz to the County human resources department (FAC ¶ 17); speaking out publicly regarding "allegations of criminal and other serious misconduct, and breaches of the public trust, of high ranking County government officials such as Defendant De La Cruz and others" (FAC ¶ 21); assisting in the publication of the HFPO (*id.*); reporting that Monaco belonged to the SSSS and that the organization provided a forum for advocates of the legalization of pedophilia (*id.*); and politically opposing Monaco and De la Cruz (*id.*).

"To establish a prima facie case of First Amendment retaliation, a government *employee* must show that (1) she engaged in protected speech; (2) the defendants took an adverse employment action against her; and (3) her speech was a substantial or motivating factor for the adverse employment action." *Nichols v. Dancer*, 567 F.3d 423, 426 (9th Cir. 2009) (citing *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir.2004) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003))) (internal quotations omitted) (emphasis added).

#### 1. Statute of Limitations

Plaintiff alleges a host of retaliatory actions, including breaches of the confidentiality provisions of the mediation and settlement agreements, the Board's actions at its meeting on March 28, 2006, and the Board's refusal to indemnify him for his costs related to Fancher/Roybal II. As a preliminary matter, Defendants contend that any claims based on retaliation that occurred prior to May 11, 2005, are time-barred. As the Ninth Circuit has held, "Claims under § 1983 are subject to the state statute of limitations for personal injury claims. In California, that state rule is two years . . . ." *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 n.3 (9th Cir. 2009). As noted above, Plaintiff filed his initial complaint in this action in May 2007.

Plaintiff asserts that the relevant date for statute of limitations purposes is the date he filed his administrative claim with the County. Plaintiff filed that claim in September 2006. However, Plaintiff provides no authority–and the Court is aware of none– for the proposition that the Court looks to the date of the filing of an administrative claim in determining whether a Section 1983 claim is time-barred.

Plaintiff argues that even if claims based on some allegations of retaliation are barred, the FAC alleges a number of retaliatory actions occurring in 2006 that would not be barred in any event. These alleged retaliatory actions relate to: (1) the calling of, and Defendants' actions during, the March 2006 BOS meeting; and (2) the denial of Plaintiff's request for reimbursement for his legal fees. Defendants concede that claims based on the former are not time-barred. As for claims based on the latter, Defendants contend that they are barred because the County originally refused to reimburse Plaintiff in March 2005, more than two years before Plaintiff filed the instant action. Plaintiff bases his argument on the fact that he made a subsequent request for payment of his attorney's fees from Fancher/Roybal II in a letter sent in August 2006.

Defendants' position is supported by the evidence. The County twice informed Plaintiff by letter in March 2005 that the Board had denied his request for legal fees in connection with his *amicus curiae* brief in Fancher/Roybal II. (*See* Barber Decl. Ex. T at Ex.4C (March 23, 2005 letter to Plaintiff's counsel from County Counsel Karen R. Forcum).) The September 2006 letter explicitly reiterated the statements in the 2005 letters with respect to that denial and the denial of additional fees requested relating to Fancher/Roybal I. (*See* Barber Decl. Ex. T at Ex.4D (September 13, 2006 letter to Plaintiff's counsel from Deputy County Counsel Terra L. Chaffee stating in part that "[t]he County's position on your bills for this matter has always remained the same as was stated to you in former County Counsel Karen Forcum's letters dated March 10, 2005 and March 23, 2005").) Plaintiff cannot restart the clock on the statute of limitations merely by sending a letter requesting the same reimbursement that was previously denied and claiming that the second denial forms the basis of a new and different claim for retaliation. Accordingly, the only allegations of retaliatory acts that are not barred relate to Defendants'

holding of and actions during the March 28, 2006, BOS meeting.[2]

### 2. Adverse *Employment* Action

"To succeed on a wrongful-retaliation claim, a plaintiff must show, in the first instance, that he has suffered an adverse *employment* action. Only then do we address whether the statement which motivated the retaliation is one of public concern and whether the interests of the employee outweigh the state's interest in maintaining efficient public services." *Nunez v. City of Los Angeles*, 147 F.3d 867, 874 (9th Cir. 1998). Defendants contend that as a matter of law the BOS could not have, and did not, take any adverse *employment* action against Plaintiff because he was not a County employee. Plaintiff appears to agree, asserting in his opposition papers that he "is an elected official, not an employee. An employer has rights to evaluate an employee's performance. This Court has already determined on prior motions that Plaintiff, as an elected official, is not an employee of either Defendant County or the BOS . . . ." (Pl.'s Opp'n to MSJ 14.)

### B. Due Process Allegations

Plaintiff alleges that the March 28, 2006, BOS meeting was an "ultra-vires and de-facto disciplinary hearing of Plaintiff," consisting of "public accusations and discussions of professional negligence" held in retaliation for his protected speech activities and that he was not notified of the allegations against him in violation of due process. (FAC ¶¶ 23-25.) It is unclear whether Plaintiff intended to allege these facts in support of a claim separate and distinct from his Section 1983 claim for violation of his First Amendment rights.

Irrespective of this ambiguity, Defendants argue that the meeting was a regularly scheduled BOS meeting open to the public, that the matters related to Plaintiff were only two of many considered at the meeting, and that Plaintiff received not only received notice of the hearing but also appeared and spoke on his own behalf. Although Plaintiff contends that the March 28 meeting was a "special BOS meeting to discuss Plaintiff's performance as D.A.," he

---

[2] Pursuant to his breach of contract claim discussed below, Plaintiff may seek indemnification, which is subject to a longer limitations period.

points to no record evidence supporting that claim. Plaintiff acknowledges that the agenda was released several days prior to the hearing, but he argues that this was inadequate notice concerning the no confidence vote and that he did not have an adequate opportunity to prepare a response to the accusations made by Defendants at the meeting. He relies upon the decision of the California Court of Appeal in *Lubey v. City and County of San Francisco*, 98 Cal. App. 3d 340 (Cal. Ct. App. 1978). In that case, the court held that a probationary employee whose termination or dismissal is "based on charges of misconduct which 'stigmatize' his reputation, or 'seriously impair' his opportunity to earn a living, or which 'might seriously damage his standing or associations in his community'" is entitled to "an opportunity to refute the charge [and] to clear his name" under the Fourteenth Amendment. 98 Cal. App. 3d at 346 (internal citations and quotations omitted).

As argued by Defendants, *Lubey* is of little relevance. Unlike the terminated probationary police officers in that case, Plaintiff, who concedes he was not an employee of the County of the BOS, was not deprived of any liberty interest by the no confidence vote or by the Board's request that the Attorney General conduct an investigation. Moreover, unlike the terminated probationary police officers, Plaintiff was aware of the meeting agenda several days prior to the meeting and was given a full opportunity to be heard prior to the vote. The plaintiffs in *Lubey* were given only a few hours notice, and their termination notices had been signed before they had the opportunity to be heard. *Lubey*, 98 Cal. App. 3d at 344. Accordingly, treating Plaintiff's 1983 claim as a distinct Due Process claim that does not require proof of an adverse employment action, Plaintiff has failed to demonstrate a triable issue of fact as to that claim.

C.     **Breach of Contract**

Plaintiff alleges that Defendants breached the settlement agreement by failing to uphold the confidentiality provisions of the agreement and by refusing to indemnify him for the legal fees he incurred as a result of participating in Fancher/Roybal II. Plaintiff also alleges that Defendants breached the mediation agreement by Monaco's release of confidential information. Defendants contend that no breach occurred.

### 1. Confidentiality

#### a. Alleged Breach of Mediation Agreement

Plaintiff alleges that Monaco breached the confidentiality of the mediation agreement by releasing information related to the negotiations to the local media "on or about" November 2004. (FAC ¶ 11.) Plaintiff alleges that Monaco's actions "constitute a taking of Plaintiff's property, i.e., the value of the confidentiality agreement, without compensation and in retaliation" for Plaintiff's exercise of his First Amendment rights in reporting alleged criminal conduct by De la Cruz to the FBI, California Attorney General's Office and Department of Justice. (*Id.*) Plaintiff alleges further that he made these reports in his "individual capacity as a citizen" and not as part of his duties as the County's District Attorney. (*Id.*)

Defendants contend that there is no evidence in the record tending to show that Monaco breached the mediation agreement by disclosing any confidential statement. They also argue that Paragraph 21 of the settlement agreement provided that the latter agreement superseded and rendered null and void the mediation agreement. (*See* Mayo Decl. Ex. B ¶ 21 ("This AGREEMENT shall supersede, and render null and void any and all prior agreements between the parties hereto, concerning the subject matter hereof.").) Plaintiff fails to cite to any evidence in the record supporting his allegations against Monaco with respect to unauthorized disclosures. Instead, Plaintiff makes conclusory statements and repeats allegations made in the FAC. (*See* Pl.'s Opp'n to MSJ 2 ("In retaliation, [Monaco] . . . disclosed to the press confidential topics of discussion held during the mediation of [Fancher/Roybal I]." (citing FAC, 5:4-21 and Mayo Decl. Ex. A (mediation agreement))); Pl.'s Opp'n to MSJ 9 ("Monaco's disclosure of what happened during mediation violated the confidentiality provisions of the mediation agreement reached before mediation took place at JAMS.").)

In his untimely filed "Sur Reply Opposition," Plaintiff points to a newspaper article from December 2004 featuring statements attributed to Monaco regarding terms of the settlement discussed during the mediation and excerpts from Monaco's deposition in which he admits making those statements to a reporter. Even if the Court were to deny Defendants' motion to strike this evidence and reject Defendants' argument that the settlement agreement rendered the

mediation agreement null and void, Plaintiff's claim fails as a matter of law. Plaintiff fails to plead, let alone show evidence of, cognizable damages he suffered as a result of Monaco's 2004 disclosures. *See, e.g.*, *Lortz v. Connell,* 273 Cal. App. 2d 286, 290 (Cal. Ct. App. 1969) (holding that damage to the plaintiff resulting from the defendants' breach is one of the "essential elements to be pleaded in an action for breach of contract"); *see also* FAC ¶¶ 28, 36 51 (damages allegations).

### b. Alleged Breach of Settlement Agreement

Paragraph 14 of the settlement agreement provided that:

> FANCHER and ROYBAL, SARSFIELD and the COUNTY understand and agree that this agreement and its terms shall remain confidential, but that this agreement is subject to disclosure pursuant to subpoena, a request for public records, a signed waiver from FANCHER and ROYBAL, and SARSFIELD, or as otherwise required by law or court order.

(Barber Decl. Ex. R at 5.) Plaintiff alleges that De la Cruz and Botelho breached this provision of the agreement.

### i. De la Cruz's Alleged Breach

Plaintiff alleges that soon after the settlement agreement was signed in January 2005, unnamed "County employees, or agents of County employees, in retaliation for" Plaintiff's reports alleging criminal activity by De la Cruz, "breached the confidentiality terms of the [settlement] agreement in violation of County rules, regulations and practices, by releasing to the local media copies of confidential documents disclosed during the mediation talks in October 2004 pursuant to the . . . mediation agreement." (FAC ¶ 14.)

Plaintiff further alleges that "[c]ontemporaneously to and following" the March 11, 2005, filing of Fancher/Roybal II, De la Cruz "acting on behalf of the County, either personally or through his agents, and also acting in his individual capacity as a private person who was not personally bound by" the settlement agreement, "began publicly discussing, publishing, and assisting to be published, details of the confidential settlement agreement." (FAC ¶ 17.) Plaintiff alleges that De la Cruz's actions "breach[ed] the settlement agreement/contract and invad[ed] Plaintiff's right to privacy and t[ook] from Plaintiff without just cause, due process, or fair compensation the value of Plaintiff's property." (*Id.*) Plaintiff alleges that De la Cruz acted in

retaliation for Plaintiff's reports of his alleged criminal conduct and because Plaintiff forwarded workplace harassment complaints against De la Cruz to the County.

Defendants observe correctly that Plaintiff's allegations with respect to De la Cruz are unsupported by any evidence in the record. Indeed, there is no evidence that De la Cruz ever disclosed any confidential information. Plaintiff himself testified at the deposition that De la Cruz "never [disclosed any confidential information] in my presence, so I don't have firsthand knowledge that he [was] doing it." (Barber Decl. Ex. A at 832:18-24, 833:1-10.)

### ii.    Botelho's Alleged Breach

Plaintiff claims that Botelho breached the confidentiality provision of the settlement agreement during the BOS meeting on March 28, 2006, by "wrongfully publicly stating that 'employees had to be transferred to a different office because of his (Plaintiff's) conduct' or words to that effect." (FAC ¶ 26.) The actual words Botelho said that are relevant to Plaintiff's allegation are the following:

> It must not be forgotten that–either that Mr. Sarsfield embroiled this county in a hostile work environment lawsuit of his department in which that lawsuit cost the good taxpayers of San Benito County a couple $100,000 [sic] as well. The long-term county employees have been transferred out of his office and now perform their duties within the administration offices of the county.

(*Id.* at 90-91.)

Defendants argue that Botelho's statements did not breach the settlement agreement because they did not reveal any confidential information. Plaintiff concedes that "[t]he fact of the reassignment [of Fancher and Roybal] is not confidential." (Pl.'s Opp'n to MSJ 9.) However, he contends that:

> [the fact] that [reassignment] was required by the settlement is certainly confidential. Botelho's comments at the 3/26 BOS meeting linked Fancher and Roybal's complaints against Sarsfield as set forth in the complaint in Fancher Roybal I to their reassignment. This is particularly true because Botelho stated that 'we had to move those two out of the D.A.'s office'[3] indicates that there was legal compulsion to do so under the settlement agreement.

---

[3] The source of this quoted language is unclear, as it does not appear in the transcript from the March 28 BOS meeting and Plaintiff does not provide a citation.

(*Id.*)  Defendants point out that Botelho's statement "never referenced Roybal's and Fancher's name[s], mention [sic] the settlement, or the written settlement agreement, let alone state [sic] that the settlement agreement required that Roybal/Fracher be reassigned to a different office." (Defs.' MSJ Reply 5.)[4]

To find that Botelho's statements breached the confidentiality provision, the Court would have to accept both Plaintiff's subjective interpretation of the statements and possess a nuanced understanding of what other information had been made public regarding the settlement. Plaintiff fails to identify evidence in the record that would provide that type of context. Moreover, as with Plaintiff's claim based on Monaco's alleged disclosures, Plaintiff fails to point to any evidence in the record supporting an inference that he suffered legally cognizable damages as a result of Botelho's statements. (*See* FAC ¶¶ 28, 36 51 (damages allegations).)

**2.  Indemnification**

Paragraph 27 of the settlement agreement provides that:

> The COUNTY agrees to defend and indemnify the District Attorney in the manner and subject to the requirements of the California Government Code concerning any legal claims or causes of action asserted by the parties to this AGREEMENT.

(Barber Decl. Ex. R. 9.)  Plaintiff alleges that Defendants breached this provision by refusing to indemnify him for legal fees he expended participating in Fancher/Roybal II.

Defendants argue that Plaintiff's claim fails for four separate reasons.

**a.  Individual or Official Capacity**

Defendants argue that Plaintiff entered into the settlement agreement in his official capacity and therefore has no rights under the contract as an individual.  Defendants point to the fact that Plaintiff signed the agreement as "District Attorney" and that Paragraph 27 creates a duty to indemnify and defend "the District Attorney" and not Plaintiff as an individual.

Plaintiff contends that he was named as a defendant in Fancher/Roybal I in his individual

---

[4]Defendants also argue that Plaintiff admitted at his deposition that the terms of the agreement were public knowledge as of December 2004, but none of the deposition excerpts they refer to demonstrate that the reassignment provision was among the terms of the settlement made public.  (*See* Barber Decl. Ex. A at 800:15-801:23.)

capacity and that, as a result, "he had to have signed the settlement agreement as an individual as well. Otherwise, he would still have liability personally to Fancher and Roybal with respect to the claims being settled through the settlement agreement in Fancher/Roybal I." (Pl.'s Opp'n 10.)

Review of the complaint in Fancher/Roybal I supports the conclusion that Plaintiff was sued in his individual rather than official capacity. (*See* Mayo Decl. Ex. C.) Accordingly, as the settlement agreement purports to resolve the claims asserted in that complaint against all parties, Plaintiff was a party to the settlement agreement in his individual capacity with the same rights as the other parties. The agreement uses the designations "DISTRICT ATTORNEY" and "SARSFIELD" interchangeably. (*Cf.* Barber Decl. Ex. R. ¶ 14, with *id.* ¶ 27.) As the Court noted at oral argument, had Plaintiff been sued only in his official capacity, a separate indemnification provision would have been unnecessary.

### b.     Claims in Fancher/Roybal II

Defendants also argue that Fancher/Roybal II was not asserted against Plaintiff at all, that the claim was brought against the County alone, and that Plaintiff's involvement as *amicus curiae* was entirely voluntary. Plaintiff contends that the language of the indemnification provision is broader than Defendants imply because it covers "any legal claims or cause of action asserted by the parties to this Agreement." Plaintiff maintains that because Fancher/Roybal II was brought by Fancher and Roybal, who obviously were parties to the agreement, and because it affected his right to confidentiality under the agreement, he is entitled to indemnification.[5] In their reply papers, Defendants dispute Plaintiff's contention that Fancher/Roybal II involved disclosure of the terms of the settlement agreement. They point out that the writ proceeding sought public disclosure under California law of the County's mediation brief and

---

[5] Plaintiff also argues that if the Court finds the language ambiguous, it should construe the provision against the County because the County drafted the settlement agreement. However, as Defendants point out, Paragraph 25 of the agreement directly contradicts this position by providing that the agreement "is deemed to have been drafted jointly by the parties. Any uncertainty or ambiguity shall not be construed for or against any party based upon attribution of drafting to any party."

investigation report. They argue that "[t]here was no claim against Sarsfield and no claim relating to enforcement or interpretation of the settlement agreement." (Defs.' MSJ Reply 2.)

As to this issue, the Court agrees with Plaintiff. While Plaintiff was not named as a defendant in Fancher/Roybal II, the indemnification provision is not limited to actions *against* him but refers to claims or causes of action "*asserted by* the parties" to the agreement. Under an indemnity provision more narrowly or artfully written, Plaintiff might not have a claim. However, under the provision at issue, Plaintiff's claim survives summary judgment where the second suit was brought by the plaintiffs in the first action and where the second suit potentially affected Plaintiff's rights under the agreement.

    c.  **County's Representation of Plaintiff's Interests**

Defendants next argue that the County had no duty to indemnify Plaintiff with respect to Fancher/Roybal II because Plaintiff "voluntarily interjected himself into a writ proceeding that the County was already opposing in all respects . . . by hiring personal counsel to submit an *amicus curie* [sic] brief." (Defs.' MSJ 4.) However, whether the County represented Plaintiff's interests in Fancher/Roybal II and whether this was apparent before Plaintiff incurred expenses related to the second suit are questions of fact. A potential indemnitee is not precluded from pursuing reimbursement merely because the indemnitor claims conclusorily that it "oppos[ed the suit] in all respects."

    d.  **Request for Indemnification**

Defendants claim that Plaintiff failed to request that the County defend or indemnify him before he incurred attorney's fees relating to Fancher/Roybal II. Defendants also argue that in failing to make such a request Plaintiff "utterly failed to comply with California Civil Code Section 2778, subdivisions 4 and 5, which require the party seeking indemnity to make a request of the indemnitor and give the indemnitor the right to conduct the indemnitee's defense." However, as described above in connection with Plaintiff's Section 1983 claim, the record contains evidence of a letter to Plaintiff's counsel dated March 23, 2005, stating that on the previous day the BOS "considered the request for approval of the payment of John Sarsfield's ongoing legal fees since the settlement agreement was executed and any fees incurred in

opposing the writ petition filed by Ms. Fancher and Ms. Roybal" and advising counsel that "the Board denied the request for legal fees *to be incurred* in any opposition filed by Mr. Sarsfield." (Barber Decl. Ex. T at Ex. 4C (emphasis added).) Defendants offer no evidence that the request referenced in this letter was made after Plaintiff already had incurred attorney's fees relating to Fancher/Roybal II, and a reasonable jury could conclude that the request was made before such fees were incurred.

In their reply, Defendants abandon their argument that Plaintiff violated Civil Code Section 2278 and instead contend that he "failed to follow COUNTY procedures, which are consistent with California Government Code Section 995 *et seq.*, that required SARSFIELD to first notify the COUNTY of his request for defense and indemnity." (Defs.' MSJ Reply 3.) However, as Plaintiff's counsel argued before the Court, that section explicitly refers to employees and former employees of public entities. As discussed above, Defendants contend (and Plaintiff concedes) that Plaintiff was never an employee of the County or the BOS, but was instead was an elected official.

**D.      Intentional Infliction of Emotional Distress**

"The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . ." *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 874 (Cal. Ct. App. 2010) (internal quotation marks omitted) (citing *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (Cal. 1991)). California courts have defined "outrageous conduct" as conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 875 (citing *Christensen*, 54 Cal.3d at 903).

Defendants argue that no reasonable trier of fact could find that any of Defendants' alleged actions constitutes "outrageous conduct," and that there is evidence in the record that Plaintiff has suffered cognizable damages. Plaintiff's opposition brief is silent with respect to these arguments.

### E. Claims Against Individual BOS Members

Defendants maintain that the individual BOS members are improperly named as defendants. Based on the above discussion, the only claim that is sufficient to survive summary judgment is Plaintiff's contract-based claim with respect to his attorney's fees in Fancher/Roybal II. Because that claim cannot properly be asserted against the individual Defendants, as they were not parties to the settlement agreement and have no individual duty to indemnify Plaintiff, the Court does not reach the other legal issues, including the applicability of legislative immunity, with respect to Plaintiff's claims against the individual Defendants.[6]

## IV. ORDER

Good cause therefor appearing, Defendants' motion is GRANTED IN PART AND DENIED IN PART as set forth above.[7] Because of the modest amount in controversy with respect to Plaintiff's one remaining claim, the Court strongly encourages the parties to resolve

//

---

[6] On April 2, 2010, Defendants objected to the admission of several items of evidence submitted by Plaintiff, including portions of the Sarsfield and Woods' declarations and the mediation agreement. Because the Court will grant Defendants' motion as to those claims to which the evidence is arguably relevant assuming that it is otherwise admissible, the objections are overruled as moot.

[7] On April 15, 2010, Defendants moved to strike Plaintiff's "Sur Reply Opposition" and accompanying declarations as untimely. The Sur Reply Opposition addressed four issues: whether the County was required to reimburse Plaintiff for fees incurred as a result of Fancher/Roybal II; whether Plaintiff's speech was a substantial motivating factor for Defendants' alleged retaliatory conduct; whether Monaco breached the mediation agreement; and whether the comments at the March 28 BOS meeting were actionable under *Lubey v. City and County of San Francisco*.

As to the first issue, the Court did not rely on any facts or evidence submitted with the Sur Reply in denying Defendants' motion with respect to Plaintiff's claim for failure to indemnify. The Court did not reach the second issue because Plaintiff was not an employee of the BOS or the County. With respect to Monaco's alleged breach of the confidentiality provision of the mediation agreement, the Court would grant Defendants' motion even assuming the untimely filed declarations were admissible. The additional arguments in the Sur Reply in support of Plaintiff's *Lubey* argument were unpersuasive.

Because none of the untimely submitted documents affected the resolution of Defendants' motion to dismiss, Defendants' motion to strike the documents will be denied as moot.

1  that claim without the necessity of further litigation.  A status conference is hereby scheduled for
2  June 11, 2010, at 10:30 A.M.
3
4  IT IS SO ORDERED.
5
6  DATED: May 12, 2010
   _____
   JEREMY FOGEL
7  United States District Judge
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28